## UNITED STATES DISTRICT COURT FOR  THE
## DISTRICT OF COLUMBIA

JAMES MASON                          )
717 Ingraham Street, NW              )
Washington, D.C. 20012,              )
                                     )   Civil Action No. 06-1319 (RMC)
      Plaintiff**,**              )
                                     )
    v.                          )
                                     )
DAVITA INC.                          )
601 Hawaii Street                    )
El Segundo, CA 90245,                )
                                     )
      Defendant**.**              )
_____      )

## <u>DAVITA INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE  FIRST AMENDED COMPLAINT</u>

Minh N. Vu (Bar No. 444305)
EPSTEIN BECKER & GREEN, P.C.
1227 25th Street, N.W.
Washington, D.C. 20037
Tel: (202) 861-0900
Fax: (202) 296-2882

Joseph T. Ortiz
(admitted pro hac vice)
Epstein Becker & Green, P.C.
1875 Century Park East, Suite 500
Los Angeles, CA 90067-2506
(310) 557-9542
(310) 553-2165 (fax)

Counsel for Defendant DaVita Inc.

April 25, 2007

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................... 1

II.    BACKGROUND AND PROCEDURAL HISTORY ............................................. 3

III.   ARGUMENT ...................................................................... 9

       A.     LEAVE TO AMEND SHOULD BE DENIED BECAUSE
              PLAINTIFF HAS PROVIDED NO EXPLANATION FOR HIS
              FAILURE TO COMPLY WITH THE DEADLINE FOR
              AMENDMENT OF PLEADINGS AND JOINDER OF
              ADDITIONAL PARTIES. ...................................................... 9

       B.     LEAVE TO ADD JOSH GOLOMB AS A NEW DEFENDANT IN
              HIS INDIVIDUAL CAPACITY FOR ALL COUNTS SHOULD BE
              DENIED BECAUSE THE CLAIMS ARE FUTILE AND PLAINTIFF
              ENGAGED IN PREJUDICIAL UNDUE DELAY AND BAD FAITH. . 10

              1.    Plaintiff has pled no facts to establish the Court's personal
                    jurisdiction over Mr. Golomb in his individual capacity.............. 10

              2.    The Court has no subject matter jurisdiction over the race
                    discrimination and retaliation claims against Mr. Golomb.......... 12

              3.    The DCHRA's one-year statute of limitations bars both the
                    race discrimination and retaliation claims against Mr. Golomb... 15

              4.    Leave to file the Amended Complaint against Mr. Golomb
                    should be denied because Plaintiff engaged in undue delay, the
                    filing would result in unfair prejudice, and the request is made
                    in bad faith. .................................................................. 17

       C.     LEAVE TO AMEND THE COMPLAINT TO ADD A
              RETALIATION CLAIM AGAINST DAVITA INC. SHOULD BE
              DENIED................................................................................ 21

              1.    Plaintiff's Allegations Regarding the Revocation of a Patient
                    Care Technician Job Offer by DaVita in February 2007 Do Not
                    Belong in This Lawsuit. .................................................... 21

              2.    Plaintiff should not be allowed to add a retaliation count based
                    on DaVita Rx's decision not to offer Plaintiff a Pharmacy
                    Services Representative position because the Court does not
                    have subject matter jurisdiction over this claim. ......................... 23

              3.    Plaintiff should not be allowed to add a retaliation count based
                    on DaVita Rx's decision not to offer Plaintiff a Pharmacy

Services Representative position because of his undue delay, bad faith, and prejudice to DaVita. ............................................... 24

IV.    CONCLUSION .................................................................................................. 27

## I.    INTRODUCTION

The original Complaint was filed against Defendant DaVita Inc. ("DaVita") in

D.C. Superior Court on May 19, 2006, and removed to this Court on July 26, 2006.  The

Complaint alleged one count of race discrimination under the D.C. Human Rights Act

("DCHRA"), which was based on the decision of two managers of DaVita Rx (a

subsidiary of DaVita Inc.) not to hire Plaintiff for a Pharmacy Services Representative

("PSR") position in the first quarter of 2006.

The parties have spent the last six months conducting discovery.  By the

discovery deadline of May 11, 2007, all discovery will have been completed.  The facts

uncovered during discovery have not been helpful to Plaintiff's case.  Among other

things, Plaintiff learned that (1) more than 20 percent of the persons offered PSR

positions by DaVita Rx are African-American – a percentage that is double the

percentage of African-Americans in the relevant workforce according to the latest Census

data.  <u>See</u> Expert Report of Dr. Chris Erath (Ex. 1); (2) the first PSR to be hired by the

alleged discriminators is an African-American (Deposition Transcript of Kim Easlon

("Easlon Dep.") 33-34 (Ex. 5), and she was the first PSR to be promoted to a Regional

Services Manager position (before Mr. Mason filed his lawsuit) (Easlon Dep. 30, 42; PSR

Offeree Chart at 1 (Ex. 3)); and (3) within three weeks of telling him that he would not be

advanced in the PSR hiring process, DaVita Rx hired three additional African-American

PSRs.  <u>See</u> Ex. 3 (PSR Offeree Chart).

Faced with compelling facts showing that DaVita Rx's decision not to hire

Plaintiff for a PSR position had nothing to do with his race, Plaintiff now makes a last-

minute attempt to recast his case by adding a retaliation claim based on the same events

set forth in the Complaint, plus an allegedly retaliatory act by an unrelated DaVita business unit in February 2007. Plaintiff also attempts to name, for the very first time, the DaVita Rx Director who made the decision not to hire Plaintiff, Josh Golomb, as a defendant in his individual capacity, even though Plaintiff knew months before filing this lawsuit that Mr. Golomb was the final decisionmaker on his PSR application.

Plaintiff's tardy motion should be denied. As a threshold matter, the motion was filed nearly five months after the November 13, 2006 deadline for the amendment of pleadings and joinder of additional parties. Despite this fact, Plaintiff apparently did not see the need to file a brief in support of his one and a half page motion, provide any explanation for the undue delay, or include any evidentiary support for his oblique and incorrect suggestion that the amendment is based on newly discovered evidence. The motion evinces a lack of respect for the Court and should be denied on this basis alone.

