# UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

| | | |
|---|---|---|
| JAMES MASON | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.:06-1319 (RMC) |
| | ) | |
| v. | ) | |
| | ) | |
| DAVITA INC. | ) | |
| | ) | |
| | ) | Jury Trial Demand |
| Defendants. | ) | |
| | ) | |

## PLAINTIFF'S REPLY TO OPPOSITION TO MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT

Comes now Plaintiff James Mason, by and through counsel, and files Plaintiff's Reply to Opposition to Motion For Leave to File First Amended Complaint, and in support thereof states as follows.

## Introduction

Plaintiff has filed a motion for leave to file an amended complaint. Defendant has filed an opposition, and argues that leave to add Golomb as a defendant should be denied because the claims are futile and Plaintiff engaged in bad faith, and leave to add claims of retaliation against DaVita should not be included in this lawsuit and because of Plaintiff's undue delay and bad faith. Plaintiff's motion for leave to amend should be granted because the Rules require that leave to amend a complaint should be freely given. In addition and substantively, the additional claims were not clear until Plaintiff received Defendant's response to written discovery and Plaintiff took the depositions of Joshua Golomb and Kim Easlon. Defendant did not file any response to Plaintiff's discovery until more than 60 days after the discovery was served, and continued to supplement its

discovery for an additional two months through April 2007.  In the written discovery and the depositions, Plaintiff learned that during the time that Plaintiff was interviewing for the PSR position, Defendant was specifically looking for individuals in patient care technician positions (Plaintiff's position) because these individuals knew dialysis, knew the patients and knew the physicians (Ex.C: 827); Golomb believed 80% of the job was sitting chairside with patients and discussing the services (Ex. C:1475); Golomb knew Mr. Mason's race and that he had filed a discrimination complaint when he agreed to give Mr. Mason a telephone interview; Golomb had been told by Easlon that she would not consider Mr. Mason for any position in her territory after she learned he filed a complaint of discrimination (although she claimed it was because of errors in an email);  Mr. Mason performed well ("solid") at his interview with Golomb (Ex. C: 005); Golomb falsely reported that Mr. Mason lacked necessary sales process experience for the position when the position did not require any sales experience; Mr. Mason had far greater relevant experience than Christopher Jones, the Caucasian who was hired for one of the PSR positions.

Further, the incident of retaliation in 2007 arises from Mr. Mason's original complaint of discrimination and should be part of this lawsuit.

### Background

Plaintiff was employed as a patient care technician (PCT) for DaVita and its predecessor for more than ten years, and in 2005, Mr. Mason was awarded the Shining Star Award for his service to patients.

In 2005, Davita advertised for Pharmacy Services Representatives (PSR) positions.  A company document announcing the position stated:  "Do you know of an

outstanding PCT [Patient Care Technician] within your area that would love a new and exciting career development opportunity within DaVita? We have positions available for Pharmacy Services Representative across the country! . . . S/he also needs to be willing to travel extensively, as the Star Rx roll-out process requires being on-site in dialysis facilities. Our current PSR's travel 75% of the time." Ex. A.

In March 2005, Kim Easlon wrote to Laura Mildenberger and stated: "I am hiring new pharmacy service representatives for Star Rx. We were looking at Pharmacy Techs for the position, but my gut tells me that PCTs from within the company would do a great job. They know dialysis, then know how to approach the patients, they know about problems patients have with their prescriptions and pharmacies." Ex. C:827

In October 2005, Golomb clarified that 80% of the PSR job was sitting chairside with patients to talk to them about the service.

"The other thing I should clarify is that the sales position is primarily patient-centric. While part of the PSR job is to meet with facilities and physicians to get them excited about the program, 80% of the job is sitting chairside with patients to talk to them about our service and sign them up. I raise that because, while your physician experience will be of great help, it is a much different position. Ex. C:1475.

Mr. Mason submitted an application in October 2005. The screening process was that Kim Easlon, Caucasian female, would conduct a telephone interview to screen applicants and then schedule an in-person interview.

In early December 2005, Easlon called Mr. Mason and requested an immediate in-person interview, even though her normal process was to call to schedule a telephone interview for a later time. At the time Mr. Mason received the call, he was at work. Mr.

3

Mason works 15 hour shifts three days a week. Although Mr. Mason was on the floor working with patients, he did not want to miss the opportunity for the interview, so he took an unscheduled break for the interview. At the end of the interview, Easlon invited Mr. Mason to Richmond for an in person interview. The date that Easlon requested for an in person interview was a day Mr. Mason was scheduled to work, and due to a shortage of staff it would have been impossible for Mr. Mason to take the day off to go to the in person interview. Easlon agreed to reschedule Mr. Mason for an interview in January 2006.

