UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| JAMES MASON<br>717 Ingraham Street, NW<br>Washington, D.C. 20012,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>DAVITA INC.<br>601 Hawaii Street<br>El Segundo, CA 90245,<br><br>　　　　　　Defendant. | )<br>)<br>)<br>) Civil Action No. 06-1319 (RMC)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**DECLARATION OF KIMBERLY L. EASLON**

I, Kimberly L. Easlon, declare as follows based on my personal knowledge:

1. I am a Regional Services Manager of Davita Rx, a Delaware limited liability company owned by DaVita, Inc. ("DaVita"). I have held this position since March or April of 2006. From February 2005 to March or April of 2006, I was the Regional Sales Manager for DaVita Rx. I am submitting this declaration in support of DaVita Inc.'s Motion for Summary Judgment and to supplement the record with facts that were not fully addressed in my deposition testimony.

2. As the Regional Sales Manager for DaVita Rx from February 2005 to March or April 2006, I was responsible for developing a sales force for the company consisting of Pharmacy Services Representatives ("PSR") who would be based in specific locations throughout the United States. These PSRs would promote the DaVita Rx pharmacy service to patients of DaVita's dialysis centers, as well as the teammates and physicians who work in those

DC:1017705v1

centers. A true an accurate copy of the Job Description for the PSR position that was in effect during this period is at Tab A.

3. From February 2005 to March or April of 2006, I was responsible for conducting the first two rounds of interviews with PSR candidates which consisted of an telephonic screening interview and in-person interview. If I determined that a candidate was qualified for a PSR position, I would invite the candidate for interviews in California with other DaVita Rx managers, including, in most cases, DaVita Rx director, Josh Golomb.

4. In the Fall of 2005, DaVita Rx recruited PSRs by posting PSR vacancies for specific geographic locations on DaVita's website as well as general career websites on the Internet. Examples of some of the PSR job postings on DaVita's website are attached at Tab F. In the September 2005 timeframe, DaVita Rx also sent a flyer to facility administrators asking them if they knew of any outstanding Patient Care Technicians ("PCTs") (i.e., dialysis technicians) who would be interested in applying for a PSR position. A true and accurate copy of this flyer is attached at Tab B.

5. In late 2005, I was in the process of interviewing candidates for PSR positions in several states, including Washington, D.C. DaVita Rx had determined that there would be one PSR based in Washington, D.C. I received the resume of James Mason in early December 2005 and called him for a telephone screening interview. A true and accurate copy of Mr. Mason's resume is attached at Tab C. At the end of the interview, I invited Mr. Mason to come interview with me in-person in Richmond, Virginia on December 12, 2005. I was coming to Richmond for that one day for the purpose of interviewing PSR candidates for the D.C. and Richmond positions. My home office is located in Oklahoma.

6.    Mr. Mason stated that he could not meet me on December 12, 2007, because of his work schedule. In response, I told Mr. Mason that we would have to reschedule after the first of the year because I was going on vacation at the end 2005 and would not be back in the D.C. area before then.

7.    I proceeded with my in-person interviews for the D.C. PSR position on December 12, 2005. I interviewed Christopher Jones, another applicant for the D.C. PSR position on that date. For the reasons set forth in my deposition testimony, I found Mr. Jones to be an excellent candidate and invited him to interview with my colleagues in California. Among other qualities, I remember him being very enthusiastic about the extensive travel required by the job. Following his California interviews, I offered Mr. Jones the D.C. PSR position on or about December 20, 2005. He accepted the offer and began work in January 2006. A true and accurate copy of Mr. Jones' resume is attached at Tab D.

8.    As I explained at my deposition, I was under pressure to fill as many PSR positions as quickly as possible. It was not my practice to delay the process so that I could interview and compare as many candidates as possible. Once I found a qualified candidate for a position, I would fill the position and move on to the next open PSR position. Thus, as soon as I filled the D.C. PSR position, Mr. Mason was no longer under my consideration for a PSR position.

9.    On January 6, 2006, Mr. Mason sent me an e-mail inquiring about the PSR position. A true an accurate copy of the e-mail that he sent me is attached at Tab E.

10.    Mr. Mason's short e-mail contained a number of spelling and grammatical errors that struck me as inappropriate for an e-mail from someone who was applying for a job. Based

on this e-mail, I concluded that Mr. Mason was not qualified for a PSR position which requires attention to detail.

11. On January 9, 2006, I responded to Mr. Mason's e-mail and apologized for not getting back to him sooner. I informed him that the position in his state had been filled. A true and accurate copy of the e-mail that I sent to Mr. Mason is attached at Tab F.

12. I did not consider Mr. Mason for any PSR locations outside of Washington, D.C. because it was DaVita Rx's practice at that time to only consider candidates for positions based in the state where they were living, unless the applicant had plans to move to the state where the PSR position was located. In fact, as of January 9, 2006, when I informed Mr. Mason that the D.C. PSR position had been filled, DaVita Rx had never hired anyone for a position that was located outside their home state unless the person already had plans to move to the location of the PSR position. In addition, while I might have kept Mr. Mason's resume on file for other PSR positions that might come up in his area in the future, his January 6, 2006 e-mail to me made it clear that he lacked the attention to detail required for the job.

13. Sometime after I had informed Mr. Mason that the D.C. position had been filled, I learned that Mr. Mason filed a complaint of race discrimination against me. This was the first time that I learned of Mr. Mason's race. At no time prior to being informed about the complaint did I know what Mr. Mason's race is. We had never met in person and he never told me his race. The only information I had about him was from his resume which did not indicate his race. I did not look at his personnel file or discuss his application with anyone at DaVita.

14. In building the PSR sales force, DaVita Rx drew people from many different backgrounds. Of the 46 PSRs hired by DaVita Rx from its inception to December 18, 2006, only seven had worked as dialysis technicians or Patient Care Technicians (DaVita's title for a

dialysis technician). At least 22 of these 46 PSRs had some sales experience listed on their resumes. A true an accurate copy of the resumes of the PSRs with sales backgrounds are attached at Tab G. DaVita Rx also hired people with administrative backgrounds, social work/insurance backgrounds, patient care backgrounds, and pharmacy backgrounds. Only one of the nine African-Americans who were hired by DaVita Rx as PSRs from its inception to December 18, 2006, had experience working as dialysis technicians.

15. DaVita Rx considered dialysis experience to be helpful to the PSR job to the same extent that administrative, patient care, social work, and pharmacy experience were considered relevant, but this experience was not a requirement.

16. Attached is a chart which was prepared for this litigation listing all of the persons who were offered PSR positions from its inception to December 18, 2006. I have reviewed this chart and it is true and accurate to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Date: June 25 2007

Kimberly J. Easlon

- 5 -