## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CECILIA GRILLO,

**Plaintiff,**

v.

LUCENT TECHNOLOGIES, INC.,

**Defendant.**

Civil Action No. 02-0962 (JDB)

## MEMORANDUM OPINION

Plaintiff Cecilia Grillo ("Grillo") brings several discrimination and contract claims

relating to the termination of her employment with defendant Lucent Technologies, Inc.

("Lucent"). Count I of plaintiff's complaint alleges that Lucent violated the District of Columbia

Human Rights Act, D.C. CODE ANN. § 1-2501, et seq. (2003) ("DCHRA"), by discriminating

against her on the basis of race, age, and gender. Counts II and III allege breach of contract and

promissory estoppel claims, respectively. Count IV alleges violations of Title VII of the Civil

Rights Act of 1964, 42 U.S.C. §2000e et seq. ("Title VI"), and Count V alleges violations of the

Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA"). Finally, Count VI

alleges race discrimination under 42 U.S.C. § 1981. Presently before the Court is defendant's

motion to dismiss Counts I-III and to transfer Counts IV-VI to the United States District Court

for the District of Maryland.

## BACKGROUND

Grillo is an African American female, born on October 1, 1958. She has at all relevant

times been a resident of the state of Maryland. Am. Compl. ¶ 3. She began her employment with

1

Lucent in 1980 and was terminated on October 27, 2001. Id. ¶ 5.

At the time of her termination, Grillo was a project manager, responsible for overseeing Lucent's NetworkCare Knowledge Center ("NKC"). Id. She was the only African-American among the eight project managers in her division. From 1998 until her termination, Grillo was supervised by JoAnn Marchisio ("Marchisio"), who was based in New Jersey, Lucent's principle place of business. Marchisio Dec. ¶¶ 1-3. Grillo had a "virtual office": she worked from her home in Silver Spring, Maryland, and used office equipment provided by Lucent. Grillo identified her home office as her "jobsite" on her sworn EEO Charge of Discrimination. See Def. Mot. Dismiss, Ex. 1.

While under Marchisio's supervision, Grillo's primary responsibility was the management of an account in Northern Virginia. Marchisio Decl. ¶ 6. Grillo managed other smaller accounts as well, one of which was Bolling Air Force Base in Washington, D.C. According to her supervisor, Grillo made only one brief visit to Bolling Air Force base – on April 12, 2000. Marchisio Dec. ¶ 7. Grillo claims that she had monthly contact with Bolling through telephone and written communications, and *may* have visited Bolling Air Force Base more than once. Grillo Decl. ¶ 6. Other than her one, or perhaps few, visits to the Base, Grillo had no other employment activities in the District of Columbia, and all her other customers and accounts were located elsewhere. Marchisio Dec. ¶ 8.

Grillo received positive feedback on her job performance while employed by Lucent. She received high ratings on evaluations throughout her tenure and had been rewarded for her performance with stock options and the Lucent Chairman's Award. Am. Compl. ¶ 7. At the time of her termination, Grillo had approximately 6,650 outstanding shares of Lucent stock options

2

which were provided to her as compensation but had not yet vested. Id. at ¶ 7.

Grillo claims that at some point between 2000 and 2001 she was offered an employment opportunity with another division of Lucent, but declined the offer because her manager assured her that she was not "releasable." Am. Compl. ¶ 8. In 2001, several of Lucent's accounts began to generate less revenue than in prior years and some project managers were transferred from these underperforming accounts to other, more stable accounts. Id. at ¶ 9. When one of Grillo's customers went bankrupt, however, she was not reassigned. Instead, on October 17, 2001, Grillo was terminated. She was at the time the most senior project manager in her division, but she was the only project manager terminated. Id. She allegedly had better performance ratings and a more extensive educational background than several of the white employees who were retained. Id. at ¶¶ 9-10. Grillo claims that her termination was the result of Lucent's unlawful discrimination based on age, race, and gender; specifically, that Lucent made special efforts to retain white managers by reassigning them to profitable accounts while failing or refusing to reassign her. Id.

Following her termination, Grillo filed an action against Lucent in the Superior Court of the District of Columbia on April 11, 2002, alleging a violation of the DCHRA, breach of employment contract, and promissory estoppel. On May 16, 2002, Lucent removed the case to this Court pursuant to 28 U.S.C. §§ 1444 and 1446. After the parties had briefed Lucent's motion to dismiss the complaint, Grillo filed a motion to amend her complaint in May 2003, which was granted on January 6, 2004. The amended complaint added alleged violations of Title VII, the ADEA, and 42 U.S.C. § 1981.

## DISCUSSION

### A. Applicable Legal Standard

A motion to dismiss for lack of subject-matter jurisdiction under FED R. CIV. P. 12(b)(1) should not prevail "unless plaintiffs can prove no set of facts in support of their claim which would entitle them to relief." Kowal v. MCI Commun. Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994); Beverly Enters., Inc. v. Herman, 50 F. Supp. 2d 7, 11 (D.D.C. 1999). At this juncture, plaintiffs enjoy all favorable inferences that can be drawn from the alleged facts. See EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997). That notwithstanding, a court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority," and plaintiffs bear the burden of pleading a claim within a court's subject-matter jurisdiction. Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001); see also Pitney Bowes, Inc. v. United States Postal Serv., 27 F. Supp. 2d 15, 18 (D.D.C. 1998). A court may consider material other than the allegations of the complaint in determining whether it has jurisdiction to hear the case. See, e.g., St. Francis Xavier Parochial Sch., 117 F.3d at 624-25 n. 3; Herbert v. Nat'l Acad. of Scis., 974 F.2d 192, 197 (D.C. Cir.1992); Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir. 1987); Hohri v. United States, 782 F.2d 227, 241 (D.C. Cir. 1986).

Furthermore, a court will dismiss or transfer a case if venue is improper or inconvenient in the plaintiff's chosen forum. FED. R. CIV. P. 12(b)(3). To prevail on a motion to dismiss for improper venue pursuant to Rule 12(b)(3), the defendant must present facts that will defeat the plaintiff's assertion of venue. See Flynn v. Veazey Const. Corp., 310 F. Supp. 2d 186, 190 (D.D.C. 2004); CHARLES ALAN WRIGHT & ARTHUR MILLER, 5B Fed. Prac. & Proc. 1352 (2004).

