**EXHIBIT 17**

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| JAMES MASON<br>717 Ingraham Street, NW<br>Washington, D.C. 20012,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>DAVITA INC.<br>601 Hawaii Street<br>El Segundo, CA 90245,<br><br>　　　　　Defendant. | )<br>)<br>)<br>) Civil Action No. 06-1319 (RMC)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**DECLARATION OF OMOWUNMI OLOYEDE**

I, Omowunmi Oloyede, declare as follows based on my personal knowledge:

1.　　I am the Facility Administrator for the acute dialysis facility operated by DaVita Inc. ("DaVita") within the George Washington University Hospital ("GWUH") located at 900 23rd Street, Room 403, Washington, D.C. 20037 (the "GWUH Facility"). The GWUH Facility provides dialysis and other patient care services for patients of the hospital. I have occupied this position since 2003. As the Facility Administrator, I am responsible for the day-to-day operations of the GWUH Facility, including all matters relating to hiring, staffing, and patient care.

2.　　The hours of operation at the GWUH Facility are 7:00 a.m. to 5:00 p.m., Mondays through Saturday. Services outside of these hours are provided at the Facility by an on-call registered nurse who comes in if called by the GWUH.

3. From May 2006 through the present, GWUH Facility has been staffed with a Facility Administrator (myself), one full-time Patient Care Technician ("PCT")/ Administrative Assistant (Shanna McGill), and an average of two to three registered nurses during its hours of operation. One registered nurse is always on call during evenings and Sundays.

4. The GWUH Facility has a limited need for PCTs because PCTs cannot perform the vast majority of patient care activities which must be performed by nurses.

5. The GWUH Facility performs the following procedures: (1) hemodialysis inside of the DaVita unit for patients who can be brought down to the unit; (2) hemodialysis in the hospital's Intensive Care Unit (ICU) which is performed at the patient's hospital bed; (3) hemodialysis for patients in isolation which is also performed at the patient's hospital bed; (4) Continual Renal Replacement Therapies (CRRTT) (also called CVVHDF) conducted in the ICU; and (5) apheresis, a plasma replacement therapy.

6. Of all these procedures, a PCT can only perform limited patient care functions with regard to hemodialysis in the DaVita unit. Furthermore, a PCT's performance of these limited functions must be done under the direct supervision of a registered nurse.

7. The limited patient care functions that a PCT can perform for patients who receive dialysis in the unit consist of: (1) putting patients on the dialysis machine; (2) monitor vital signs every fifteen minutes; and (3) taking the patients off the machine. A registered nurse must be present in the room at all times. The patient care functions that a PCT may not perform include: (1) receiving the physician's prescription for dialysis treatment (the PCT cannot even listen to or write down the order), (2) conduct the

mandatory treatment patient assessment that takes place before and after every treatment; (3) give any medication to the patient during dialysis (some form of medication is almost always administered to every patient); or (4) communicate with GWUH's nurses who are caring for the patient.

8. Because a PCT must always work under the direct supervision of a nurse when rendering patient care, DaVita will not use a PCT's services at the GWUH Facility until there are more than two patients being dialyzed at one time in the unit. Since a registered nurse must be present in the room, there is no point to also having a PCT attending to the first two patients. However, if there are more than two patients being dialyzed at the same time, a PCT can attend to these patients under the supervision of the one nurse who is already present in the room to attend to the first two patients.

9. A PCT cannot be the person on call during the evenings and Sundays because the person on call must be able to perform all of the procedures provided by the GWUH Facility if the need arises. Only a nurse can be on call during these times.

10. Shanna McGill has worked a full-time schedule at the GWUH Facility since May 2006 to the present. She splits her full time schedule between PCT and Administrative Assistant duties and earns $17/hour. She is the only PCT to have worked at the GWUH Facility since May 2006.

11. When Mr. Mason first called at the end of October 2006, there were no PCT positions open at the GWUH Facility and no vacancy announcement for a PCT had been posted. In fact, the last time DaVita posted a vacancy for a PCT position at the GWUH Facility was in January 2006. As stated, this vacancy was filled by Shanna McGill in May 2006.

12. I met with Mr. Mason on November 2, 2006 thinking that it would be useful to have a DaVita PCT that I could call to fill in if there was ever a need. I told Mr. Mason to go get his medical clearance from the GWUH Employee Health Service so that he would be eligible to work if I needed his services. In my discussions with Mr. Mason regarding his interest in working at the GWUH Facility, I never agreed to pay Mr. Mason an hourly rate that was higher than the rate he was already being paid by DaVita. In fact, I told him that I would not use him if I had to pay an overtime rate.

13. After my meeting with Mr. Mason on November 2, 2006, I did not use his services at the GWUH Facility because I did not have a need for them. At no time did Terrie Jurd (my Regional Operations Director until the end of July 2007) or anyone else suggest that I should not use Mr. Mason's services at the GWUH Facility. In fact, I had spoken to Ms. Jurd about using Mr. Mason's services on an as needed basis after I met with Mr. Mason and she said that would be "okay." From November 2, 2006 to the present, DaVita (1) did not advertise for or interview any applicants for a PCT position of any kind (full-time, part-time, PRN or per diem) at the GWUH Facility or (2) use the services of any PCT (in any capacity) at the GWUH Facility other than Shanna McGill who had been working at the Facility since May 2006.

14. The last time I spoke Mr. Mason was on February 21, 2007. On that date, he called and inquired about the patient census (i.e. how busy was the facility). I told him that the patient census was low. My comment was based on my personal observation and is consistent with records provided to me by the Regional Operations Director's office.

15. In March 2006, I learned from GWUH's Employee Health Service that Mr. Mason had not completed the medical clearance process. However, I did not follow up on this information with Mr. Mason because I had no need for his services.

16. I first found out that Mr. Mason had filed a lawsuit against DaVita in the Summer of 2007 after Mr. Mason made allegations about my facility. I also learned at that time that Mr. Mason had filed an internal complaint about DaVita Rx.

I declare under penalty of perjury that the foregoing is true and correct.

Date: September 27, 2007

Omowunmi Oloyede