UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAMES MASON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 06-1319 (RMC) |
| v. ) | |
| ) | |
| DAVITA INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |
| _____ ) | |

**<u>DEFENDANT DAVITA INC.'S MOTION *IN LIMINE* TO PRECLUDE EVIDENCE REGARDING 2008 EMPLOYEE STAFFING AT THE DAVITA GEORGE WASHINGTON UNIVERSITY HOSPITAL ACUTE FACILITY</u>**

The Court has set a trial date on Count II of Plaintiff's Second Amended Complaint ("SAC") in which Plaintiff James Mason alleges that Defendant DaVita Inc. ("DaVita") in February 2007 revoked an offer to work at its acute dialysis center at George Washington University Hospital (the "GWUH Facility") because of an internal EEO complaint and lawsuit that Plaintiff had filed against DaVita in January 2006 and May 2006, respectively. (SAC ¶¶ 12, 21.) Pursuant to Federal Rules of Evidence 401, 402, and 403, DaVita Inc. moves this Court to preclude all evidence regarding DaVita's employee staffing at the GWUH Facility in 2008, including its temporary use of DaVita Patient Care Technicians Edsel Basco, Titilayo Lawal and Tsehaye Retta at the GWUH Facility. The bases for this Motion are set forth in the attached Memorandum of Points and Authorities.

Dated: August 22, 2008 Respectfully submitted,

By: _____
Minh N. Vu (Bar No. 444305)
Frank C. Morris, Jr. (Bar No. 211482)
EPSTEIN BECKER & GREEN, P.C.
1227 25th Street, N.W.
Washington, D.C. 20037
Tel: (202) 861-0900
Fax: (202) 296-2882

Counsel for Defendant

- 2 -

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JAMES MASON,                             ) | |
|                 **Plaintiff,**     ) | |
|     v.                                    ) | **Civil Action No. 06-1319 (RMC)** |
| DAVITA INC.,                             ) | |
|                 **Defendant.**    ) | |

**<u>DEFENDANT DAVITA INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION *IN LIMINE* TO PRECLUDE EVIDENCE REGARDING 2008 EMPLOYEE STAFFING AT THE DAVITA GEORGE WASHINGTON UNIVERSITY HOSPITAL ACUTE FACILITY</u>**

      The Court has set a trial date on Count II of Plaintiff's Second Amended Complaint ("SAC") in which Plaintiff James Mason alleges that Defendant DaVita Inc. ("DaVita") <u>in February 2007</u> revoked an offer to work at its acute dialysis center at George Washington University Hospital (the "GWUH Facility") because of an internal EEO complaint and lawsuit that Plaintiff had filed against DaVita in January 2006 and May 2006, respectively.  (SAC ¶¶ 12, 21.)  Pursuant to Federal Rules of Evidence 401, 402, and 403, DaVita Inc. moves this Court to preclude all evidence regarding DaVita's employee staffing at the GWUH Facility in 2008, including its temporary use of DaVita Patient Care Technicians ("PCT") Edsel Basco, Titilayo Lawal and Tsehaye Retta at the GWUH Facility to address an increase in the patient count.  To the extent that this evidence has any probative value, its value is outweighed by the danger of confusion of the issues, misleading the jury, undue delay, and waste of time.

## I. BACKGROUND

Plaintiff is a PCT at DaVita's chronic dialysis center located at 3223 K Street, N.W., Washington, D.C. (the "Georgetown Facility") and has been in this position throughout the pendency of this lawsuit. This lawsuit first began in May 2006 when Plaintiff filed a one count race discrimination lawsuit against DaVita under the D.C. Human Rights Act ("DCHRA") in D.C. Superior Court[1] alleging that he had been denied a Pharmacy Services Representative position with DaVita Rx, a new company owned by DaVita that provides pharmacy services. On April 3, 2007, Plaintiff filed a motion for leave to file a First Amended Complaint to, inter alia, add new count of retaliation relating to the GWUH Facility in 2007 which is the subject of the upcoming trial, and to name a DaVita manager as a defendant in his personal capacity (Pl.'s Motion to File First Amended Compl. dated April 3, 2007 (Docket #11)). In May 2007, the Court ruled that Plaintiff could not sue the individual manager but that Plaintiff could file a Second Amended Complaint relating to the alleged GWUH 2007 retaliation (Minute Order Entry dated May 21, 2007).