The motion also should be denied for the following reasons:

The Claims Against Mr. Golomb. The Court has neither personal jurisdiction over Mr. Golomb nor subject matter jurisdiction over the DCHRA claims against him. Furthermore, the statute of limitations bars both DCHRA claims. Even if the claims were not futile, the Court should deny leave to amend because of Plaintiff's unexplained undue delay and bad faith, the prejudice that will result to Mr. Golomb and DaVita if the First Amended Complaint is filed, and the delay in the resolution of this lawsuit caused by the additional pleadings and discovery that would be necessitated by the amendment.

The Claims Against DaVita: The Court should not allow Plaintiff to add a new retaliation claim against DaVita for three reasons. First, the new retaliation count is predicated in part on the alleged revocation of a Patient Care Technician ("PCT") job

offer made to Plaintiff in February 2007 which does not belong in this lawsuit. This alleged PCT job offer has nothing to do with Plaintiff's 2005/2006 application to DaVita Rx for a PSR position, as it was a different job, for a separate DaVita company unit, with different decision makers. Adding these allegations to the current suit will require substantial additional discovery and result in prejudicial delay. Second, the Court does not have subject matter jurisdiction over the part of the retaliation claim that it is based on DaVita's decision not to offer Plaintiff a PSR position in March 2006 because that decision was neither made in the District, nor did it concern a job that would be performed in the District. Third, even assuming jurisdiction exists, the unexplained tardy addition of this retaliation count will prejudice DaVita's defense, increase the costs of defending the lawsuit, and substantially delay the resolution of this lawsuit. Plaintiff has provided no justification for waiting until discovery is nearly over to add a retaliation count based on events that he had already alleged in the original Complaint (i.e., the denial of the PSR position). These facts, coupled with evidence of Plaintiff's bad faith in requesting the amendment, support the Court's denial of leave to amend.

## II.     BACKGROUND AND PROCEDURAL HISTORY

        The undisputed substantive and procedural facts that are relevant to the pending motion are as follows:

        1.      The Defendant, DaVita Inc., ("DaVita") is in the business of owning and operating dialysis facilities throughout the United States. DaVita owns and operates a number of dialysis centers in Washington, D.C., including an acute facility located at the George Washington University ("GWU") Hospital. (Declaration of Josh Golomb ("Golomb Decl.") ¶ 2 (Ex. 2).) DaVita Rx, a Delaware limited liability company owned

by DaVita, was formed in early 2005 for the sole purpose of creating a new pharmacy service business that would deliver oral prescription medications to patients of DaVita's dialysis centers.  Id.  DaVita Rx does not own or operate any dialysis centers.  DaVita Rx has its own management team and employees who operate and market the pharmacy service business.  Id.

2.      In the fall of 2005, DaVita Rx was in the process of creating a sales team consisting primarily of PSRs to promote its pharmacy service.   DaVita Rx had a number of PSR positions to fill throughout the country, including one in Washington, D.C. (Golomb Decl. ¶ 3.)  Plaintiff – a PCT working at a DaVita dialysis facility in Washington, D.C. – applied for a PSR position with DaVita Rx. (First Am. Compl. ¶ 6.)

3.      The Sales Manager of DaVita Rx, Kim Easlon, conducted an initial telephone interview with Plaintiff for a PSR position in D.C. at the beginning of December 2005.  (First Am. Compl. ¶ 6; Easlon Dep. 58, 73.)  At the conclusion of the telephone interview, Ms. Easlon invited Plaintiff for an in-person interview with her in Richmond, Virginia, on December 12, 2005.  (First Am. Compl. ¶ 6; Easlon Dep. 64-66.) Ms. Easlon was only going to be in Richmond for one day to interview PSR candidates for the D.C. and Richmond PSR positions. (Easlon Dep. 67, 82.)  Plaintiff stated that he could not meet Ms. Easlon on this date because of his work schedule.  (First Am. Compl. ¶ 6.)  Ms. Easlon told Plaintiff that she would not be back in the area until after the first of the year and would be in touch with him at that time.  (Deposition Transcript of James Mason ("Mason Dep.") 137-40 (Ex. 7).)

4.      Ms. Easlon also invited Chris Jones, a white colleague of Plaintiff's, for an in-person interview in Richmond, Virginia for a PSR position on December 12, 2005.

(First Am. Compl. ¶ 6; Easlon Dep. 67.)  Mr. Jones went to the interview and met with

Ms. Easlon.  After the interview, Ms. Easlon invited him for in-person interviews in

California. (First Am. Compl. ¶ 6.)  Following a successful round of interviews in

California, Ms. Easlon offered Mr. Jones the D.C. PSR position on December 20, 2006,

which he immediately accepted. (Easlon Dep. 62-63; Deposition Transcript of

Christopher Jones ("Jones Dep.") 63, 79-80 (Ex. 6).)

     5.      On January 6, 2006, Plaintiff sent Ms. Easlon an e-mail inquiring about an

in-person interview with her.  See E-mail from Pl. to Ms. Easlon (January 4, 2006) (Ex.

8).  The e-mail contained numerous typographical and grammatical errors which Ms.

Easlon noted. (See id.; Easlon Dep. 84-86.)  In an e-mail dated January 9, 2006, Ms.

Easlon told Plaintiff that the PSR position in his area had been filled. See E-mail from

Ms. Easlon to Pl. (January 9, 2006) (Ex. 8).

     6.      After receiving Ms. Easlon's e-mail, Plaintiff filed an internal complaint

with DaVita concerning the denial of his application by Ms. Easlon. (First Am. Compl. ¶

8.)

     7.      Ms. Easlon did not know Plaintiff's race prior to his filing of the internal

complaint. (Easlon Dep. 70-72.)  Plaintiff never communicated his race to anyone at

DaVita Rx in connection with his PSR job application, nor did he mention his race in his

one telephone communication with Ms. Easlon. (Mason Dep. 131-33.)

     8.      As a result of Plaintiff's internal complaint, DaVita Rx's Director and Ms.

Easlon's supervisor, Josh Golomb, offered in March 2006 to interview Plaintiff for PSR

positions that were open around the country at the time.  (Golomb Decl. ¶ 4; First Am.

Compl. ¶ 8.)  There were no D.C. positions available at that time because Mr. Jones had

filled this position in January 2006. (Golomb Decl. ¶ 4.)  Mr. Golomb was in Texas when he offered Plaintiff the interview opportunity.  Id. ¶ 5.

9.      Mr. Golomb interviewed Plaintiff by telephone on March 9, 2006. (Golomb Decl. ¶ 6; First Am. Compl. ¶ 9.)  Mr. Golomb was in Florida when he conducted this interview. (Golomb Decl. ¶ 6.)