During the same period, Easlon conducted a telephone interview Christopher Jones, a Caucasian male. Jones had worked in the same facility as Mr. Mason for approximately 18 months as an administrative assistant. Jones was invited to Richmond for an in person interview. After the in person interview, Jones was asked to go to California for a second interview. Jones was interviewed in California and offered a PSR position.

Mr. Mason filed an internal complaint of discrimination in January 2006 based on his race when he learned that DaVita had hired Jones as a PSR.

Golomb was provided a copy of Plaintiff's internal complaint and contacted Plaintiff and offered him a second telephone interview. Mr. Mason agreed. Golomb thereafter contacted Mr. Mason for was suppose to be a second telephone interview and Golomb thereafter informed Mr. Mason that his application would not be advanced. Prior to conducting the second interview, Golomb spoke to Kim Easlon and she informed him she would not consider Mr. Mason for any position.

On March 17, 2006, Golomb wrote an email explaining why he did not advance Mr. Mason in the interview process. Golomb stated: "First, as per my discussion with Gail, I personally phone interviewed both James Mason and the other candidate James identified in his call. James is solid overall. Jeff was mediocre. However, neither of them were as strong as other candidates we have been interviewing in terms of the following key areas:

* Understanding and experience of sales

- Sales effectiveness (in role plays I did with them via phone)
- Thoughtfulness about approach for working with Physicians
- Flexibility (both voiced some concerns about travel)

DaVita hired Christopher Jones. At the time he was hired, Jones did not have any experience with dialysis, had not worked directly with dialysis patients providing care, and was not knowledgeable with dialysis patients and their problems with prescriptions and pharmacies.

<u>Defendant's Introduction to the Opposition</u>

In the Introduction to Defendant's memorandum, Defendant asserts that "[t]he facts uncovered during discovery have not been helpful to Plaintiff's case" and then lists three facts, including the fact that Defendant's expert concluded that 20 percent of the persons offered PSR positions were African American; the first PSR hired was African American; and within three weeks of telling Plaintiff he would not be hired, DaVita hired three additional African Americans. Contrary to Defendant's assertion, the facts uncovered during discovery establish that Defendant's discriminated against Plaintiff.

The relevant "facts" mentioned by Defendant are of no consequence and certainly have nothing to do with the motion for leave to file an amended complaint. The report submitted by Defendant's expert would not be admissible in court because Defendant does not know what percentage of the applicants for the PSR positions were African American. Even the expert acknowledges this. ("I have been asked by counsel for DaVita, Inc. to review available statistical evidence pertinent to the claims of race discrimination in the hiring process for DavVita Rx Pharmacy Services Representative ("PSRs") raised by James Mason. . . . The most direct way of performing such an analysis would be to collect data on all those who applied for DaVita RX PSR positions and compare the proportion of persons hired whose race is identified as Black to their proportion among applicants. However, I have been advised that race data exist only on those hired into the DaVita Rx PSR position at DaVita, making such a comparison impossible.") Further, although the first PSR hired by DaVita Rx was an African American, individuals other than the discriminating officials were involved in her hiring. More importantly, Defendants had only hired two African Americans at the time Plaintiff filed his complaint of discrimination and it was only after he filed a complaint of discrimination in January 2006 that Defendant began to hire African Americans.

Plaintiff has not made a "last minute attempt to recast his case by adding a retaliation claim." Plaintiff learned through discovery that Defendant Golomb was given a copy of complaint of race discrimination; that Defendant Golomb indicated that Plaintiff's performance at his deposition was "solid;" that Defendant Golomb later provided false reasons for not advancing Plaintiff's application; and these actions were taken because Plaintiff filed a complaint of discrimination against Easlon.

Although Defendant claims that the motion for leave to amend the complaint was filed five months after the November 13, 2006 deadline for the amendment of pleadings, Plaintiff served written discovery on Defendants on December 18, 2007 and Defendant did not respond to Plaintiff's written discovery until February 20, 2007, and continuing through April 2007. It was only after receipt of discovery and through depositions that Plaintiff learned of the new claims.

Defendants assert that Plaintiff's application was not advanced because of grammatical and typographical errors in an email Plaintiff sent to Easlon. However, both Easlon and Golomb have sent emails with grammatical and typographical errors.

For example, Easlon sent the following email to Alex Dellon.