4

Venue in Title VII cases is governed exclusively by the statute's venue provision, which provides that Title VII actions:

> may be brought in any judicial district in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office.

42 U.S.C. § 2000e-5(f)(3).

The courts have recognized that this Title VII venue provision reflects a deliberate intent by Congress to "limit venue to the judicial districts concerned with the alleged discrimination." Stebbins v. State Farm Mutual Auto. Ins. Co., 413 F.2d 1100, 1102 (D.C. Cir.), cert. denied, 396 U.S. 895 (1969). Hence, the initial inquiry must be as to the locus of the alleged discrimination. See Washington v. General Elec. Corp., 686 F. Supp. 361, 363 (D.D.C. 1988); Donnell v. National Guard Bureau, 568 F. Supp. 93, 94 (D.D.C. 1983); see also Lamont v. Haig, 590 F.2d 1124, 1134 (D.C. Cir. 1978). If the essence of the challenged employment practice occurred in a specific district, then that is the locus of the discriminatory acts and the proper venue under 42 U.S.C. § 2000e-5(f)(3). James v. Booz-Allen & Hamilton, Inc., 227 F. Supp. 2d 16, 20 (D.D.C. 2002) (citing Donnell, 568 F. Supp. at 94).

Claims under the ADEA and § 1981 are subject to the general venue statute for federal claims, 28 U.S.C. § 1391(b)(2). That provision states:

> A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which

any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b)(2).

**B. DCHRA Claim**

Grillo alleges that defendant unlawfully discriminated against her on the basis of race, age, and gender in violation of the DCHRA by subjecting her to disparate treatment in work assignments and selection for reduction in force, and by adopting a reduction-in-force policy that allegedly had a disparate impact on African Americans. Am. Compl. ¶ 15. Defendant argues that this claim must be dismissed for lack of subject matter jurisdiction because the alleged discriminatory activities are not covered by the DCHRA.

The stated purpose of the DCHRA is "to secure an end in the District of Columbia to discrimination for any reason other than that of individual merit." D.C. CODE § 2-1401.01. In determining jurisdiction under the DCHRA, "the critical factual issue is whether the[] events [alleged in plaintiff's complaint] took place in the District." Quarles v. Gen. Inv. & Dev. Co., 260 F. Supp. 2d 1, 20 (D.D.C. 2003) (citing Mathews v. Automated Bus. Sys. & Serv., Inc., 558 A.2d 1175 (D.C. 1989)). Defendant argues, and Grillo does not contest, that all of the allegedly discriminatory events in this case took place outside the District of Columbia. Grillo worked from her home in Maryland and made, at most, a few brief visits to a customer located in the District at Bolling Air Force Base. All decisions relating to Grillo's work assignments were made outside the District. Marchisio Decl. ¶ 9. Most importantly, the adoption of a force reduction policy and the decision to terminate her employment -- the actions that form the basis of her discrimination claim -- were employment decisions made outside of the District. The actual letter of termination was sent from Colorado to her home in Maryland. Id. ¶¶ 9-10.

6

Grillo argues, however, that the DCHRA applies even if Lucent's allegedly discriminatory employment decisions occurred outside of the District because "a critical portion of [her] job was in the District of Columbia," Pl. Opp. Mot. Dis. 3.[1] She cites <u>Green v. Kinney Shoe Corp.</u>, 704 F. Supp. 259, 260 (D.D.C. 1988), in which the plaintiff applied in Maryland for employment positions in the District and claimed discrimination when his application was denied. The court in <u>Green</u> held that "[t]he broad language of the Act [DCHRA] leads the Court to understand that the Human Rights [Act] was intended to cover all discrimination concerning jobs located in the District of Columbia, even if the application and decision to discriminate were made outside of the District." <u>Green</u>, 704 F. Supp. at 260. Reliance on <u>Green</u>, however, requires Grillo to show that her job was located in the District. The jobs at issue in <u>Green</u>, "were clearly jobs to be performed primarily, if not exclusively, in the District of Columbia." 704 F. Supp. at 260. That is not the case here. Despite her acknowledgment that she worked from a home office in Maryland, Grillo asks the Court to accept that the performance of one or few employment assignments within the District of Columbia amounted to her having a job "located in the District of Columbia." The truth is that Grillo's presence in the District "arose from occasional servicing of accounts" here. <u>Honig v. D.C. Office of Human Rights</u>, 338 A.2d 887 (D.C. 1978) (upholding District of Columbia Office of Human Rights' decision dismissing complaint for lack of jurisdiction). The fact that one of Grillo's customers was located in the District does not establish that her job was located in the District for DCHRA purposes, particularly because she spent the vast majority of her employment working outside the District for clients located outside the District.

---

[1] In her opposition to the motion presently before the Court, plaintiff incorporates by reference her June 7, 2002, opposition to Lucent's prior motion to dismiss.

In sum, plaintiff fails to establish either of two possible jurisdictional bases for bringing

her claim within the DCHRA.  She does not allege that any discriminatory actions were taken

within the District of Columbia and thus lacks "the most crucial factual issue bearing on

jurisdiction."  Blake v. Prof'l Travel Corp., 768 A.2d 568, 571 (D.C. 2001).  Further, the location

of a single customer within the District does not establish that her job was located here.  For

these reasons, her DCHRA claim must be dismissed for lack of subject matter jurisdiction.

**C. Federal Law Claims**

Plaintiff's claims under Title VII, the ADEA and 42 U.S.C. § 1981 are based on the same

factual allegations as her DCHRA claims.  As noted above, the Title VII venue provision states

that Title VII claims may be brought in any judicial district in which the unlawful employment

practice is alleged to have been committed, the employment records relevant to such practice are

maintained and administered, or the aggrieved person would have worked but for the alleged

unlawful employment practice, and only if the respondent is not found within any such district,

the action may be brought within the judicial district in which the respondent has his principal

office.  See 42 U.S.C. § 2000e-5(f)(3).  The Title VII venue provision is narrower than the

general venue provision of 28 U.S.C. § 1392(b)(2), which governs plaintiff's ADEA and § 1981

claims.  When a plaintiff brings a claim under both 42 U.S.C. § 1981 and Title VII, the narrower

Title VII venue provision controls.  James, 227 F. Supp. 2d at 21; Quarles, 260 F. Supp. 2d at

33.  For actions brought under Title VII, if the plaintiff brings a suit in a jurisdiction that does not

satisfy one of the venue requirements listed in 42 U.S.C. § 2000e-5(f)(3), venue is improper.