Plaintiff filed the SAC on June 6, 2007. The entirety of Plaintiff's allegations in the SAC relating to the GWUH Facility retaliation claim is as follows:

The SAC alleges that Plaintiff had filed "an internal complaint with DaVita alleging discrimination based on race in the hiring process." (SAC ¶ 8.) (The Court has found that Plaintiff filed this internal complaint on January 27, 2006. See Memorandum Opinion at 5, dated March 31, 2008 ("Mem. Opinion").) The SAC further alleges:

> 12. Mr. Mason filed a complaint in the D.C. Superior Court in 2006. In December 2006, Mr. Mason interviewed for a position as a patient care technician at DaVita's acute facility at George Washington Hospital. The facility only had one patient care technician at the time of his application even though the facility was open seven days a week. Mr.

---

[1]   DaVita subsequently removed the lawsuit to this Court.

>Mason was offered a position by the facility administrator and she introduced Mr. Mason to the other patient care technician and to patients, as a PCT who would soon begin working there. There was a general discussion of wages and work hours, including working in conjunction with his current position, working part-time, overtime and in relief of the other PCT. Mr. Mason was informed that he only needed to complete medical tests, which he did, and the facility administrator had to speak to the regional administrator. <u>In February 2007, Mr. Mason was informed that he would not be permitted to work at the acute facility at George Washington Hospital in any capacity.</u> The regional administrator, who began employment with DaVita in 2006, has called and visited Mr. Mason's current place of employment on many occasion but has refused [to] acknowledge or even greet Mr. Mason.
>. . .
>
>21.    Defendant, in violation of the D.C. Human Rights Act, knowingly and intentionally engaged in unlawful retaliation . . . <u>DaVita later revoked an offer of employment at the acute facility at George Washington Hospital</u> because of Mr. Mason's EEO complaint and lawsuit against DaVita.

(SAC ¶¶ 12, 21)(emphasis added). Thus, the SAC makes clear that this case concerns DaVita's allegedly retaliatory revocation of a job offer to Plaintiff in February 2007, based on alleged protected activities taking place in January and May 2006.

After the close of discovery, DaVita filed Motions for Summary Judgment on Plaintiff's claims of discrimination (Count I) and retaliation (Count II) pursuant to the D.C. Human Rights Act, D.C. Code § 2-1401 <u>et seq.</u>, in August and November 2007, respectively. On March 31, 2008, this Court granted summary judgment on all claims except for Plaintiff's claim that DaVita retaliated against him by not allowing him to work at the GWUH Facility. (<u>See</u> Mem. Opinion at 25.)

After the Court issued its decision on March 31, 2008, DaVita's counsel learned that there was a substantial increase in patient count at the GWUH Facility at the beginning of 2008 and that on February 19, 2008, DaVita's new Regional Operations Director for the Washington, D.C. area, Matt Weissert, had sent an e-mail asking the Facility Administrators under his chain of command to see if any of their <u>nurses</u> could help out at the GWUH Facility (Decl. of Matt

- 5 -

Weissert dated Aug. 21, 2008 ("Weissert Decl.") ¶¶ 2-3 (Ex. 3)). At the time he sent this e-mail, Mr. Weissert had no idea that Plaintiff had filed an internal complaint or a lawsuit against DaVita, nor did he know that Mr. Mason had expressed interest in working at the GWUH Facility (Id.). As a result of this e-mail, several nurses and three DaVita PCTs who regularly work at other DaVita dialysis centers in Washington, D.C. – Edsel Basco, Titi Lawal, and Retta Tesaye – volunteered their services (Id.). These individuals worked at the GWUH Facility for a total of eight shifts on February 23 and 25, 2008, March 27 and 31, 2008, and April 5, 7 and 11, 2008 (DaVita Inc.'s Supplemental Objections and Responses to Plaintiff's Second Set of Interrogatories and Request for Production of Documents Relating to 2007 Retaliation Allegations ("DaVita's July 15, 2008 Supplemental Discovery Responses"), Supp. Resp. to Interrog. # 4 (Ex. 1)). Mr. Mason was already working for DaVita at the Georgetown facility on five of these eight dates: February 25, March 31, April 7, 9 and 11 (Plaintiff's Timecards (Ex. 2)).