10.     On March 17, 2006, Mr. Golomb advised Plaintiff that he would not advance to the next stage of the PSR hiring process. (Deposition Tr. of Josh Golomb ("Golomb Dep.") (Ex. 4) 121; Mason Dep. 169; First Am. Compl. ¶ 9; Attachment A to Golomb Decl. (DaVita Rx phone records from March 17, 2006.))  Mr. Golomb was in his office in California when he made this call. (Golomb Decl. ¶ 7.)

11.      At his deposition on February 1, 2007, taken before DaVita had provided any discovery responses, Plaintiff stated that he believed that Mr. Golomb's March 17, 2006, decision was based on his race. (Mason Dep. 169.)

12.     Mr. Golomb had no further contact or involvement with Plaintiff after March 17, 2006 (Golomb Decl. ¶ 7), and neither the original Complaint nor Amended Complaint alleges any such contact.  (See generally Compl.; First Am. Compl.)

13.     On May 19, 2006, two months after being told by Mr. Golomb that he would not receive further consideration for a PSR position, Plaintiff filed a Complaint in D.C. Superior Court solely against DaVita.  The Complaint alleged that DaVita discriminated by denying Mr. Mason an in-person job interview and selection to the pharmaceutical sales position based on his race," in violation of the DCHRA. (Compl. ¶ 12.)

14.     The factual basis of Plaintiff's race discrimination claim was Ms. Easlon's decision not to advance Plaintiff in the interview process which she communicated to Plaintiff in January 2006 (Compl. ¶ 7), and Mr. Golomb's decision not to offer Plaintiff a PSR position after he interviewed him in March 2006. (Compl. ¶ 9.)

15.     In their Joint LCvR 16(d) Report to the Court, the parties agreed to a deadline of November 13, 2006 for the amendment of pleadings and joinder of additional parties which was accepted by the Court.  Plaintiff made no attempt to amend any pleadings or join any additional parties by this date, or at any time prior to this pending motion filed nearly five months after this deadline.

16.     Pursuant to the Court's Scheduling Order of October 12, 2006, discovery was to close on April 16, 2007.  On April 5, 2007, at DaVita's request, the Court extended discovery until May 11, 2007, to allow DaVita Inc. to take four depositions that could not be scheduled before the April 5, 2007 deadline because of Plaintiff's counsel's unavailability and lack of cooperation.

17.     After the entry of the Scheduling Order, Plaintiff conducted no discovery for two months and served no written discovery requests until December 18, 2006.

18.     DaVita served interrogatories and document requests as soon as discovery began on October 12, 2006.  However, through a series of unilateral extensions, Plaintiff did not respond to these requests until January 2, 2007, eighty (80) days later.

19.     On February 12, 2006, DaVita served on Plaintiff an expert report by Dr. Chris Erath of National Economic Research Associates.  See Ex. 1.  Dr. Erath calculated that 20.4% of the persons offered PSR positions from DaVita Rx's inception through December 18, 2006, are "Black."  Dr. Erath had determined that "blacks make up slightly

less than ten percent of the workforce" in the relevant industry-occupation categories set forth in the most recent Census data.  Thus, Dr. Erath concluded that "Blacks were hired [by DaVita Rx] at a rate greater than expected based on the underlying workforce."  Id. Plaintiff neither deposed Dr. Erath nor submited a rebuttal report.

20.     In response to Plaintiff's interrogatories, DaVita provided Plaintiff a list of all persons offered PSR positions through the date of the interrogatory along with their race data.  This list shows that DaVita Rx hired three African-Americans within three weeks after it declined to proceed further with Plaintiff's application on March 17, 2006. See Ex. 3.

21.     To date, Plaintiff has taken the deposition of Chris Jones (the white applicant who received the D.C. position for which Plaintiff interviewed with Ms. Easlon), Josh Golomb, and Kim Easlon.  Among other things, Ms. Easlon testified that her first PSR hire, Zondra Evans, is an African-American, and that Ms. Evans was later promoted to be a Regional Services Manager before Plaintiff ever filed this lawsuit. (Easlon Dep. 35, 43.)  Plaintiff has not issued notices for any other depositions.

22.     DaVita has taken the deposition of Plaintiff and his wife, Lolita Mason, and has noticed the depositions of Dr. Waterman (Plaintiff's doctor), Ignacio Washington (Plaintiff's witness), and Jeff Sanjuan (Plaintiff's witness).  All of these depositions will be completed by May 7, 2007.

23.     Thus, all discovery  regarding the events alleged in the original Complaint should be completed by May 7, 2007.  There are no other pending discovery requests by any party.

24.     On April 3, 2007 – fewer than two weeks before the discovery deadline then in effect – Plaintiff filed a Motion for Leave to File First Amended Complaint.

25.     The First Amended Complaint:

(1)  Asserts for the first time claims of race discrimination and retaliation under the DCHRA against Josh Golomb in his individual capacity (Mr. Golomb had not previously been named as a defendant in this action in any capacity); and

(2) Adds a new retaliation claim against DaVita based on two alleged actions:  (a) DaVita Rx's March 17, 2006 decision not to advance Plaintiff to the next stage of the PSR application process (First Am. Compl. ¶¶ 9, 21) and (b) DaVita's alleged revocation of an offer to Plaintiff for employment as a PCT at DaVita's acute dialysis facility at GWU Hospital in February 2007. (First Am. Compl. ¶¶ 12, 21.)

## III.     ARGUMENT

### A.     LEAVE TO AMEND SHOULD BE DENIED BECAUSE PLAINTIFF HAS PROVIDED NO EXPLANATION FOR HIS FAILURE TO COMPLY WITH THE DEADLINE FOR AMENDMENT OF PLEADINGS AND JOINDER OF ADDITIONAL PARTIES.

On October 2, 2006, the parties filed a Joint Local Civil Rule 16(d) Report in which they agreed in writing to a deadline of November 13, 2006, for the amendment of pleadings and joinder of additional parties.  The Court accepted that deadline at the October 12, 2006, scheduling conference.  This deadline "assures that at some point both the parties and the pleadings will be fixed, by setting a time within which joinder of the parties shall be completed and the pleadings amended."  Fed. R. Civ. P. 16(b)(i) Advisory Committee's note.  Having agreed to this deadline, Plaintiff cannot try to amend the Complaint and add a new defendant <u>nearly five months later</u> at the close of discovery without providing a compelling explanation.  This is especially true where Plaintiff was

aware of the facts the form the basis of the amendment months before he filed the original Complaint. <u>See</u> <u>supra</u> discussion pp. 18, 24. Plaintiff's one and a half page motion with no supporting brief or evidence contains no explanation and should be denied on this basis alone. <u>See</u>, <u>e.g.</u>, <u>LaPrade v. Abramson</u>, No. 97-10, 2006 WL 3469532 at *4-*5 (D.D.C. Nov. 29, 2006) (Ex. 10) (denying leave to amend because plaintiff had sufficient information prior to the deadline for amendments to add new claims, additional discovery would have to be conducted, and no good reason for the delay had been advanced).