"He!y [sic] Alex:
 How is it going? I hope you/re loving your new job. I have decided that PCTs' within the company might be great as PSRs. It would be a great promotion for them, they know dialysis, and they know how to deal with out patients.
 I was wondering if you knew of anyone one that might fit within the perameters [sic] of what I am looking for: [sic]
 I need someone who is very outgoing and positive, someone who is very organized and can manage themselves, plus, of course, they need to be willing to travel A LOT! We are currently asking our PSRs to travel three weeks out and one in. They will be home every weekend. After about a year and a half, they will settle into territories where the travel will be reduced substantially.
 What do you think? Do you know of anyone who fits this mold? I know everyone knows down there, but you still need to keep this quiet. Bill has told me that I can contact Linda Lansing and Helen Como. What do you think about them? Trust their judgement [sic]?"

Ex. C:825

Josh Golomb sent the following email.

"I wil[sic] mark it down [sic]

Let me know if there are any specific thigns [sic] you would like me to prove . . . if not, I'll give my standard barrage of questions." Ex. C 832.

7

**Argument**

A.    Plaintiff requested Leave to Amend his Complaint as soon as it became clear that there were additional violations of the D.C. Human Rights Act

Defendant first claims that leave to amend should be denied because Plaintiff has provided no explanation for his failure to comply with the deadline for amendment of pleadings.  Plaintiff served written discovery on Defendant on December 18, 2006.  Defendant did not file any response for more than 60 days on February 20, 2007, and continued to supplement its discovery responses through April 2007.   The existence of a claim for retaliation was not clear until Plaintiff received Defendant's response to written discovery and Plaintiff took the depositions of Joshua Golomb and Kim Easlon.  In the written discovery and the depositions, Plaintiff learned that during the time that Plaintiff was interviewing for the PSR position, Defendant was specifically looking for individuals with patient care technician positions because these individuals knew dialysis, knew the patients and knew the physicians (Ex.C. 827); Golomb believed 80% of the job was sitting chairside with patients and discussing the services (Ex.C. 1475); Golomb knew Mr. Mason's race and that he had filed a discrimination complaint when he agreed to give Mr. Mason a telephone interview; Golomb had been told by Easlon that she would not consider Mr. Mason for any position in her territory after she learned he filed a complaint against her(and allegedly because of grammatical errors in his email, when Easlon has herself sent out emails with grammatical and typographical errors) Ex. C:825;  Mr. Mason performed well at his interview with Golomb; Golomb falsely reported that Mr. Mason lacked necessary sales process experience for the position when the position did

8

not require any sales experience. Ex. C:006; Mr. Mason had far greater relevant experience than Christopher Jones, the Caucasian who was hired for one of the PSR positions.

> B.  The Court has personal and subject matter jurisdiction over the Defendant Golomb.

District of Columbia law controls the extent to which the Court may exercise personal jurisdiction over a nonresident defendant. *See Crane v. Carr,* 814 F.2d 758, 762 (D.C.Cir.1987). D.C.Code § 13-423(a)(1) provides that the Court "may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's ... transacting any business in the District of Columbia." This provision allows for jurisdiction to the fullest extent permissible under the due process clause of the United States Constitution, and "its construction is subsumed by a due process analysis." *Fisher v. Bander,* 519 A.2d 162, 163 (D.C.1986); *Schwartz v. CDI Japan, Ltd.,* 938 F.Supp. 1, 4 (D.D.C.1996). Exercising personal jurisdiction over a nonresident defendant will not violate the due process clause if the defendant has "minimum contacts" with the District of Columbia such that the exercise of personal jurisdiction will not offend the "traditional notions of fair play and substantial justice." *See International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). This "minimum contacts" requirement must be met with respect to each defendant. *See Rush v. Savchuk,* 444 U.S. 320, 332, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980).

The D.C. Court of Appeals has held that "[e]ven a small amount of in-jurisdiction business activity is generally enough to permit the conclusion that a nonresident

9

defendant has transacted business here." Environmental Research Int'l, Inc. v. Lockwood Greene Eng'rs, 355 A.2d 808, 811 (D.C. 1976) (en banc) (quoted Shoppers Food Warehouse v. Moreno, 746 A.2d 320, 331 (D.C. 2000) (en banc)).