James, 227 F. Supp. 2d at 20; Washington v. Gen. Elec. Corp., 686 F. Supp. 361, 363 (D.D.C.

1988).

Grillo fails to establish venue in the District of Columbia under any of Title VII's venue

8

criteria. None of the allegedly discriminatory conduct occurred within the District. All relevant employment records are kept outside the District in either New Jersey, Colorado, or at a data storage facility. Marchisio Decl. ¶ 9. Moreover, as discussed above, Grillo's home office was in Maryland, and she spend the vast majority of her employment working for clients located outside the District of Columbia. Grillo focuses on the third prong of the Title VII venue provision, arguing that she may bring her Title VII action in the District because she "would have continued to work as the project manager on the Bolling Air Force Base contract for Lucent in the District of Columbia had she not been terminated." Pl. Opp'n at 3. Grillo's reading of the statute would introduce a degree of contingency into the Title VII venue inquiry inconsistent with the statute's emphasis on having each case heard in the jurisdiction that was the locus of the alleged discrimination. See Stebbins, 413 F.2d at 1102; Washington, 686 F. Supp. at 363. Minimal contact with a location would suffice to establish venue for Title VII purposes if a plaintiff could simply hypothesize that continued employment would have resulted in further dealings there.

Nor do the relevant cases support Grillo's theory. In James, the court held that "the use of the article 'the' rather than 'a' [in the third prong of the venue provision] strongly suggests that the statutory requirement refers to the aggrieved individual's place of work, and not any district in which the individual's work might take him." James, 227 F. Supp. 2d at 23; see also EEOC v. Mayflower Transit, Inc., No. 93-0280-LFO, 1993 U.S. Dist. LEXIS 8181, *4-5 (D.D.C. 1993); Elezovic v England, No. 03-0131, 2003 U.S. Dist. LEXIS 18747, *4 (D.D.C. 2003) ("If the essence of the challenged employment practice occurred in a specific district, then that is the locus of the discriminatory acts and the proper venue under 42 U.S.C. § 2000e-5(f)(3).").
Maryland, not the District of Columbia, is thus the judicial district in which Grillo would have worked but for the alleged unlawful employment practice.

9

Grillo cannot establish venue under the first three prongs of the Title VII venue provision.
The fourth prong only applies if there is no other district where venue is appropriate, which is not
the case here. Because plaintiff could properly assert venue in Maryland, where she would have
continued to work had she not been terminated, her Title VII claim is properly transferred to the
District of Maryland. See, 28 U.S.C. § 1404(a) ("For the convenience of parties and witnesses,
in the interest of justice, a district court may transfer any civil action to any other district or
division where it might have been brought.").

Likewise, the District of Maryland is a proper venue for plaintiff's ADEA and § 1981
claims. "[A] substantial part of the events or omissions giving rise to the claim[s]" of Grillo's
amended complaint occurred in Maryland. See 28 U.S.C. § 1391(b)(2). Thus, all of her federal
claims are appropriately transferred to the District of Maryland.

## D. Common Law Claims

In the interest of judicial economy, it is appropriate to transfer plaintiff's two common
law contract claims along with her federal claims. See Morgan Guar. Trust Co. v. Tisdale, No.
95 Civ. 8023, 1996 U.S. Dist. LEXIS 14037 (S.D.N.Y. Sept. 23, 1996) (transferring common
law claims as well as federal claims where federal claims were proper in another forum); Private
Label, Ltd. v. Inoff, No. 92-7120, 1993 U.S. Dist. LEXIS 5041 (E.D. Pa. Apr. 19, 1993) (same).
Hence, these claims will also be transferred to the District of Maryland.

## CONCLUSION

For the foregoing reasons, the Court will grant defendant's motion to dismiss plaintiff's
DCHRA claim. Plaintiff's federal and common law claims will be transferred to the United
States District Court for the District of Maryland pursuant to 28 U.S.C. § 1404(a), venue for the

federal claims properly lying in that court but not in this Court. A separate order accompanies

this memorandum opinion.

<u>/s/</u>

JOHN D. BATES
United States District Judge

Signed this <u>28th</u> day of July, 2004.

Copies to:

David A. Branch
LAW OFFICE OF DAVID A. BRANCH
1825 Connecticut Avenue, NW
Suite 690
Washington, DC 20009
(202) 785-2805
Fax : (202) 785-0289
Email: dablaw@erols.com

Frank Charles Morris, Jr.
EPSTEIN, BECKER & GREEN, P.C.
1227 25th Street, NW
Washington, DC 20037
(202) 861-1880
Fax : 202-296-2882
Email: fmorris@ebglaw.com

Brian Wayne Steinbach
EPSTEIN BECKER & GREEN, P.C.
1227 25th Street, NW
Suite 700
Washington, DC 20037
(202) 861-0900
Fax : (202) 861-2882
Email: bsteinbach@ebglaw.com

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CECILIA GRILLO,

  Plaintiff,

    v.

LUCENT TECHNOLOGIES, INC.,

  Defendant.

Civil Action No. 02-0962 (JDB)

## ORDER

  Upon consideration of defendant's motion to dismiss Counts I through III and to transfer Counts IV through VI to the United States District Court for the District of Maryland, and for the reasons stated in the Memorandum Opinion issued herewith, it is this 28th day of July, 2004, hereby

  ORDERED that the motion is GRANTED in part; and it is further

  ORDERED that Count I of plaintiff's complaint is DISMISSED; and it is further

  ORDERED that this case, including Counts II through VI of the complaint, is TRANSFERRED to the United States District Court for the District of Maryland.