Plaintiff's interrogatories from 2007 had asked whether DaVita had used the services of any PCTs at the GWUH Facility (Ex. 1) and DaVita had responded that it had not (other than Shanna McGill who had already been working at the GWUH Facility many months before Plaintiff made his initial inquiry in 2006) from the time that Plaintiff made his inquiry to the date of the discovery response. Although DaVita did not believe that the 2008 information about the GWUH Facility's staffing issues and temporary use of PCTs was in any way relevant to the claims and defenses in the case, Fed.R.Civ.P. 26(e)(1)(A) and the D.C. Circuit's holding in Summers v. Howard U., 374 F.3d 1188, 1194 (D.C. Cir. 2004) seemed to suggest that

supplementation of the prior responses might be required.[2]  Out of an abundance of caution and in the interest of full disclosure, DaVita in good faith supplemented its response with the new information described above on July 15, 2008 (DaVita's July 15, 2008 Supplemental Discovery Responses (Ex. 1)).   DaVita also produced documents regarding staffing issues at the GWUH Facility in 2008 that led to DaVita's temporary use of these three PCTs from February to April 2008 (Ex. 1).

For the reasons set forth below, the 2008 evidence about employee staffing issues at the GWUH Facility, including DaVita's temporary use of three PCTs from February to April 2008, should be excluded at trial.[3]

## II. ARGUMENT

### A. The 2008 Evidence About Employee Staffing Issues at the GWUH Facility, Including  DaVita's Temporary Use Of Three PCTs Is Not Relevant To Any Facts To Be Proven At Trial.

Fed. R. Evid. 401 and 402[4] provide that all "relevant evidence" -- defined as "evidence having any tendency to make the existence of any fact that is of consequence to the

---

[2]   In Summers, the D.C. Circuit held that the plaintiffs' failure to supplement a 1999 interrogatory response about whether they had filed any other court actions to identify the subsequent filing of a state court lawsuit in 2001 was a breach of the supplementation obligation under Rule 26(e).

[3]   The July 15, 2008 supplemental response stated, inter alia:  "From February 23, 2008 through the end of April 2008, the GWUH DaVita Facility experienced a high volume of patients and had a need for temporary additional staffing.  DaVita used the services of three DaVita PCTs who were and continue to be on the staff at other DaVita dialysis centers to provide temporary assistance.  They are Edsell Basco (PCT), Titilayo Lawal (PCT), and Tsehaye Retta (PCT)."  (Ex. 1 at 4.)  DaVita also produced documents showing the dates and hours worked by these individuals at the GWUH Facility and their earnings from that work and e-mails regarding the staffing shortage at the facility.  (Id.)

[4]   Rule 402 states:  "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible."

determination of the action more probable or less probable than it would be without the evidence" -- is admissible, but that evidence "which is not relevant is not admissible." Fed. R. Evid. 401 and 402.

As discussed further in Section II.B. below, Fed. R. Evid. 403 further circumscribes admissibility by balancing the interests of admitting relevant evidence versus other important considerations of fairness and practicality.

The Supreme Court in Sprint/United Management Co. v. Mendelsohn, 128 S. Ct. 1140, 1147 (2008), recently instructed that an evaluation of the interplay of relevancy, prejudice and admissibility pursuant to the Federal Rules is to be "determined in the context of the facts and arguments in a particular case . . . ." The Supreme Court specifically noted that relevancy "is not an inherent characteristic of any item of evidence but exists only as a relation between an item of evidence and a matter properly provable in the case." Id. (citation omitted) (emphasis added).

The question, therefore, is whether evidence of DaVita's employee staffing issues at the GWUH Facility and temporary use of three PCTs in 2008 for a totalof eight shifts 21 months after the last protected activity alleged in the SAC (i.e., the filing of this lawsuit in May 2006) has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401 (emphasis added). DaVita submits that it does not. Plaintiff's retaliation claim, as set forth in the SAC, is that "DaVita . . . revoked an offer of employment at the acute facility at George Washington Hospital because of Mr. Mason's EEO complaint and lawsuit against DaVita" in February 2007. (SAC ¶¶ 12, 21.) Evidence about staffing issues in 2008 and the fact

---

Rule 401 states: "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

that DaVita used the services of several PCTs on a temporary basis to help out for a total of eight shifts <u>12 months after the alleged revocation of Plaintiff's job offer (February 2007) and 21 months after the last protected activity alleged (May 2006)</u> simply does not make it any more or less probable that (1) the motivation behind the alleged job revocation <u>in February 2007</u> was retaliation or that (2) DaVita's proffered non-discriminatory reason – that there was no need for Mr. Mason at that time or at any time in 2007 – was not its true reason.  If anything, this evidence supports DaVita's proffered non discriminatory reason that there was no need for Mr. Mason in 2007 because no other PCTs worked at the GWUH Facility during that time.