**B.     LEAVE TO ADD JOSH GOLOMB AS A NEW DEFENDANT IN HIS INDIVIDUAL CAPACITY FOR ALL COUNTS SHOULD BE DENIED BECAUSE THE CLAIMS ARE FUTILE AND PLAINTIFF ENGAGED IN PREJUDICIAL UNDUE DELAY AND BAD FAITH.**

Leave to file an amended complaint under Rule 15 will not be granted if the claims set forth therein are futile. <u>See</u> <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962); <u>James Madison v. Ludwig</u>, 82 F.3d 1085, 1099 (D.C. Cir. 1996). In this case, Plaintiff's tardy race discrimination and retaliation claims against Mr. Golomb in his individual capacity suffer from three fatal defects: (1) Plaintiff has pled no facts to establish the Court's personal jurisdiction over Mr. Golomb; (2) The Court has no subject matter jurisdiction over the two claims against Mr. Golomb; and (3) The DCHRA's one-year statute of limitations bars both the race discrimination and retaliation claims against Mr. Golomb.

**1.     Plaintiff has pled no facts to establish the Court's personal jurisdiction over Mr. Golomb in his individual capacity.**

Josh Golomb is and has been a resident of California at all times relevant to this lawsuit. (Golomb Dep. 5, 13-14.) Thus, the Court may only assert personal jurisdiction over Mr. Golomb if it is permitted under the District of Columbia long-arm statute (D.C.

Code Ann. §13-423 (2001)), and is consistent with constitutional due process requirements.  See GTE New Media Servs. v. Bellsouth Corp., 199 F.3d 1343, 1347 (D.C. Cir. 2000); Pollack v. Meese, 737 F. Supp. 663, 665 (D.D.C. 1990); Trager v. Berrie & Co., 593 F. Supp. 223, 224 (D.D.C. 1984); Mouzavires v. Baxter, 434 A.2d 988, 990-91 (D.C. 1981).  "Plaintiff bears the burden of pleading and proving sufficient facts upon which to find personal jurisdiction."  Pollack, 737 F. Supp. at 665.  In addition, "[i]n determining whether a factual basis for personal jurisdiction exists, the court . . . need not treat all of the plaintiff's allegations as true . . . .  Instead, the court may receive and weigh affidavits and any other relevant matter to assist in determining the jurisdictional facts."  Bancoult v. McNamara, 214 F.R.D. 5, 10 (D.D.C. 2003) (internal citations and quotations omitted).

The First Amended Complaint naming Mr. Golomb as a new defendant in his individual capacity pleads no facts to establish the Court's personal jurisdiction over him, even though Plaintiff has already taken Mr. Golomb's deposition.  Every reference to Mr. Golomb in the First Amended Complaint concerns actions that he took on behalf of his employer, DaVita Rx. (First Am. Compl. ¶¶ 4, 9-11, 18.)

The D.C. courts do not have personal jurisdiction over non-resident individuals whose only contact with D.C. is made on behalf of their employer, as in Mr. Golomb's case.  See, e.g., Richard v. Bell Atlantic Corp., 976 F. Supp. 40, 50 (D.D.C. 1997) (dismissing defendants sued in their individual capacities because alleged discriminatory "acts committed within the scope of employment cannot be imputed to individual defendants to establish personal jurisdiction over them."); Pollack, 737 F. Supp. at 663 ("[A] persistent course of conduct may be deemed to constitute the transaction of

business for the assertion of personal jurisdiction only if that persistent conduct is

undertaken in that person's individual capacity <u>rather than in the capacity of conducting</u>

<u>business for his employer.</u>")(emphasis added); <u>Aiken v. Lustine Chevrolet</u>, 392 F. Supp.

883, 886 (D.D.C. 1975) (no personal jurisdiction over non-resident salesman whose

alleged fraudulent acts were done within the scope of his employment); <u>see also</u>

<u>Overseas Partners v. PROGEN</u>, 15 F. Supp. 2d 47, 51 (D.D.C. 1998) ("Personal

jurisdiction over officers of a corporation in their individual capacities must be based on

their personal contacts with the forum, not their acts and contacts carried out solely in a

corporate capacity"); <u>Quinto v. Legal Times of Washington</u>, 506 F. Supp. 554, 558

(D.D.C. 1981) (no personal jurisdiction over non-resident defendants where all of their

activities in D.C. had been conducted on behalf of the corporate defendant). These

authorities make clear that the Court does not have personal jurisdiction over Mr.

Golomb in his individual capacity.

2. **The Court has no subject matter jurisdiction over the race discrimination and retaliation claims against Mr. Golomb.**

The question of subject matter jurisdiction is decided on a motion under Rule

12(b)(1) and concerns "the power of the court to hear the plaintiff's claim." Accordingly,

"the Court has an affirmative obligation to ensure that [it is] acting within the scope of

[its] jurisdictional power." 5A Charles Alan Wright & Arthur R. Miller, Federal Practice

and Procedure § 1350 at 166 (2d ed. Supp. 2003); <u>see also</u> <u>District of Columbia</u>

<u>Retirement Bd. v. United States</u>, 657 F. Supp. 428, 431 (D.D.C. 1987). Consequently,

the Court need not limit itself to the allegations of the First Amended Complaint in

deciding DaVita's 12(b)(1) motion. <u>See</u> <u>Hohri v. United States</u>, 782 F.2d 227, 241 (D.C.

Cir. 1986), <u>vacated on other grounds</u>, 482 U.S. 64 (1987). Rather, "the court may

consider the complaint supplemented by undisputed facts evidenced in the record . . . plus the court's resolution of disputed facts." <u>Herbert v. Nat'l Acad. of Scis.</u>, 974 F.2d 192, 197 (D.C. Cir. 1992). Plaintiff bears the burden of establishing that the Court has subject matter jurisdiction. <u>District of Columbia Retirement Bd.</u>, 657 F. Supp. at 431.