Defendant argues that the court does not have personal jurisdiction over Defendant Golomb because individuals are not responsible if their actions were taken on behalf of their employer. In the District of Columbia, individuals may be liable under the D.C. Human Rights Act for their individual actions. The District of Columbia Court of Appeals has held that individuals may be held liable under the D.C. Human Rights Act. See Wallace v. Skadden, Arps, 715 A.2d 873, 888-89 (D.C. 1998). In Wallace, an attorney sued her law firm employer and certain partners of the firm for violations of the D.C. Human Rights Act. The Court of Appeals reversed the trial's decision to dismiss the partner defendants. The Court of Appeals noted that the Human Rights Act makes it unlawful for an employer to discriminate against an individual on account of sex, among other things, with respect to that individual compensation, terms, conditions or privileges of employment. Id. The Act defines employer as any person acting in the interest of the employer. The Act also makes it unlawful for any person to "aid, abet, invite, compel, or coerce" the doing of any of the acts forbidden under the provisions of the Act. Id. The Court of Appeals concluded that the individual partners could fall within the definition of "any person acting within the interest of such employer" and if the discrimination occurred, the individual partners who carried out the allegedly discriminatory acts aided and abetted the employer's discrimination. Id. At 888. See also, Russ v. Van Scoyoc Assocs., 59 F. Supp. 2d 317 (D.D.C. 1999) (An individual supervisor can be personally liable for acts of discrimination taken during the course of his or her employment).

Further, it is not clear that Golomb's actions were taken on behalf of his employer. The evidence in the record thus far is that Golomb concluded that Easlon had not engaged in intentional discrimination as soon as he learned of Mason's complaint and before he had spoken to Easlon. Ex. C:1464. There is no evidence that Golomb was authorized by his employer to contact Mr. Mason for a second telephone interview, or that this was the standard operating procedure. Golomb's actions appear to have been undertaken on his own initiative to pacify Mr. Mason or quell Mr. Mason's complaint of discrimination and cause him to drop his complaint. Even though Mr. Mason had advanced beyond the initial telephone interview to an in person interview, Golomb would not interview him in person, but rather conducted a second telephone interview. No other applicant was required to undergo two telephone interviews just to receive an in person interview.

Defendant argues that the court does not have subject matter jurisdiction because there were insufficient "minimum contacts" with the District of Columbia because the job in question was to be performed outside of the District of Columbia and the contact was limited to a March 17, 2006 decision by Golomb not to advance Mr. Mason's application.

First, Golomb's contact was not limited to the March 17, 2006 decision by Golomb not to advance Mr. Mason's application. Further, it is not clear that the job in question would be performed outside of the District of Columbia. Mr. Mason filed a complaint of discrimination from his home in the District of Columbia. As part of an investigation of that complaint, Golomb was sent Mr. Mason's complaint and Golomb contacted Plaintiff in the District of Columbia and explained that he was calling as a result of Mr. Mason's complaint and application for a PSR position. Golomb informed

Plaintiff a second telephone interview and they agreed that Mr. Mason would participate from his home in the District of Columbia. Golomb later contacted Mr. Mason in the District of Columbia to conduct the interview, and Mr. Mason later engaged in what he believed was an interview for a PSR position. Golomb did not tell Plaintiff he was interviewing him for a position outside of the District of Columbia. Golomb later called Mr. Mason in the District of Columbia and informed him he would not advance his application.

Plaintiff has established sufficient facts for this court to assert subject matter jurisdiction over Defendants Golomb and DaVita.

### C. Plaintiff's Claims are not Barred by the One Year Statue of Limitations

Defendants argue that Plaintiff's additional claims are barred by the one year statute of limitations for DCHRA claims. This is not true. First, Plaintiff's claims would relate back to filing of the original complaint. Plaintiff only learned during discovery the true reasons for not advancing his application and that the decision was made in retaliation for his complaint. It was only through discovery that Plaintiff learned that Golomb knew he had filed a complaint of race discrimination and the reasons given for Plaintiff's non- advancement were false.

### D.    Plaintiff did not engage in any undue delay or bad faith and no prejudice to Defendant would come as a result of the filing of the Amended Complaint.

Defendant claims that leave to amend the complaint against Golomb should be denied because Plaintiff engaged in undue delay, the filing would result in unfair prejudice and the request is made in bad faith. There is no basis for these claims.

Although Plaintiff knew in March 2006 that Golomb decided that his application for a PSR position would not receive further consideration, Plaintiff learned only through discovery that Golomb was given a copy of his complaint of discrimination; Easlon would not consider Plaintiff for any PSR position and Golomb provided false reasons on why he did not advance Mr. Mason's application.