          /s/
        JOHN D. BATES
       United States District Judge

-1-

Copies to:

David A. Branch
LAW OFFICE OF DAVID A. BRANCH
1825 Connecticut Avenue, NW
Suite 690
Washington, DC 20009
(202) 785-2805
Fax : (202) 785-0289
Email: dablaw@erols.com

Frank Charles Morris, Jr.
EPSTEIN, BECKER & GREEN, P.C.
1227 25th Street, NW
Washington, DC 20037
(202) 861-1880
Fax : 202-296-2882
Email: fmorris@ebglaw.com

Brian Wayne Steinbach
EPSTEIN BECKER & GREEN, P.C.
1227 25th Street, NW
Suite 700
Washington, DC 20037
(202) 861-0900
Fax : (202) 861-2882
Email: bsteinbach@ebglaw.com

-2-

Westlaw.

Not Reported in F.Supp.                                                                    Page 1

Not Reported in F.Supp., 1990 WL 209266 (D.Md.), 54 Fair Empl.Prac.Cas. (BNA) 61, 55 Empl. Prac. Dec. P
40,361
**(Cite as: Not Reported in F.Supp.)**

C
Martin v. Holiday Universal, Inc.
D.Md.,1990.

United States District Court, D. Maryland.
Cordell MARTIN et al., Plaintiffs
v.
HOLIDAY UNIVERSAL, INCORPORATED et
al., Defendants.
No. JH-90-1188.

Oct. 3, 1990.

JOSEPH C. HOWARD, District Judge:
*1 Pending before the court is defendants' motion to
dismiss plaintiffs' first amended complaint.
Plaintiffs have opposed the motion and defendants
replied. No hearing is necessary to resolve the
legal questions presented. Local Rule 105.6.

The two count amended complaint was filed by six
plaintiffs who allege violations of the 1866 Civil
Rights Act, 42 U.S.C. § 1981, and the District of
Columbia Human Rights Act, D.C.Code Ann. §§
1-2501 to 1-2557 (1987) ( "DCHRA"). These
causes of action center generally on the defendants'
alleged corporate policy of maintaining segregated
health clubs and the employment discrimination
which flows from it.

The standard for a motion to dismiss is well known.
On a motion to dismiss, the inquiry is whether the
allegations are "a short and plain statement of the
claim showing that the pleader is entitled to relief ...
" as required by Fed.R.Civ.P. 8(a)(2). *Bolding v.
Holshouser,* 575 F.2d 461, 464 (4th Cir.1978), *cert.
denied,* 439 U.S. 837 (1978). "[A] complaint
should not be dismissed for failure to state a claim
unless it appears beyond a doubt that the plaintiff
can prove no set of facts in support of his claims
which would entitle him to relief." *Conley v.
Gibson,* [1 EPD ¶ 9656] 355 U.S. 4-45-46 (1957)
(footnote omitted). Also, on a motion to dismiss

the court is required to view the facts in the
complaint in a light most favorable to the plaintiffs.
*Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974).
Further, the defense of limitations will only be
successful when the running of the statute is
apparent from the face of the complaint. *Conerly v.
Westinghouse Elec. Corp.,* [23 EPD ¶ 31,107] 623
F.2d 117, 119 (9th Cir.1980).

Defendants' motion to dismiss focuses on four main
arguments. First, the defendants argue that the
recent Supreme Court case of *Patterson v. McLean
Credit Union,* [50 EPD ¶ 39,066] 57 U.S.L.W.
4705 (June 15, 1989), disposes of many of
plaintiffs' § 1981 claims, and second that the
appropriate statute of limitations for the § 1981
claims bars recovery. Third, defendants assert that
this court lacks subject matter jurisdiction of over
the DCHRA claims, and finally that the DCHRA
claims are barred by the statute of limitations. The
court will address each argument in turn.

*Count One (Section 1981)*

The first argument in support of defendants motion
to dismiss focuses on the scope of the Supreme
Court's holding in *Patterson.* Generally,
defendants argue that after *Patterson,* the plaintiffs
can no longer state a cause of action under § 1981.
Plaintiffs, of course, argue that the ramifications of
*Patterson* are not as broad as defendants suggest.

Section 1981 of Title 42 of the United States Code
provides that all "persons within the jurisdiction of
the United States shall have the same right in every
State and Territory to make and enforce contracts ...
as is enjoyed by white citizens." However, this
statute "cannot be construed as a general
proscription of racial discrimination in all aspects of
contract relations, for it expressly prohibits
discrimination only in the making and enforcement
of contracts." *Id.* at 4708. Therefore, § 1981 "

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                    Page 2

Not Reported in F.Supp., 1990 WL 209266 (D.Md.), 54 Fair Empl.Prac.Cas. (BNA) 61, 55 Empl. Prac. Dec. P
40,361
**(Cite as: Not Reported in F.Supp.)**

prohibits, when based on race, the refusal to enter into a contract with someone, as well as the offer to make a contract only on discriminatory terms." *Id.* Conduct, after the contractual relationship has been established and unrelated to an employee's right to enforce her contract, may not ordinarily be the basis for a § 1981 claim. *Id.* at 4709.

*2 All of the plaintiffs allege that they were refused, on discriminatory grounds, the opportunity to contract with defendants for employment on equal terms in violation of § 1981. As this states a cause of action pursuant to § 1981, the motion to dismiss will be denied. The remaining allegations in the amended complaint concerning working conditions are simply evidence of this and will remain in the complaint as surplus. *Id.* at 4710.