Plaintiff may attempt to argue that DaVita's temporary use of PCTs at the GWUH Facility in 2008 shows that there was a need for PCT services in 2008, and its failure to call upon him to work at that time was an adverse employment action that supports his claim of retaliation. However, this argument lacks merit for several reasons.

First, Plaintiff has never alleged in the SAC or anywhere else in this case that DaVita engaged in any retaliatory acts against him in 2008.  In granting Plaintiff leave to file the Second Amended Complaint, the Court made clear that the new claim concerned retaliation in 2007. The May 21, 2007 order stated:

> "Plaintiff shall file a Second Amended Complaint which includes only Plaintiff's claims of retaliation for failure to advance Mr. Mason to an in-person interview in 2006 <u>and denial of a position at DaVita's acute facility at George Washington Hospital in 2007</u> . . . [t]he parties are instructed to meet and confer regarding a discovery schedule for the alleged 2007 retaliation claim . . . ."

(Minute Order Entry dated May 21, 2007 (emphasis added).)  Plaintiff filed the SAC and, as discussed above, the only retaliatory act that Plaintiff alleged there was the February 2007 job offer revocation and an unrelated 2006 retaliation claim against DaVita Rx which the Court has since dismissed.   Accordingly, he cannot now claim, after discovery has closed and the parties are preparing for trial, that he should be allowed to introduce

- 9 -

evidence concerning alleged acts of retaliation in 2008 that he has never before alleged. Other trial courts confronted with similar circumstances have refused to allow the introduction of such evidence at trial.

In Scott v. Univ. of Mississippi, the plaintiff had filed a Second Amended Complaint to include a claim of retaliation based on the employer's failure to hire her for a position. 148 F.3d 493, 513-14 (5th Cir. 1998), overruled on other grounds, Kazmier v. Widmann, 225 F.3d 519 (5th Cir. 2000), abrogated by Nevada Department of Human Resources v. Hibbs, 538 U.S. 721, 961 (2003). Shortly before trial, she informed the defendant that she would seek to introduce evidence of retaliation occurring after she filed the Second Amended Complaint and that she would be seeking to amend her complaint to add these allegations. The employer responded with a motion in limine and the district court excluded all evidence of retaliation occurring after the plaintiff filed her Second Amended Complaint.

In Celestine v. Petroleos de Venezuela SA, 266 F.3d 343, 351 (5th Cir. 2001), the plaintiffs sought to introduce evidence of discriminatory acts occurring after the date of their EEOC charge. The Fifth Circuit affirmed the district court's decision to "exclude all evidence of discriminatory acts occurring after [this date]" and noted that the plaintiffs "did not attempt to amend their complaint or supplement their responses to interrogatories" to include such evidence. Id.

In Marvel v. Snyder, No. 99-442-GMS, 2003 WL 21051712, at *2-3 (D. Del. May 9, 2003),[5] the plaintiff alleged in his final amended and supplemental complaint that the defendant had engaged in certain retaliatory acts against him for exercising his constitutional rights. In his summary judgment brief, he sought to raise for the first time an alleged cavity search and

---

[5] For the Court's convenience, copies of all unpublished decisions are attached at Ex. 5.

transfer to the maximum security section of the prison as additional acts of retaliation resulting from the same protected activity. The plaintiff had not amended his complaint to include these incidents. The court held that the plaintiff would not be allowed to introduce this evidence at trial because it was too "temporally distant from the other events central to [the plaintiff's] retaliation claim," and could inflame the jury. Marvel, 2003 WL 21051712, at *3.

Other courts have embraced an analogous principle and refused to allow plaintiffs to pursue claims of retaliatory acts that took place after they filed their EEOC charges even though the charges had asserted a claim of retaliation in the first instance. See Klipfel v. Bureau of Alcohol, Tobacco and Firearms, No. 94-C-6415, 1996 WL 566452 (N.D. Ill. Sept. 27, 1996) (refusing to allow plaintiff to include a subsequent alleged retaliatory act that was not specifically alleged in the EEOC charge, even though the plaintiff had included a claim of retaliation in the charge which was supported by other alleged adverse employment actions); McGuire v. U.S. Postal Serv., 749 F. Supp. 1275, 1288 (S.D.N.Y. 1990) (holding that a retaliatory act that was not included as part of plaintiff's retaliation claim before the EEOC and that took place a year after the retaliatory acts alleged in the charge could not be pursued in the lawsuit); Gary v. Menlo Logistics Global Transp. Servs., Inc., No. 1:06-CV-2139-TWT, 2007 WL 528096, at *4-5 (N.D. Ga. Feb. 13, 2007) (plaintiff could not include as part of her retaliation claim retaliatory act of a failure to promote that was not mentioned in her EEOC charge).