The only basis for Plaintiff's race discrimination and retaliation claims against Mr. Golomb is Mr. Golomb's  March 17, 2006 decision not to proceed further with Plaintiff's PSR job application.  The alleged job offer revocation in February 2007 by DaVita cannot be the basis for a claim against Mr. Golomb because Plaintiff does not allege in the First Amended Complaint that Mr. Golomb had anything to do with the February 2007 action. (First Am. Compl. ¶ 12.)  The March 17, 2006 decision does not fall within the jurisdiction of the DCHRA because that decision was not made in D.C. and did not concern a job that would be substantially located in or performed in D.C.

The purpose of the DCHRA is to "secure an end <u>in the District of Columbia</u> to discrimination for any reason other than individual merit. . ."  D.C. Code § 1-2501 (2001) (emphasis added).  In <u>Matthews v. Automated Bus. Sys. & Servs.</u>, 558 A.2d 1175, 1180 (D.C. 1989), the D.C. Court of Appeals held that "the critical factual issue bearing on jurisdiction [under the DCHRA] is whether the [discriminatory] events took place in the District."  The court also "assume[d], without deciding, that the District of Columbia Human Rights Act does not apply to acts occurring outside the District."  <u>Id.</u> at 1180 n.8. <u>Accord</u> <u>Martin v. Holiday Universal</u>, No. JH-90-1188, 1990 WL 209266 (D. Md. Oct. 3. 1990) ("Defendants are correct that the DCHRA does not apply to acts occurring outside the District of Columbia").  Thus, in <u>Matthews</u>, the court determined that there was jurisdiction over the plaintiff's claims because forty to sixty percent of the plaintiff's

work was performed in the District, many alleged acts of sexual harassment took place in the District, and some terms of employment were negotiated while the parties were physically present in the District.  See Matthews, 558 A.2d at 1180.

Consistent with the principles stated in Matthews, the courts that have decided the question of whether they had subject matter jurisdiction over claims asserted under the DCHRA have focused on the following factors:  (1) where the discriminatory employment decision was made; (2) the location of the discriminatory acts; and (3) where the job in question was located and/or performed.  See Blake v. Prof'l Travel Corp., 768 A.2d 568, 571 (D.C. 2001) (court had jurisdiction where events of alleged sexual harassment occurred in the District); Grillo v. Lucent Techs., No. 02-0962-JDB, slip op. at 6-7 (D.D.C. July 28, 2004) (Ex. 10) (no jurisdiction where job was performed primarily outside of District and allegedly discriminatory employment decisions took place outside the District); Martin, 1990 WL 209266, at *4 (Ex. 10) (court had jurisdiction where defendant allegedly refused to hire, transfer, or promote plaintiffs into facilities located in the District); see also Green v. Kinney Shoe Corp., 704 F. Supp. 259, 259 (D.D.C. 1988) (court had jurisdiction where plaintiff alleged that he was not hired for two jobs in the District, even though decisions were made outside of the District).

In all the cases where the courts found subject matter jurisdiction, there was evidence that some discriminatory action had taken place in the District, or, a minimum, that a substantial portion of the job was or would be performed in the District.  No court has ever asserted subject matter jurisdiction under the DCHRA when the job in question was to be performed substantially outside of the District and the employment decisions were made outside the District.  In fact, the court in Grillo made clear that even the

performance of "a few employment assignments" in the District was insufficient to confer subject matter jurisdiction on the court. Grillo, slip. op. at 7.

Here, Plaintiff has not pled any facts to show that the job for which he interviewed with Mr. Golomb was located in D.C. (or would be substantially performed in D.C.), nor has he alleged any facts that any discriminatory acts occurred in D.C. When Mr. Golomb interviewed Plaintiff on March 9, 2006, the one D.C. PSR position had been filled, and Mr. Golomb was interviewing him for open PSR positions in other parts of the country. (Golomb Decl. ¶ 4; Easlon Dep. 62-63.) Plaintiff acknowledges this fact when he alleges in the First Amended Complaint that, after he was told in January 2006 that the PSR position he sought had been filled, "Defendants continued to advertise for position openings in Maryland, Philadelphia, Pennsylvania, and St. Louis, Missouri." (First Am. Compl. ¶ 7.)

It is also undisputed that no discriminatory acts took place in D.C. Mr. Golomb was in Florida when he interviewed Plaintiff on March 9, 2006. (Golomb Decl. ¶ 6.) Mr. Golomb was in California on March 17, 2006, when he advised Plaintiff that he would not go to the next stage of the PSR application process. (Golomb Dep. 92-93, 98; Golomb Decl. ¶ 7.) In short, there are no facts either in the record, or pled in the First Amended Complaint to establish subject matter jurisdiction under the DCHRA.

### 3.   The DCHRA's one-year statute of limitations bars both the race discrimination and retaliation claims against Mr. Golomb.

D.C. Code § 2-1403.16(a) (2001) states that "[a] private cause of action [for an unlawful discriminatory practice] shall be filed . . . within one year of the unlawful discriminatory act, or the discovery thereof." The D.C. Court of Appeals has stated "we

have strictly construed this one year limitation." Brown v. Nat'l Acad. of Scis., 844 A.2d 1113, 1117 (D.C. 2004).

The only alleged unlawful discriminatory act in which Mr. Golomb participated that is alleged in the First Amended Complaint is the decision not to advance Mr. Mason to the next stage of the PSR application process. (First Am. Compl. ¶ 9.) (There is no allegation that Mr. Golomb had any involvement in the February 2007 alleged retaliatory action by DaVita- - a separate legal entity from DaVita Rx). Mr. Golomb testified that he communicated his decision to Mr. Mason on March 17, 2006, and DaVita has produced phone records to Mr. Mason confirming that this conversation took place on this date. (Golomb Dep. 121; Golomb Decl. ¶ 7 and Attachment A thereto.) Accordingly, Mr. Mason's race discrimination and retaliation claims are barred by the DCHRA statute of limitations because the Motion for Leave to File [the] Amended Complaint naming Mr. Golomb as a defendant for the first time was filed on April 3, 2007, more than one year after March 17, 2006. See Willoughby v. Potomac Elec. Power Co., 100 F.3d 999, 1003 (D.C. Cir. 1996) (affirming denial of leave to amend to add claim under DCHRA that was time-barred).