Plaintiff has not caused any undue delay and Golomb will not prejudiced in any way by the filing of the Amended Complaint. Defendant DaVita and the individual/witnesses aligned with DaVita have been represented in their individual capacities by defense counsel at their depositions. DaVita speculates that adding Golomb will substantially delay the resolution of this case and there may need for be additional discovery. This is pure speculation. Defendant's counsel knows fully well that there is no additional discovery which needs to be done here, and if so it is limited, and would require much less action than an entirely new complaint.

Plaintiff's allegations regarding the revocation of a patient care technician job offer in February 2007 should be included in this litigation. Plaintiff alleges that Defendant's discriminated against him based on his race and retaliated against him for complaining about discriminatory treatment when DaVita revoked a job offer after he had been introduced to staff and patients. Defendant suggests that Plaintiff file a separate lawsuit regarding the alleged job offer. Such a suggestion makes no sense. The underlying claim is that the position was revoked because Plaintiff complained about discrimination. The parties are already before the court. It is illogical to suggest that two different courts should hear different claims with the same underlying facts. Most of the pertinent discovery has already been undertaken and Defendant will not be prejudiced in

any way.  In fact, filing a new complaint will unnecessarily add additional costs to both parties.

Defendant assert that Mr. Mason should not be allowed to add a retaliation count based on the decision not to offer Plaintiff a PSR position because the court does not have subject matter jurisdiction over this claim.

Defendant claims that the alleged discriminatory events did not take place in the District of Columbia because the position in the District of Columbia had already been filled.  The District of Columbia is the proper forum for the retaliation claim because Mr. Mason filed a complaint with Davita from his home in the District of Columbia; he was contacted in the District of Columbia by Golomb and offered a second interview; and he conducted the second interview from the District of Columbia.  It is not clear where Mr. Mason would have been hired if he advanced in the interview.  Mr. Mason could well have been placed in the District of Columbia because he had worked as a PCT in Washington for more than ten years and had established a relationship with patients, staff, administrators and doctors.

Finally, Defendant claims that the court should not allow Plaintiff to add a claim of retaliation based on the decision not to offer him a PSR position because of his undue delay, bad faith and prejudice.  First, it was Defendant's undue delay in responding to discovery which caused any delay in filing the motion for leave to amend the complaint.  Defendant did not respond to Plaintiff's discovery until more than 60 days after it was served, and continued to supplement the discovery for an additional two months after that.

Plaintiff disputes Defendant's claim that there are false or misleading statements in the First Amended Complaint. Defendant claims that Plaintiff misstated Jones' sales experience. Jones testified that he worked at Sunrise Assisted Living facility and when there was no marketing person or the marketing people were not available he would show rooms and talk about the perks of having a family member live there. Jones Depo. At 38-39. Jones testified that he worked at Nordstrom's Department Store for four to five months on two occasions selling men's clothing, and he worked as a clerk at a coffee store. Jones Depo. T 41. Showing an apartment or working as a clerk in a coffee shop products can hardly be considered relevant sales experience for convincing patients to order their medications from DaVita. Plaintiff has not mischaracterized Jones's experience.

Defendant also claims Plaintiff misstated that Golomb concluded that Easlon had not discriminated against Mr. Mason before speaking to Ms. Easlon. However, in an email to Gail Gardner, Golomb admitted just this. Golomb stated: "Unless you advise me otherwise, I will assume it would be inappropriate for me to talk with Kim to try to get the details of the incident. I am guessing it is a case of poor communication on our part. I know that Kim did go on vacation and that we were interviewing a number of folks for different slots . . . be we did change our roll-out plan around that time. **I am confident that Kim did not intentionally discriminate** (if anything, we are trying to identify as diverse of a candidate pool as possible). But cognizant that our communication may have been poor and left the candidate with no other plausible explanation." (Emphasis added). Ex. C: 1464.

15

Conclusion

There is no valid basis for denying Plaintiff's motion for leave to amend and the motion should be granted.

                                           Respectfully submitted,

                                           /s/
                                         David A. Branch #438764
                                         Law Offices of David A. Branch
                                         1825 Connecticut Avenue, NW
                                         Suite 690
                                         Washington, D.C. 20009
                                         (202) 785-2805

**Certificate of Service**

I hereby certify this 17th day of May 2007 that a copy of the foregoing Plaintiff's Reply to Defendant's Opposition Response to Motion for First Amended Complaint was sent to Defendants' counsel listed below.

Minh N. Vu
Epstein Becker & Green, P.C.
1227 25th Street, NW, Suite 700
Washington, D.C. 20037-3541

                                           /s/

                                         David A. Branch