The plaintiffs, Cordell Martin and Raphael McKeython, allege an additional basis for their § 1981 claims based on the denial of their promotion and transfer requests. In *Patterson,* the Supreme Court held that under certain circumstances an employer's failure to promote is actionable under § 1981. The key determination "depends upon whether the nature of the change in position was such that it involved the opportunity to enter into a new contract with the employer." *Id.* If the change does involve a new contract, "then the employer's refusal to enter the new contract is actionable under § 1981." *Id.* Accordingly, these allegations state a cause of action and further factual scrutiny may be appropriate.[FN1]

Two plaintiffs, Cordell Martin and Myrna Pitts, also allege that the discriminatory discharge from their employment with defendants violated § 1981. Defendants contend that this is postformation conduct and is therefore outside of the scope of § 1981 after *Patterson.* This issue has received considerable attention, but the district and circuit courts have not resolved the question uniformly. Other than the vacated holding in *Patterson v. McLean Credit Union,* 805 F.2d 1143, 1145 (4th Cir.1986), there is no definitive precedent in the Fourth Circuit.[FN2]

The court recognizes that sound arguments can be

made for and against the holding that discriminatory discharge is actionable under § 1981. However, the court holds the thorough analysis in *Hicks v. Brown Group, Inc.,* [53 EPD ¶ 39,823] 902 F.2d 630 (8th Cir.1990), is the most compelling. In *Hicks,* the Eighth Circuit carefully considered the Supreme Court's holding in *Patterson, Hicks,* 902 F.2d at 635-38, as well as Supreme Court precedent after *Patterson, Hicks,* 902 F.2d at 637. In addition, *Hicks* analyzed the cases reaching a contrary result, *id.* at 640 n. 24, the relevant legislative history, *id.* at 642-48, and the purpose of § 1981. *Id.* at 638-42. After considering all of these factors, the court reached the conclusion that § 1981 permits a cause of action for retaliatory discharge. *Id.* at 648.

The court chooses to follow *Hicks* for several reasons. First, the reasoning of *Hicks* is extensive. On the other hand, the cases that hold to the contrary of *Hicks* end the analysis with a mechanical and uncritical application of the language in *Patterson.* That a more subtle analysis is appropriate is indicated by *Patterson* itself. For example, certain postformation conduct, such as the failure to promote, is actionable under § 1981, *Patterson,* 57 U.S.L.W. at 4710, as well as postformation conduct which impairs an employee's right to enforce his or her contract. *Id.* at 4709. In addition, if this issue were as obvious as these courts suggest, then the Supreme Court's conspicuous and repeated avoidance of deciding this question is curious indeed. *Lytle v. Household Mfg., Inc.,* [52 EPD ¶ 39,733] 58 U.S.L.W. 4341, 4343 n. 2 (March 20, 1990).

*3 Second, in the context of a motion to dismiss, it is difficult to carefully analyze precedent because the facts of this case are not in issue. The sole question before the court is whether the plaintiffs have stated a cause of action. Inasmuch as the plaintiffs have colorably stated a cause of action, it cannot be said to a certainty that the plaintiffs would be entitled to no relief under any set of facts which could be proved in support of the § 1981 claims. *Adams v. Bain,* 697 F.2d 1213, 1216 (4th Cir.1982).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

Page 3

Not Reported in F.Supp., 1990 WL 209266 (D.Md.), 54 Fair Empl.Prac.Cas. (BNA) 61, 55 Empl. Prac. Dec. P 40,361
(Cite as: Not Reported in F.Supp.)

Finally, plaintiff Cordell Martin alleges a violation of § 1981 based on his retaliatory discharge from his employment with defendants. Specifically, he contends that he was threatened with termination for speaking out against defendants' discriminatory policies. Once again, defendants make much of the holding in *Patterson* and argue that this postformation conduct may not be the basis for a § 1981 violation. Although the law is unsettled on this issue, the court disagrees with defendants' argument.

In the context of retaliatory discharge, the right to enforce a contract is even more clearly implicated than in the case of discriminatory discharge. When an employer retaliates against an employee by threatening discharge when the employee is attempting to enforce his § 1981 rights, the employer's action may intimidate the employee into refraining from resorting to the legal process to vindicate his rights. *Hicks*, 902 F.2d at 638 n. 20; *Malhotra v. Cotter & Co.*, [51 EPD ¶ 39,329] 885 F.2d 1305, 1312 (7th Cir.1989); *Fowler v. McCrory Corp.*, [52 EPD ¶ 39,665] 727 F.Supp. 228, 231-32 (D.Md.1989). Thus, Cordell Martin states a cause of action based on § 1981's guarantee of the right to enforce contracts equally.[FN3]

Defendants also attack Count One of the amended complaint by arguing that a one year statute of limitations applies to this case, thus barring many of plaintiffs' claims. The Court holds that the three year period applies for limitations purposes. *Banks v. Chesapeake & Potomac T. Co.*, [41 EPD ¶ 36,634] 802 F.2d 1416, 1421-23 (D.C.Cir.1986). In addition, the claims are not barred by limitations based on the allegation of continuing violations of § 1981. *Williams v. Norfolk & W. Ry. Co.*, [11 EPD ¶ 10,710] 530 F.2d 539, 542 (4th Cir.1975); *United Air Lines, Inc. v. Evans*, [14 EPD ¶ 7577] 431 U.S. 553, 558 (1977). Therefore, the amended complaint on its face does not indicate that the statute of limitations has run and dismissal is inappropriate.

*Count Two (DCHRA)*

Defendants argue next that count two of the amended complaint should be dismissed because the DCHRA does not apply to the claims of the plaintiffs. Specifically, defendants assert that the DCHRA only applies to discriminatory acts within the District of Columbia. Therefore, because plaintiffs in this case were not hired in Washington, D.C., were not employed in Washington, D.C., and did not experience any discrimination in Washington, D.C., these claims should be dismissed pursuant to Fed.R.Civ.P. 12(b)(1).