These decisions make sense because a defendant must receive adequate notice of the claims made against it in order to properly defend the case and develop its defense in discovery. As the Court directed in its May 21, 2007 Minute Entry Order, the parties have limited their

discovery to the 2007 retaliation claim.[6] Since DaVita supplemented its discovery with the 2008 evidence on July 15, 2008 (Ex. 1), Plaintiff has done nothing to suggest that he will be claiming that DaVita engaged in any retaliatory acts in 2008. <u>Plaintiff has not amended his Second Amended Complaint to allege any retaliatory acts by DaVita in 2008.</u>  Accordingly, no evidence concerning DaVita's employee staffing issues and temporary PCT use in 2008 should be admitted at trial.

Second, even assuming <u>arguendo</u> that the failure to call upon Plaintiff to work on several occasions[7] in February through April 2008 can be viewed as an adverse employment action that is properly before the Court in this case, the passage of nearly 21 months between this event and the last protected activity alleged in the SAC (Plaintiff's filing of the lawsuit in May 2006) cannot establish retaliation as a matter of law.  <u>See</u> <u>Clark County School Dist. v. Breeden</u>, 532 U.S. 268, 273-74 (2001) (citing with approval cases holding that gaps of three and four months between the protected activity and the retaliatory action were too far apart to support an inference of causation); <u>Mayers v. Laborers' Health & Safety Fund of N. Am.</u>, 478 F.3d 364, 369 (D.C. Cir. 2007) (acknowledging <u>Clark</u>'s holding and finding that an eight to nine month gap could not establish causation in a retaliation case).  Because the 2008 evidence cannot establish retaliation as a matter of law, it has no probative value on the question of whether retaliation took place.[8]

---

[6]     <u>See</u> DaVita Inc.'s Interrogatories to Plaintiff James Mason Regarding Claim of Retaliation in 2007 and DaVita Inc.'s Request for Production of Documents to Plaintiff James Mason Concerning 2007 Events Underlying the Retaliation Claim (Ex. 4).

[7]     As noted, Plaintiff was already working for DaVita at the Georgetown Facility on five of the eight days when other DaVita PCTs volunteered to help at the GWUH Facility.

[8]     Plaintiff may try to argue that the filing of the SAC was the protected activity from which the causation clock should run.  However, this position would have no merit because (1) Plaintiff has never alleged that the filing of the SAC was a protected activity; and (2) even if had been

Third, DaVita's 2008 employee staffing issues and limited temporary PCT use also do not make it any more or less probable that the motivation behind the alleged job revocation <u>in February 2007</u> was retaliation because the person who solicited this help for the GWUH Facility in February 2008 -- Regional Operations Director Matt Weissert -- had no knowledge that Plaintiff had filed an internal complaint or lawsuit against DaVita at that time or at any time prior April 14, 2008. (Weissert Decl. ¶¶ 2-3 (Ex. 3).) Mr. Weissert also had no idea that Plaintiff had ever expressed an interest in working at the GWUH Facility (<u>Id.</u>). He therefore could not have had a retaliatory motive. <u>See</u> <u>Clark</u>, 532 U.S. at 273 (no causal connection where a person engaging in alleged retaliation had no knowledge about plaintiff's protected activities); <u>Buggs v. Powell</u>, 293 F. Supp. 2d 135, 150-51 (D.D.C. 2003) (dismissing a claim of retaliation where the employee who made the selection decision on behalf of the employer (the alleged retaliatory act) was unaware of the plaintiff's prior protected activity). Indeed, Plaintiff has nowhere alleged that Mr. Weissert had any retaliatory motive against him. Instead, the SAC alleges that Mr. Weissert's predecessor, "who began work with DaVita in 2006," engaged in the alleged February 2007 retaliation. (SAC ¶ 12.)