Plaintiff cannot revive his untimely claim against Mr. Golomb by claiming that it is based on information obtained in discovery. Plaintiff admits that Mr. Golomb told him that he was no longer under consideration for the PSR position in a conversation after his March 9, 2006 telephone interview. (Mason Dep. 169, 184; Golomb Dep. 121.)[1] This conversation took place on March 17, 2006. (Golomb Dep. 121; Golomb Decl. ¶ 7 and Attachment A thereto.) Furthermore, Plaintiff believed that this decision was an unlawful

---

[1]    Plaintiff does not recall the date of the call when he was told he would not receive further consideration. (Interrog. Resp. No. 6 (Ex. 9).)

discriminatory act because he filed a lawsuit on May 19, 2006 (before any discovery took

place) alleging that the decision was based on race.  (Compl. ¶¶ 9, 12.)  Mr. Mason also

testified at his deposition (taken before any discovery had been provided by DaVita) that

he thought Mr. Golomb was motivated by his race. (Mason Dep. 169.)  The D.C. Court of

Appeals made clear in East v. Graphic Arts Indus. Joint Pension Trust, 718 A.2d 153, 157

(D.C. 1998), that the statute of limitations under the DCHRA begins to run when the

employee "gained the general knowledge that her firing was wrongful, not on when she

learned of precise legal remedies for firing." (Emphasis added.)  Plaintiff's claims against

Mr. Golomb are therefore barred by the statute of limitations.

        **4.**        **Leave to file the Amended Complaint against Mr. Golomb should be denied because Plaintiff engaged in undue delay, the filing would result in unfair prejudice, and the request is made in bad faith.**

Although Rule 15(a) of the Federal Rules of Civil Procedure provides that leave

to amend shall be freely given "when justice requires," the Supreme Court has made clear

that the trial court may deny leave where there is evidence of "undue delay, bad faith or

dilatory motive on the part of the movant, [or] undue prejudice to the opposing party by

virtue of the allowance of the amendment." Foman, 371 U.S. at 182; see also Atchinson

v. District of Columbia, 73 F.3d 418, 425 (D.C. Cir. 1996) (denying leave to amend

complaint to add official in his personal capacity because of undue delay and possible

prejudice).  The decision of whether to allow an amendment is within the "sound

discretion" of the district court and will be reviewed only for abuse of discretion.  See

Atchinson, 73 F.3d at 425; Doe v. McMillan, 566 F.2d 713, 720 (D.C. Cir. 1977).

The courts in this circuit have denied leave to amend when the plaintiff engaged

in an unjustified delay in requesting the amendment, when the amended pleading would

result in the need for additional discovery, or when the amendment would result in additional defense costs and delay the resolution of the case. See, e.g., Doe, 566 F.2d at 720 (affirming denial of leave to amend complaint where there was "no sound reason for [the plaintiff's] failure to seek amendment earlier"); Williamsburg Wax Museum v. Historic Figures, 810 F.2d 243, 247 (D.C. Cir. 1987) (affirming denial of leave to amend complaint because of Plaintiff's unexplained undue delay and the need to conduct further discovery); Miller v. Bill Harbert Int'l Constr., No. 95-1231, 2007 WL 851860, at *2 (D.D.C. Mar. 20, 2007) (Ex. 10) (motion for leave to amend complaint denied because the new theory would require additional discovery and cause undue delay); Societe Liz v. Charles of the Ritz Group, 118 F.R.D. 2, 5 (D.D.C. 1987) (denying leave to amend to add defendants and theories of recovery where the resulting delay will "increase the defendants' expenses and inevitably delay trial"); see also LaPrade, 2006 WL 3469532, at *4-*5. Other considerations, particularly where the plaintiff seeks to add a new defendant, include prejudice to the defense of the new defendant. Atchinson, 73 F.3d at 427.

In this case, Plaintiff waited until two weeks before the close of discovery and nearly five months after the deadline to join additional parties to try amend his Complaint to name Mr. Golomb as an individual defendant, and has provided no justification for his undue delay. Plaintiff clearly knew that Mr. Golomb was the person who decided that his application for a PSR position with DaVita Rx would not receive further consideration because Mr. Golomb called him on March 17, 2006, to advise him of the decision. (Golomb Dep. 121; Golomb Decl. ¶ 7; Mason Dep. 169.) In fact, the original Complaint filed on May 19, 2006, refers to Mr. Golomb as "[Ms.] Easlon's supervisor" who offered

to interview [plaintiff] once again." (Compl. ¶ 9.)  Plaintiff clearly knew Mr. Golomb's name when he filed the lawsuit as he had spoken with him three times in March 2006. (Mason Dep. 159-160, 169.)

In short, Plaintiff – represented by experienced employment counsel – knew months before the lawsuit was filed that Mr. Golomb made the decision not to hire him, but chose not to attempt to name him in this lawsuit in any capacity.  Plaintiff's undue delay has prejudiced Mr. Golomb.  Had Mr. Golomb known that he would be a defendant in his individual capacity, he could have retained his own counsel to represent his interests at all of the depositions that have taken place.  He would have propounded discovery that may have differed from what DaVita has propounded.  He may have chosen not to reveal certain information to DaVita's counsel, or might not have had DaVita's counsel represent him at his own deposition, depending on his own attorneys' assessment of how that information would impact his individual liability.  In Atchinson, the D.C. Circuit considered these very same sources of potential prejudice to deny a motion to amend a complaint to name several government officials in their individual capacities.  73 F.3d at 427.  The prejudice here is even more significant than in Atchinson because Mr. Golomb had not been named in any capacity, unlike the officials in Atchinson who had at least been named in their official capacities.

Allowing Plaintiff to add Mr. Golomb as a new defendant in his individual capacity will also substantially delay the resolution of this case.  Assuming, solely for the sake of argument, that the claims against Mr. Golomb are not futile, Mr. Golomb will have to be served and he will have to have an opportunity to obtain counsel and file a responsive pleading.  He will have to be afforded an opportunity to propound his own

written discovery and depose Plaintiff and his witnesses.  Mr. Golomb may wish to

commission his own expert report.  In short, adding Mr. Golomb as a new defendant at

this late date will result in another round of discovery on the very same issues that have

already been covered in the past six months, all because of Plaintiff's undue and

unjustifiable delay.  The delay would also be highly prejudicial to DaVita, as explained

infra p. 22.