*4 Defendants are correct that the DCHRA does not apply to acts occurring outside the District of Columbia. The only case addressing this question assumed but did not decide, that this was the case. *Matthews v. Automated Business Sys. & Serv., Inc.*, [51 EPD ¶ 39,429] 558 A.2d 1175, 1180 n. 8 (D.C.App.1989). According to the Court of Appeals for the District of Columbia, "the critical factual issue bearing on jurisdiction is whether these events took place in the District." *Id.* at 1180. Thus, the remaining question is whether the complaint alleges that each plaintiff was subjected to discriminatory acts within the District of Columbia.[FN4]

In this case each plaintiff alleges that he or she was discriminated against by the refusal to hire, transfer or promote them into facilities located in the District of Columbia. (Amended Complaint paragraphs 85, 86 and 87). The fact that defendants made the discriminatory decisions outside of Washington, D.C., and that the plaintiffs applied for employment outside of Washington, D.C. will not shield defendants from liability. *Green v. Kinney Shoe Corp.*, 704 F.Supp. 259, 260 (D.D.C.1988). The discriminatory act in this case consisted of not transferring or hiring plaintiffs in or to the District of Columbia facilities. Accordingly, both *Green* and *Matthews* support subject matter jurisdiction over these claims.[FN5]

Defendants also argue that the correct application of the District of Columbia's choice of law principles precludes the DCHRA cause of action. However, in light of the court's holding that discrimination occurred within Washington, D.C., the defendants'

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp., 1990 WL 209266 (D.Md.), 54 Fair Empl.Prac.Cas. (BNA) 61, 55 Empl. Prac. Dec. P 40,361
(Cite as: Not Reported in F.Supp.)

interest analysis is no longer persuasive. *Rong Yao Zhou v. Jennifer Mall Restaurant, Inc.,* 534 A.2d 1268, 1270 (D.C.1987).

The last of defendants' arguments focuses, once again, on the statute of limitations. The DCHRA requires the filing of an action within one year of occurrence of the unlawful discriminatory practice. *Davis v. Potomac Elec. Power Co.,* [29 EPD ¶ 32,999] 449 A.2d 278, 280-81 (D.C.1982). That period begins to run at the time "of the occurrence of the unlawful discriminatory practice, or the discovery thereof." D.C.Code § 1-2544(a) (1987). Defendants argue, therefore, that any act which is alleged to have occurred prior to June 14, 1988, is barred by limitations. Plaintiffs, on the other hand, contend that they have alleged a continuing course of discrimination which allows all claims to survive.

In support of the argument that there was a continuing course of conduct, plaintiffs rely on a line of federal cases permitting this theory in § 1981 cases. *See e.g., Williams,* 530 F.2d at 539. However, plaintiffs do not suggest why these § 1981 cases should be applied in the DCHRA context. This is particularly important in light of the District of Columbia Court of Appeal's recent expression that the federal Civil Rights Act is not the counterpart of the DCHRA, and the DCHRA will be interpreted differently. *Anderson v. United States Safe Deposit Co.,* [49 EPD ¶ 38,881] 552 A.2d 859, 862 (D.C.App.1989).

\*5 Plaintiffs also cite *Jones v. Howard Univ.,* 574 A.2d 1343 (D.C.App.1990), for their position. In that case the District of Columbia Court of Appeals discussed precedent which distinguished, for purposes of the statute of limitations, "multiple breaches of a continuing duty and a single breach." *Id.* at 1347 (citing *Kyriakopoulos v. George Washington Univ.,* 866 F.2d 438 (D.C.Cir.1989)). The court held in *Jones* that the plaintiff had only been discharged once, thus it was a single breach and there would be no tolling of the limitations period. In the instant case, however, plaintiffs allege a continuing duty to promote, transfer or hire by the Washington, D.C. facilities. (Amended Complaint paragraphs 85, 86 and 87). Therefore,

every day in which the plaintiffs were not promoted, transferred or hired was a reaffirmation of the discriminatory policy. *Jones,* 574 A.2d at 1348.

This conclusion is also supported by the language of the DCHRA. Specifically, the period of limitations begins to run at the time "of the occurrence of the unlawful discriminatory *practice,* or the discovery thereof." D.C.Code § 1-2544(a) (1987) (emphasis added). In this case the unlawful discriminatory practice was refusing to promote, transfer or hire in the District of Columbia facilities. As each plaintiff alleges that the practices continues to this day, and that he or she was not promoted, transferred or hired after June 14, 1988, (Amended Complaint paragraphs 85, 86 and 87), the statute of limitations does not bar this cause of action.

The court will enter a separate order.

> FN1. In any event, these allegations are simply corroborative of the more general claim based on the refusal to form the original employment contract on a nondiscriminatory basis.

> FN2. Even though the Fourth Circuit's opinion was vacated, according to the Fourth Circuit "[c]laims of racially discriminatory hiring, firing, and promotion go to the very existence and nature of the employment contract and thus *fall easily* within § 1981's protection." *Patterson,* 805 F.2d at 1145.

> FN3. In any event, these allegations may simply be used as evidence of the non-neutral nature of the original employment contract.

> FN4. The plaintiffs' opposition to the motion to dismiss suggests that "plaintiffs allege a sufficient District of Columbia nexus." That the DCHRA requires a nexus test to establish jurisdiction was expressly rejected by the District of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

**Page 5**

Not Reported in F.Supp., 1990 WL 209266 (D.Md.), 54 Fair Empl.Prac.Cas. (BNA) 61, 55 Empl. Prac. Dec. P 40,361
**(Cite as: Not Reported in F.Supp.)**

Columbia Court of Appeals. *Matthews,* 558 A.2d at 1181. In addition, the court notes that plaintiffs do not dispute that the DCHRA only applies to discriminatory acts within the District of Columbia.

FN5. It is true that this problem could be resolved against plaintiffs by focusing on the location of the discriminatory decision; namely in Maryland. However, in light of the absence of controlling authority directly on point, the court will resolve this issue in favor of plaintiffs and not dismiss their claims based solely on a judicial interpretation of *dicta.* Furthermore, the defendants do not raise a factual dispute that the District of Columbia facilities are at issue in this count of the amended complaint.

D.Md.,1990.
Martin v. Holiday Universal, Inc.
Not Reported in F.Supp., 1990 WL 209266 (D.Md.), 54 Fair Empl.Prac.Cas. (BNA) 61, 55 Empl. Prac. Dec. P 40,361

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

166 F.3d 334
166 F.3d 334, 1998 WL 801499 (C.A.4 (Md.))
**(Cite as: 166 F.3d 334)**

Page 1

**H**
Sloane v. Shalala
C.A.4 (Md.),1998.
NOTICE: THIS IS AN UNPUBLISHED
OPINION.(The Court's decision is referenced in a
"Table of Decisions Without Reported Opinions"
appearing in the Federal Reporter. Use FI CTA4
Rule 36 for rules regarding the citation of
unpublished opinions.)
United States Court of Appeals, Fourth Circuit.
Walter C. SLOANE, CDR, M.D., Plaintiff-Appellant,
v.
Donna SHALALA, Secretary of Health and Human
Services, Defendant-Appellee.
No. 97-2295.