Finally, DaVita's limited use of other PCTs at the GWUH Facility in 2008 cannot be considered an adverse employment action against Plaintiff because the Supreme Court in <u>Burlington Northern & Santa Fe Railway v. White</u>, 548 U.S. 53, 68 (2006), held that an adverse employment action is one that would have "dissuaded a reasonable worker from making or supporting a charge of discrimination." (citation omitted). Citing this definition, the court in

---

alleged, more than 10 months elapsed between the time that Plaintiff first sought leave to add the GWUH retaliation Count (originally included in the First Amended Complaint which the Court would not allow to be filed for other reasons) and the first time that DaVita used PCTs on a temporary basis 2008 on February 23, 2008. (<u>See</u> Pl.'s Motion to File First Amended Compl. dated April 3, 2007 (Docket # 11).)

Bothwell v. RMC Ewell, Inc., held that a denial of a salary increase was not an adverse employment action because the plaintiff was not aware of the action and "there is no way [that plaintiff] could have possibly been dissuaded from making or supporting a charge of discrimination as a result of such decision. . . ." No. 8:04-cv-1270-T-17-MSS, 2007 U.S. Dist. LEXIS 56595, at *20 (M.D. Fla. Aug. 3, 2007), aff'd by, 2008 U.S. App. LEXIS 11198 (11th Cir. May 21, 2008).  In the instant case, there is no evidence that Plaintiff had any knowledge of DaVita's staffing issues at the GWUH Facility in 2008 or its use of several PCTs on a temporary basis in 2008 to provide assistance at the GWUH Facility.  Thus, DaVita's action could not have dissuaded Plaintiff from making or supporting a charge of discrimination, and could not be considered an adverse employment action that could give rise to retaliation.  Accordingly, the evidence of PCT use in 2008 is irrelevant to Mr. Mason's claim of retaliation.

> **B.     Even If Relevant, The Probative Value Of The Evidence Concerning DaVita's 2008 Staffing Issues and Temporary Use Of PCTs is Outweighed By The Danger Of Confusing The Issues, Misleading The Jury, Undue Delay And Waste Of Time.**

Fed. R. Evid. 403 provides that even relevant evidence should nonetheless be precluded at trial if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence."  Applying Rule 403 to determine if evidence should be precluded requires a fact-intensive, context-specific inquiry.  See Mendelsohn, 128 S. Ct. at 1147.  As discussed above, the evidence concerning DaVita's temporary use of PCTs in 2008 is not relevant to any issue in this action.  However, even if it is relevant, "the danger of . . . confusion of the issues, or misleading the jury, . . . undue delay [and] waste of time," outweigh any de minimis probative value that it may have.  Fed. R. Civ. P. 403.  The straightforward issue in this trial is whether the alleged revocation of a job offer in February 2007 was due to

Plaintiff's filing an internal complaint of discrimination in January 2006 or the lawsuit filing in May 2006. Jurors will undoubtedly be confused as to why they are hearing about events taking place more than a year after the alleged adverse employment action and nearly two years after the last alleged protected activity. Jurors may also be misled into believing that this case is about retaliation taking place in 2008, which it clearly is not because the SAC does not allege any retaliatory acts in 2008. Finally, the presentation of this 2008 evidence will involve a number of witnesses who have nothing to do with the alleged job revocation in February 2007, including Regional Operations Director Matt Weissert who only started working in January 2008, the three PCTs who provided temporary assistance at the GWUH Facility, and the two DaVita Facility Administrators (Cora Benedicto and Gladys Howard) who informed their employees of the need at the GWUH Facility after receiving Mr. Weissert's e-mail seeking assistance.

### III.    CONCLUSION

For the foregoing reasons, the Court should preclude Plaintiff from introducing evidence concerning 2008 employee staffing issues at the GWUH Facility, including its temporary use of three PCTs at the GWUH Facility.

Dated:  August 22, 2008                              Respectfully submitted,


By: _____
Minh N. Vu (Bar No. 444305)
Frank C. Morris, Jr. (Bar No. 211482)
EPSTEIN BECKER & GREEN, P.C.
1227 25th Street, N.W.
Washington, D.C. 20037
Tel: (202) 861-0900
Fax: (202) 296-2882

Counsel for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of August, 2008, a copy of the foregoing Motion in Limine was served via the Court's ECF system to counsel below:

David A. Branch
Law Office of David A. Branch
1825 Connecticut Avenue, NW
Suite 690
Washington, D.C. 20009

                                                        _____
                                                        Minh N. Vu