      Plaintiff provides no explanation for his undue delay and merely states that

"[d]uring the course of discovery, Plaintiff has learned that after he filed an internal

complaint of discrimination, Defendant DaVita Rx offered to interview him again for a

PSR position with no intention of hiring him, and changed the selection criteria to

exclude him, despite his performance at the second interview."  (Pl.'s Mot. For Leave to

File Am. Compl. 1.)  These are not new facts uncovered in discovery.  Plaintiff's filing of

the internal complaint and Mr. Golomb's interview of Plaintiff for a PSR position were

already allegations in the original Complaint.  (Compl. ¶¶ 8-9).  The allegations that Mr.

Golomb had no intention of hiring Plaintiff and changed the selection criteria provide no

justification for Plaintiff's undue delay because they are (1) unsupported by any

evidence, and, even if true, are (2) merely an elaboration on what Plaintiff had already

alleged in the original Complaint:  That Mr. Golomb acted with an illegal motive in

refusing to advance plaintiff to the next PSR job application stage. (Compl. ¶ 12.)

      The Court also has discretion to deny leave to amend where the motion is made in

bad faith.  In Societe Liz, the Court noted that "[t]he excessive delay in seeking leave to

amend on the eve of the discovery deadline where the facts and parties have been known

to the plaintiffs strikes the Court as possible proof of bad faith and probably evidence of

dilatory motive." 118 F.R.D. at 5. Here, there is substantially more evidence of bad faith than in <u>Societe Liz</u>. Section III.B makes clear that Plaintiff's claims against Mr. Golomb are utterly frivolous. Furthermore, there is no discernable reason for including Mr. Golomb in his individual capacity. DaVita – a publicly-traded company – is capable of satisfying any judgment that might be entered in this case. The only conclusion that can be drawn is that Plaintiff seeks to delay the resolution of this case, pursue a new theory now that he knows that the facts do not support a claim of race discrimination, leverage his settlement position by making this litigation more protracted and expensive, and harm Mr. Golomb's personal and professional reputation. An examination of some of the false and misleading statements contained in the First Amended Complaint which are discussed further in Section III.C.3, <u>infra</u>, support the latter motive.

For all the foregoing reasons, the Motion for Leave to File Amended Complaint against Mr. Golomb in his personal capacity should be denied.

### C.    LEAVE TO AMEND THE COMPLAINT TO ADD A RETALIATION CLAIM AGAINST DAVITA INC. SHOULD BE DENIED.

#### 1.    Plaintiff's Allegations Regarding the Revocation of a Patient Care Technician Job Offer by DaVita in February 2007 Do Not Belong in This Lawsuit.

Plaintiff's new retaliation claim against DaVita is based on Mr. Golomb's decision not to offer Plaintiff a PSR position with DaVita Rx – a fact alleged in the original Complaint – and a new allegation that the parent company, DaVita, revoked a job offer for Plaintiff to be a PCT at its acute dialysis facility at GWU Hospital in February 2007. (First Am. Compl. ¶¶ 12, 21.) The Court should not allow Plaintiff to add

DC:949100v7

21

the February 2007 allegations to the Complaint because their inclusion will substantially delay the resolution of this case and prejudice DaVita.

The alleged February 2007 events concern Plaintiff's application for a PCT position with a different company that has nothing to do with DaVita Rx. (Golomb Decl. ¶ 2.)  The facility at GWU Hospital is an acute dialysis center run by DaVita, not DaVita Rx which is solely in the business of providing pharmacy services.  Id.  Furthermore, the decision makers involved with the February 2007 events are different from those involved in Plaintiff's unsuccessful application for a PSR position with DaVita Rx. (First Am. Compl. ¶ 12.)

Far from promoting judicial economy, allowing Plaintiff to add the February 2007 allegations to the pending lawsuit will prejudice DaVita and result in substantial delay. The inclusion of a wholly-unrelated claim could impact a jury if this case is not decided on summary judgment.  Moreover, the Court will have to set an entirely new set of deadlines for discovery on these new allegations.  DaVita will have to investigate the new allegations and file an Answer to the First Amended Complaint.  The parties will then have to propound written discovery upon each other and will have to go through another round of document production.  DaVita will have to depose Plaintiff again, and additional depositions will have to be taken of new witnesses who have yet to be identified.  This process could add another six months to this lawsuit.

The delay will undermine the fair disposition of this case which is about DaVita Rx's decision not to hire Plaintiff as a PSR.  Witnesses' memories about these events will fade over time.  Some key witnesses might no longer be in the employ of DaVita Rx or within the subpoena power by the time this case goes to trial.  The delay will also

inevitably result in higher defense costs.  For example, DaVita's attorneys will have to spend time reviewing the evidence obtained in discovery – currently fresh in their minds – for summary judgment motions that will now be pushed off for many months.

On the other hand, denying leave to amend the Complaint to add the February 2007 allegations will not prejudice Plaintiff in any way.  There is ample time for Plaintiff to file a separate lawsuit regarding the alleged job offer revocation by DaVita's GWU Hospital facility.

> **2.     Plaintiff should not be allowed to add a retaliation count based on DaVita Rx's decision not to offer Plaintiff a Pharmacy Services Representative position because the Court does not have subject matter jurisdiction over this claim.**

As set forth above, the alleged retaliatory actions by DaVita in February 2007 do not belong in this case because they concern a different job for a different employer with different decision makers.  The other event that forms the basis for Plaintiff's retaliation claim against DaVita – DaVita Rx's decision not to offer Plaintiff a PSR position in March 2006 -- does not establish the Court's subject matter jurisdiction over the claim. As discussed in Section III.B.2, supra, the key question in determining subject matter jurisdiction under the DCHRA is the "whether the [allegedly discriminatory] events took place in the District."  Matthews, 558 A.2d at 1180.  Mr. Golomb did not consider Plaintiff for a PSR position that would be based or performed substantially in the District, since that job had already been filled by someone else.  (Golomb Decl. ¶ 4.)  Moreover, the decision not to hire Plaintiff was made outside of D.C., and the interview was not conducted in D.C.  Id. ¶¶ 7-9.  The judicial decisions previously discussed make clear that, under these circumstances, the Court does not have jurisdiction over the claim under the DCHRA.  See discussion supra 13-14.