Argued: Sept. 23, 1998.
Decided: Nov. 18, 1998.

Appeal from the United States District Court for the
District of Maryland, at Greenbelt, No. CA-95-349-
AW; Alexander Williams, Jr., District Judge.

Robert L. Bell, Law Offices of Robert L. Bell,
Washington, D.C., for Appellant.
C. Vaughn Adams, Christopher Leon Jones, Jr., Law
Offices of Robert L. Bell, Washington, D.C., for
Appellant.
Allen F. Loucks, Assistant United States Attorney,
Baltimore, Maryland, for Appellee.
Lynne A. Battaglia, United States Attorney,
Baltimore, Maryland, for Appellee.

Before WIDENER and LUTTIG, C.J., and MAGILL,
Sr.C.J.

OPINION
PER CURIAM:
*1 Appellant Walter C. Sloane challenges the district
court's judgment on his claims of racial
discrimination under Title VII of the Civil Rights Act
of 1964. Because Sloane failed to exhaust the
available administrative remedies in a timely fashion
before pursuing this action, we vacate and remand
with instructions to dismiss.

I.

In 1974, upon graduating from the Howard

University College of Medicine, appellant Walter C.
Sloane became a uniformed medical officer in the
commissioned corps of the Public Health Service
(PHS). Upon commissioning, Sloane spent six years
completing his clinical training, then served for one
year as a staff ophthalmologist in a PHS hospital.
Sloane was next stationed at the Food and Drug
Administration (FDA), where he proceeded to serve
in a variety of positions. By 1986, Sloane was
reviewing applications for investigational
ophthalmological devices in the Center for Devices
and Radiological Health at the FDA.

In 1986, the PHS issued a regulation requiring all of
its officers to be licensed by the relevant state
authorities. The purpose of this regulation was to
subject PHS officers to the same requirements
applicable to doctors in the private sector. The
regulation required all officers to comply with the
requirement by December 31, 1988, and established
sanctions for noncompliance, including loss of
bonuses, exclusion from consideration for
promotions, and involuntary retirement.

The regulation created a Licensure Waiver Board
(LWB) to process requests from PHS officers for
waivers from the licensing requirement. The role of
the LWB was to make recommendations to the
Surgeon General on these requests. The regulation set
out the following four criteria to be used by the LWB
in processing waiver requests:
(1) The likelihood, nature, and amount of patient
contact in the position;
(2) Whether the role of the individual is essential to
the mission of the agency or the program;
(3) The impact of the waiver on the potential risks to
individual patients, the program's constituency, and
the public;
(4) The specific reason(s) why the officer cannot
obtain the appropriate credentials.

J.A. at 891.

In December 1988, Sloane applied for a waiver. The
LWB recommended rejecting his application, and, in
March 1989, the Surgeon General denied the
application. From 1989 to 1995, Sloane repeatedly
attempted to come into compliance with the licensing
requirement by taking the state licensing
examination, but failed the examination each time. In
1991, acting on the recommendation of the LWB, the

166 F.3d 334
166 F.3d 334, 1998 WL 801499 (C.A.4 (Md.))
**(Cite as: 166 F.3d 334)**

Page 2

Surgeon General imposed sanctions on Sloane for his failure to comply with the licensing requirement, including loss of bonuses, exclusion from consideration for temporary promotions, and referral for involuntary retirement in three years' time. In 1993 and 1994, Sloane also received poor performance evaluations from his supervisor at the FDA.

On August 16, 1993, Sloane first approached the local EEO office regarding alleged discrimination by the PHS and the FDA. On January 10, 1994, Sloane filed an informal EEOC complaint; on March 10, 1994, he filed a formal EEOC complaint.

**\*2** On February 2, 1995, Sloane commenced this action against appellee Donna Shalala and two other government officials, alleging discrimination and retaliation under both Title VII and the ADEA. The trial judge dismissed Sloane's retaliation claims at the end of his case in chief. After a jury trial, the district court ruled against Sloane on all of his discrimination claims. Sloane now brings this appeal, solely on the basis of his Title VII racial discrimination claims.

### II.

As a threshold matter, appellee contends that the district court should have dismissed appellant's Title VII claims because appellant failed to exhaust the available administrative remedies in a timely manner. We agree.

It is well-established that a district court must dismiss a Title VII claim if the plaintiff fails to seek EEO counseling within the prescribed time period. *See, e.g., Nealon v. Stone, 958 F.2d 584, 589-90 (4th Cir.1992); Zografov v. V.A. Medical Center, 779 F.2d 967, 968-69 (4th Cir.1985).* Appellant appears to have been subject to two different limitation periods. On the one hand, as a government employee, appellant was required to seek EEO counseling within forty-five days of the allegedly discriminatory event. *See* 29 C.F.R. § 1614.105(a)(1) (1998). On the other hand, as a PHS officer, under the more stringent standards of the PHS's own regulations, appellant was required to seek EEO counseling within thirty, rather than forty-five, days of the precipitating incident. J.A. at 1363. Assuming, *arguendo,* that the more generous general regulation for government employees governs appellant's case, appellant must demonstrate one of two things: either that he sought EEO counseling within forty-five days of one of the allegedly discriminatory events pleaded in his

complaint, or that he was subject to a "continuing violation" at the time he sought EEO counseling.

Appellant fails in both respects. First, appellant does not demonstrate that he sought EEO counseling within forty-five days of an allegedly discriminatory event. Even assuming that appellant can be said to have sought EEO counseling on August 16, 1993-the date of his first contact with the EEO office-rather than on January 10, 1994-the date he filed his first EEOC complaint-appellant has not alleged that any discriminatory events occurred in the preceding forty-five days. The nearest allegedly discriminatory event-appellant's poor performance evaluation from his FDA supervisor-occurred no later than June 1, 1993, well outside the forty-five-day period.