3.    **Plaintiff should not be allowed to add a retaliation count based on DaVita Rx's decision not to offer Plaintiff a Pharmacy Services Representative position because of his undue delay, bad faith, and prejudice to DaVita.**

Assuming solely for the sake of argument that the Court does have subject matter jurisdiction over the retaliation claim against DaVita, it should still disallow the proposed amendment because of Plaintiff's undue delay and bad faith in adding this count and the resulting prejudice to DaVita. As previously discussed, certainly as of May 19, 2006, when he filed this lawsuit in D.C. Superior Court, Plaintiff knew that he had filed an internal complaint of discrimination with DaVita and that his application for a PSR position was subsequently denied by DaVita Rx. (Compl. ¶¶ 8-9,12.) Plaintiff has provided no explanation for why he has waited this long to add this new theory to the case when he has known its factual predicate for the last eleven months.

Had Plaintiff included the retaliation count in his original Complaint, DaVita would have filed an Answer that would have addressed this count, and would have conducted discovery with this theory in mind. DaVita would have explored the basis of the claim in its interrogatories and document requests. It would have asked Plaintiff in his deposition the basis for his contention that DaVita Rx's decision was motivated by retaliation, as opposed to race. DaVita might have changed the scope of its expert report. DaVita could not do any of these things because Plaintiff had not asserted a retaliation claim based on the denial of the PSR position.

If the Court permits Plaintiff to add his retaliation claim now, DaVita will have to prepare and file another Answer. And even though the underlying facts regarding DaVita Rx' decision not to offer Plaintiff a PSR decision have already been explored in discovery, DaVita will likely need to serve additional interrogatories and document

requests on Plaintiff that are targeted on the retaliation allegations.  It will likely have to depose Plaintiff again.  Presumably, Plaintiff will also want to conduct discovery to support his retaliation theory.  All of these additional activities impose a substantial additional cost on DaVita – a cost which could have been avoided had Plaintiff not waited until the close of discovery to assert this claim.  In addition, as discussed on page 22, supra, a delay in the disposition of this case will prejudice DaVita's substantive defense and result in higher defense costs.

Finally, there is compelling evidence that Plaintiff is acting in bad faith – another reason for denying leave to amend.  First, as discussed, Plaintiff had all the information he needed to assert a retaliation claim against DaVita when he filed the original Complaint, but he waited until discovery was nearly over to add this claim without explanation.  Second, as shown above, there is no justification or legal basis for adding Mr. Golomb as a defendant in his individual capacity at the eleventh hour.  Third, the First Amended Complaint contains some serious misstatements of fact that cross the line of zealous advocacy.  For example, in paragraph 6 of the First Amended Complaint, Plaintiff states that Christopher Jones, the white co-worker who was offered a PSR position, had sales experience that was "limited to working in the men's department of a department store for a few months over the holidays."  (First Am. Compl. ¶ 6.)  In fact, Mr. Jones testified that his sales experience consisted of (1) working at Nordstrom for a total of eight to ten months; (2) marketing a Sunrise assisted living/nursing home facility to prospective residents and their families; and (3) working at coffee shops as a manager where he had to meet certain sales goals for food and beverages. (Jones Dep. 32-34, 38-41.)

In paragraph 10 of the Complaint, Plaintiff alleges that Plaintiff was "not selected [by Mr. Golomb for a PSR position] because he did not have sales experience." (First Am. Compl. ¶ 10.) In fact, Mr. Golomb explained at his deposition that advance Plaintiff to the next step in the interview process – not because Plaintiff did not have sales experience – but because he did not demonstrate an understanding of the sales process, as shown by his answers to situational questions. (Golomb Dep. 105-112.)

In paragraph 9 of the Complaint, Plaintiff alleges that "[b]efore speaking to Easlon about her activities, Golomb concluded that Easlon had not discriminated against Mr. Mason." There is no basis for this allegation. Mr. Golomb testified that after being advised that Plaintiff had filed an internal complaint alleging race discrimination by Ms. Easlon, he spoke to Ms. Easlon "to make sure [he] understood why she hadn't chosen the candidate and to talk to her about the communication back to the candidate about when he was no longer a part of the process." (Golomb Dep. 69-70.) Mr. Golomb also stated that one of the two reasons that he decided to interview Plaintiff himself after the internal complaint was filed was that "although [he] had been very impressed with the diversity of candidates that [he] had seen throughout the second round of the process from Kim [Easlon], [he] felt it was an important enough allegation that [he] talk to him myself to make sure that [he] agreed with her assessment of the candidate." (Golomb Dep. 67.) This testimony hardly supports the assertion that Mr. Golomb had concluded that Ms. Easlon had not discriminated against Plaintiff before speaking to Ms. Easlon.

As previously discussed, the district courts have not hesitated to deny leave to amend a complaint when the plaintiff, without justification, waited long after he or she knew about the basis for the amendment to request it and the amendment would prejudice

the defendant by requiring more discovery, imposing additional defense costs, and delaying the resolution of this case.  <u>See</u> cases cited <u>supra</u> pp. 17-18.  All of these factors are present here along with evidence of bad faith, and strongly support the denial of Plaintiff's tardy motion.

## IV.     CONCLUSION

Plaintiff's Motion to file First Amended Complaint should be denied because the Court has no personal jurisdiction as to Mr. Golomb, lacks subject matter jurisdiction as to both Mr. Golomb and DaVita, and presents time-barred claims as to Mr. Golomb.  In the alternative, the Court should deny Plaintiff's motion because of unexplained undue delay, prejudice to DaVita and Mr. Golomb, and Plaintiff's bad faith.  Under the circumstances, denial of the Motion is well-within this Court's discretion and would clearly serve the ends of justice.

Respectfully submitted,

By:     _____/s/ Minh N. Vu_____
Minh N. Vu (Bar No. 444305)
EPSTEIN BECKER & GREEN, P.C.
1227 25th Street, N.W.
Washington, D.C. 20037
Tel: (202) 861-0900
Fax: (202) 296-2882

_____/s/ Joseph T. Ortiz_____
Joseph T. Ortiz
(admitted pro hac vice)
Epstein Becker & Green, P.C.
1875 Century Park East, Suite 500
Los Angeles, CA 90067-2506
(310) 557-9542
(310) 553-2165 (fax)

Dated:  April 25, 2007          Counsel for Defendant

CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of April, 2007, a copy of DaVita Inc.'s

Memorandum Of Points And Authorities In Opposition To Plaintiff's Motion For Leave

To File First Amended Complaint was served through the Court's Electronic Court Filing

system to counsel listed below:

>   David A. Branch
>   Law Office of David A. Branch
>   1825 Connecticut Avenue, NW
>   Suite 690
>   Washington, D.C. 20009

                              /s/ Minh N. Vu
                              Minh N. Vu