Second, appellant does not show that he was suffering from a "continuing violation" at the time he sought EEO counseling. This Circuit has never adopted a test for what constitutes a continuing violation; our sister circuits, however, have developed a number of variations. *See, e.g., DeNovellis v. Shalala, 124 F.3d 298, 307 (1st Cir.1997)* (finding continuing violation in cases in which violation is systemic or serial); *Malhotra v. Cotter & Co., 885 F.2d 1305, 1310 (7th Cir.1989)* (finding continuing violation whenever "plaintiff had no reason to believe he was a victim of discrimination until a series of adverse actions established a visible pattern of discriminatory mistreatment"); *Berry v. Board of Supervisors, 715 F.2d 971, 981 (5th Cir.1983)* (finding continuing violation when three-prong test involving type of conduct, frequency of alleged acts, and degree of permanence of acts is satisfied).

**\*3** It is unnecessary for us to adopt any of these tests in this case, for the simple reason that appellant fails to establish a continuing violation under any of them. As the Supreme Court has stated, the "critical question" in a continuing violation case is "whether any present violation exists." *United Air Lines, Inc. v. Evans, 431 U.S. 553, 558, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977).* Events that simply constitute the inevitable consequences of an earlier, allegedly discriminatory decision do not suffice to create a continuing violation, *see Delaware State College v. Ricks, 449 U.S. 250, 257-58 (1980),* nor do "separate and completed events," *Lawson v. Burlington Industries, Inc., 683 F.2d 862, 863-64 (4th Cir.1982).*

In this case, all of the allegedly discriminatory events that occurred after the original denial of appellant's waiver application in 1989 were either consequences

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

166 F.3d 334
166 F.3d 334, 1998 WL 801499 (C.A.4 (Md.))
(Cite as: 166 F.3d 334)

of that denial, or entirely separate events altogether. The imposition of sanctions on appellant in 1991 directly resulted from his failure to comply with the licensing requirement in the wake of the allegedly discriminatory denial of his waiver application in 1989. And appellant's poor performance evaluations in 1993 and 1994 had no connection whatsoever with the denial of his waiver application in 1989: unlike the denial of the waiver, which involved officials at the PHS, the agency that employed appellant, the poor performance evaluations were conducted by appellant's supervisor at the FDA, the wholly separate agency at which appellant was stationed at the time.

Appellant can avoid the requirement of timely exhaustion only by providing evidence that he was unaware of the time limits for seeking EEO counseling, see 29 C.F.R. § 1614.105(a)(2) (1998), or that the government engaged in affirmative misconduct in connection with his failure to seek timely counseling, see Zografov, 779 F.2d at 969-70. Appellant makes no such showing. Therefore, the district court should have dismissed his claims.

### III.

Even if we were to hold that appellant had exhausted the available administrative remedies in a timely manner, we would nevertheless reject his underlying substantive claims. Appellant makes two claims: that the trial judge erred by failing independently to adjudicate equitable claims arising from events occurring before the enactment of a jury right, and that the jury erred by finding that the justifications offered by the PHS for its allegedly discriminatory behavior were not pretextual. Each of these claims lacks merit.

Appellant bases his first claim on section 102 of the Civil Rights Act of 1991, which had two significant consequences for plaintiffs bringing Title VII actions. First, the provision allowed Title VII plaintiffs to recover damages, provided that the actionable conduct occurred after the Civil Rights Act of 1991 took effect. See Landgraf v. USI Film Prods., 511 U.S. 244, 281-83 (1994). Second, it entitled Title VII plaintiffs to a jury trial, provided the same condition was met. See id. at 280-81.

**4** Based on this provision, appellant argues that the trial judge erred by failing to make separate rulings of law on those Title VII claims that were based on pre-1991 conduct ("pre-1991 claims"), for which only an equitable remedy was available. This claim, however, is flawed for two reasons. First, and more simply, at no stage during the trial did appellant ask the judge to rule on any separate pre-1991 claims. To the contrary, as noted above, appellant contended that he was subject to a continuing violation at the time he commenced this action, an argument that squarely forecloses the existence of any separable pre-1991 claims at all. Second, to the extent that any distinct pre-1991 claims did exist, the judge resolved those claims at the conclusion of the trial. Although the judge did not refer to "pre-1991 claims" in his final order, he expressly ruled against appellant on all of his claims, see J.A. at 13, and subsequently denied appellant's motion for "judgment on pre-1991 claims" on the ground that those claims had already been decided in his final order, id. at 835. Consequently, because the trial judge did resolve any separate claims arising from events occurring before the enactment of a jury right, to the extent that such claims could be said to exist, the trial judge committed no error.

Appellant next claims that the jury erred by finding that the justifications offered by the PHS for its allegedly discriminatory behavior were not pretextual. To succeed on this claim, appellant must demonstrate that the jury's finding was not supported by substantial evidence in the record as a whole. See, e.g., Evington v. Forbes, 742 F.2d 834, 835 (4th Cir.1984). We hold that appellant has failed to make such a showing. Indeed, to the contrary, as the government points out, appellant fails even to demonstrate that the individuals involved in the allegedly discriminatory behavior were aware of his minority status. Two members of the LWB testified that the LWB **did** not have information on the race of applicants while considering waiver applications, see J.A. at 695, 697-98, 729, and the Surgeon General testified that he had no **knowledge** of appellant's **race** while reviewing the LWB's recommendation, see id. at 680. No evidence in the record contradicts this testimony. In the absence of any evidence even to suggest that any of the principal actors were aware of appellant's **race**, it is impossible to conclude that the justifications for their actions were pretextual to hide a racial motive. In any event, because the jury's finding on pretext was supported by substantial evidence in the record, we uphold that finding.

### CONCLUSION

The judgment of the district court is vacated and

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

166 F.3d 334
166 F.3d 334, 1998 WL 801499 (C.A.4 (Md.))
**(Cite as: 166 F.3d 334)**

Page 4

remanded with instructions to dismiss.

*VACATED AND REMANDED*

C.A.4 (Md.),1998.
Sloane v. Shalala
166 F.3d 334, 1998 WL 801499 (C.A.4 (Md.))

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.