Exhibit 5-3

Not Reported in F.Supp.
Not Reported in F.Supp., 1996 WL 566452 (N.D.Ill.)

Page 6

defendants that Vince left the ATF in July 1993 and Adamcik in February 1993, and Gamboa was absent from the ATF from March 30, 1993 until November 13, 1995. The only additional allegation involving defendant Ruggero is that he allegedly threatened witnesses who were participating in the plaintiffs' EEOC hearing. However, plaintiffs fail to link this allegation to any of the other defendants, thereby precluding the finding of a conspiracy. Therefore, the plaintiffs have failed to satisfy the continuing violation theory; as a result, their § 1985 claim is barred by the statute of limitations.

Plaintiffs' § 1985(1) conspiracy claim is precluded by Title VII. Accordingly, defendants' motion to dismiss Count II of the plaintiffs' complaint is granted.

### 2. Count IV: 42 U.S.C. § 1986

Count IV of the plaintiffs' complaint alleges violations of 42 U.S.C. § 1986 by defendants Adamcik, Magaw, and Vince. Section 1986 provides an action against an individual for failing to prevent a conspiracy as defined in § 1985. A plaintiff cannot state a claim under § 1986 unless a valid claim of conspiracy is established under § 1985. *Rodgers v. Lincoln Towing Serv., Inc.,* 771 F.2d 194, 203 (7th Cir. 1985); *Williams v. St. Joseph Hosp.,* 629 F.2d 448, 452 (7th Cir. 1980). Because the plaintiffs have failed to state a claim under § 1985, they have not stated a cause of action under § 1986. Accordingly, defendants' motion to dismiss Count IV of the plaintiffs' complaint is granted.

### 3. Count V: Bivens Claim

*7 Count V of the plaintiffs' complaint alleges that defendants Adamcik, Gamboa, Magaw, Ruggero, and Vince, each in their individual capacity and not as employees of ATF, retaliated against the plaintiffs in violation of the First and Fifth Amendments of the U.S. Constitution. The U.S. Supreme Court recognized a private cause of action against federal officials for constitutional violations in *Bivens v. Six Unknown Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S. Ct. 1999, 29 L.Ed.2d 619 (1979). However, this action is limited if "defendants show that Congress has provided an alternate remedy which it explicitly declared to be a substitute for recovery directly under the Constitution and viewed as equally effective." *Carlson v. Green,* 446 U.S. 14, 18-19, 100 S. Ct. 1468, 64 L.Ed.2d 15 (1980); *See also Moon v. Phillips,* 854 F.2d 147, 149 (7th Cir. 1988). Defendants contend that the plaintiffs cannot pursue a *Bivens* claim because Title VII is the exclusive remedy for the actions of which plaintiffs complain.

Title VII provides the exclusive remedy for claims of discrimination in federal employment. *Brown,* 425 U.S. at 834. Courts cannot create constitutional remedies when Congress has established an administrative system to remedy the problem. *Schweiker v. Chilicky,* 487 U.S. 412, 108 S. Ct. 2460, 101 L.Ed.2d 370 (1988); *Bush v. Lucas,* 462 U.S. 367, 103 S. Ct. 2404, 76 L.Ed.2d 648 (1983); *Robbins v. Bentsen,* 41 F.3d 1195, 1201 (7th Cir. 1994). Thus, if plaintiffs' claims fall under Title VII, this court cannot allow them to pursue independent constitutional claims.

Plaintiffs respond that Title VII preempts other remedies only when the employee challenges action that is directly related to their employment, and contend their Count V allegations are independent of their workplace. In support of their position, plaintiffs cite *Rochon v. FBI,* 691 F. Supp. 1548, 1555 (D.D.C. 1988), and *Baird v. Haith,* 724 F. Supp. 367, 373-74 (D. Md. 1988). However, in both of these cases the courts rejected plaintiffs' constitutional arguments as being precluded by Title VII. Thus, this court fails to see how either of these cases support the plaintiffs' position and plaintiffs offer no proof that their action was not related to their employment at ATF.

Plaintiffs further contend that § 717 of Title VII, 42 U.S.C. § 2000e-16, does not preclude separate remedies for unconstitutional actions other than discrimination. However, there is no need for the court

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.  
Not Reported in F.Supp., 1996 WL 566452 (N.D.Ill.)

Page 7

to consider this argument in depth as plaintiffs' claims would still stem from their employment. Thus, even if the plaintiffs' claims were considered as separate from Title VII discrimination, Congress has provided a remedy under the Civil Service Reform Act ("CSRA"). In their response brief, plaintiffs noted that they filed complaints with the Office of Special Counsel ("OSC"). Under the CSRA, the OSC investigates allegations of prohibited personnel practices. 5 U.S.C. § 1214(a)(1)(A)(1994). The CSRA is a remedial system established by Congress to protect constitutional rights in the employment context. *Robbins,* 41 F.3d at 1202. The existence of a remedy under the CSRA precludes this court from considering *Bivens* claims. *Id.* at 1203.

*8 Defendants correctly assert that the plaintiffs are precluded from bringing a *Bivens* claim by the existence of statutory remedies. Accordingly, defendants' motion to dismiss Count V of the plaintiffs' complaint is granted.

C. *Counts VII, IX, X, XI, and XII: Lack of Subject Matter Jurisdiction and Failure to State a Claim*

1. *Defamation claims*

Counts VII, IX, X, and XI of the plaintiffs' complaint are defamation claims against defendants Magaw, Vince, Adamcik, and Gamboa. Defendants contend that these complaints should be dismissed because the Attorney General has certified that they were acting within the scope of their employment, and therefore, the United States should be substituted as a defendant in this action. Defendants also argue that the Federal Employees Liability Reform and Tort Compensation Act ("FELRTCA") requires that the United States waive its immunity with respect to defamation claims for a suit to proceed.

a. *Federal Tort Claims Act*

Defendants argue that except as waived by the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 1402(b), 2401(b), 2671-2680 (1994)("FTCA"), plaintiffs' claims against the United States are barred by sovereign immunity. *See Lehman v. United States,* 453 U.S. 156, 160 (1981). The FTCA authorizes suits against the United States for injuries caused by federal employees acting within the scope of their employment. 28 U.S.C. § 1346(b). It states that suit against the United States is the exclusive remedy for tort claims arising from the actions of federal employees taken within the scope of their employment. 28 U.S.C. § 2679(b)(1). The Attorney General has certified, pursuant to 28 U.S.C. § 2679, that the defendants were acting within the scope of their employment when the events giving rise to this claim took place. Thus, defendants contend that they are not proper defendants in this lawsuit and should be dismissed from the action.

The FTCA requires that the plaintiffs present their claims to the appropriate federal agency before instituting a suit against the United States. 28 U.S.C. § 2675(a); *See also Deloria v. Veterans Administration,* 927 F.2d 1009, 1011 (7th Cir. 1991). The purpose of this requirement is to encourage settlement of claims. *Deloria,* 927 F.2d at 1011. Defendants argue that the plaintiffs never filed administrative claims for defamation with the Department of the Treasury; therefore, this court has no jurisdiction over the claim and must dismiss it. Furthermore, the FTCA bars recovery for plaintiffs' defamation claims against the United States. 28 U.S.C. § 2680(h); *See also Hamrick v. Franklin,* 931 F.2d 1209, 1212 (7th Cir.), *cert. denied* 502 U.S. 819 (1991)(FTCA bars recovery for libel against United States). In addition, the FELRTCA provides that the FTCA is the exclusive remedy for employment related torts; therefore, plaintiffs cannot pursue an action against the individual defendants. Thus, should this court accept the certification, plaintiffs are denied any recovery for this claim.

*9 Plaintiffs respond that the substitution of the United States as a party defendant is reviewable by

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1996 WL 566452 (N.D.Ill.)

Page 8

this court. Plaintiffs argue that if the court finds that the defendants were acting outside the scope of their employment, it may refuse to substitute the United States as a party. Plaintiffs contend that until this court makes the substitution, they do not have to exhaust the administrative remedies.

The certification that the defendants were acting within the scope of their employment is subject to judicial review. *Gutierrez de Martinez v. Lomagno*, 115 S. Ct. 2227, 131 L.Ed.2d 375 (1995); *Hamrick*, 931 F.2d at 1210. The certification creates a rebuttable presumption that the defendants were acting within the scope of their employment. *Hamrick*, 931 F.2d at 1211. Plaintiffs must set forth specific facts to show that the defendants acted outside the scope of their employment. *Id.* Plaintiffs contend that Adamcik, Gamboa, Magaw, Ruggero, and Vince were acting in their individual capacities when plaintiffs were "threatened, intimidated, harassed, ridiculed, wrongfully disciplined, wrongfully suspended, stripped of their supervisory positions, transferred to another office, not allowed to engage in law enforcement activity and threatened with termination from ATF." In *Gutierrez de Martinez*, the Court was concerned about cases where substitution would deny the plaintiff a remedy because of governmental immunity under § 2680. It said: "[t]he local U.S. Attorney, whose conflict of interest is apparent, would be authorized to make final and binding decisions insulating both the U.S. and federal employees ... from liability while depriving plaintiffs of potentially meritorious tort claims." 115 S. Ct. at 2237. This same concern was voiced by the Seventh Circuit in *Hamrick*, where the court remanded the case to determine if the defendants had in fact acted within the scope of their employment. Therefore, this court grants plaintiffs' motion for a hearing to determine whether the defendants acted within the scope of their employment. Accordingly, defendants' motion to dismiss Counts VII, IX, X, and XI is denied without prejudice.

b. *Statute of Limitations*

Defendants contend that even if the plaintiffs can maintain a suit against the individual defendants, these claims are untimely and should be dismissed. Under the FTCA, the applicable statute of limitations is that used in the jurisdiction in which the case arises. 28 U.S.C. § 1346 (b). The statute of limitations for defamation in Illinois is one year. 735 ILCS 5/13-201 (1993 State Bar Edition). Plaintiffs first sued Adamcik, Vince, and Gamboa in their Second Amended Complaint, which was filed on November 22, 1995. Therefore, plaintiffs must plead that an event occurred between after November 22, 1994. However, defendants have presented evidence that Vince and Adamcik left the ATF in 1993, and that Gamboa was absent from the office between March 30, 1993 and November 13, 1995.

*10 Plaintiffs argue that the claims against Gamboa, Adamcik, and Vince are not untimely under the continuing violation doctrine; however, they provide no authority to extend the continuing violation theory to tort cases. No Illinois court has held a continuing tort rule to be applicable beyond nuisance and trespass cases. *See Hertel v. Sullivan*, 261 Ill. App. 3d 156, 633 N.E.2d 36, 39 (1st Dist. 1990). Therefore, the claims against defendants Adamcik, Gamboa, and Vince are barred by the statute of limitations. However, a claim against defendant Magaw is timely.

Plaintiffs are entitled to a hearing to determine whether the United States should be substituted as a defendant in this action. Nevertheless, plaintiffs cannot pursue an action against defendants Gamboa, Adamcik, and Vince because of the applicable statute of limitations. Therefore, Gamboa's, Adamcik's, and Vince's motion to dismiss Counts IX, X, and XI is granted. Defendants' motion to dismiss Count VII in regard to defendant Magaw is denied at this time.

2. *Intentional Infliction of Emotional Distress*

Count XII of the plaintiffs' complaint alleges that

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1996 WL 566452 (N.D.Ill.)

Page 9

the federal defendants caused them to suffer severe emotional distress. Defendants first contend that this court lacks subject matter jurisdiction over plaintiffs' intentional infliction of emotional distress ("IIED") claim because of plaintiffs' failure to comply with the requirements of the FTCA. As stated above, this issue cannot be resolved until this court holds a hearing to determine whether the defendants were acting within the scope of their employment. Defendants next argue that plaintiffs have failed to state a cause of action for IIED.

To state a cause of action for IIED, plaintiffs must show (1) the defendants' conduct was extreme and outrageous; (2) the defendants intended to inflict severe emotional distress or knew that their conduct could cause severe emotional distress; and (3) severe emotional distress occurred. *Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 702 (7th Cir. 1993) (citing *McGrath v. Fahey*, 126 Ill. 2d 78, 533 N.E.2d 806, 809 (Ill. 1988). First, in determining whether the defendants' conduct was extreme and outrageous, the court must examine the individual facts of the case. *Id.* at 703.

The conduct must be so outrageous that no reasonable man would be expected to endure it. *Public Finance Corp. v. Davis*, 66 Ill. 2d 85, 360 N.E.2d 765, 767 (Ill. 1977). Liability does not extend to "[m]ere insults, indignities, threats, annoyances, petty oppressions or trivialities."*Id.* However, threats are sufficient when made by someone in a position of authority who has the ability to carry the threats out. *McGrath*, 533 N.E.2d at 809. In the case at bar, plaintiffs allege that threats against them and their children were made by the defendants-- their superiors. The defendants had the power to affect the plaintiffs' interests; as a result, we find that this conduct could be deemed outrageous by a reasonable trier of fact.

*11 The second element requires that the defendants intended to inflict severe emotional distress or knew that their conduct could cause severe emotional distress. *Harriston*, 992 F.2d at 702. Under these circumstances, the defendants should have known there was a high probability that their conduct would lead to distress. Finally, plaintiffs must show that severe emotional distress occurred. *Id.* Most significant in this case is the fact that both plaintiffs were placed on extended sick leave by their doctors as a result of the stress suffered at work. Therefore, this court finds that plaintiffs have stated a cause of action for intentional infliction of emotional distress.

This court must conduct a hearing to determine if the United States should be substituted as a defendant in this case. Accordingly, defendants' motion to dismiss Count XII is denied at this time.

D. *Motion to strike plaintiffs' jury demand*

Defendants contend that the plaintiffs' request for a jury trial must be stricken on the basis that plaintiffs failed to file a timely jury demand with respect to their Title VII claim. Federal Rule of Civil Procedure 38(b) provides that "[a]ny party may demand a trial by jury of any issue triable of right by a jury by (1) serving upon the other parties a demand therefor in writing any time after the commencement of the action and not later than 10 days after the service of the last pleading directed to such issue, and (2) filing the demand ..."Fed. R. Civ. P. 38(b). If a jury demand is not served and filed in accordance with Rule 38, then the right to jury trial may be found to be waived. Fed. R. Civ. P. 38(d); *See also Communications Maintenance, Inc. v. Motorola, Inc.*, 761 F.2d 1202, 1208 (7th Cir. 1985).

Plaintiffs have not formally filed a jury demand; however, in their complaint, they request "a jury for all claims triable by a jury."Plaintiffs have also requested that this court view their argument to be a motion for a jury trial. Because this demand for a jury trial was not made in accordance with Rule 38, the issue is whether the untimely request will be granted. It is well established that "untimely jury requests should be allowed absent strong and compelling reasons to the contrary."*Kotsilieris v.*

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1996 WL 566452 (N.D.Ill.)

Page 10

*Chalmers,* 966 F.2d 1181, 1187 (7th Cir. 1992); *Merritt v. Faulkner,* 697 F.2d 761, 767 (7th Cir.), cert. denied, 464 U.S. 986 (1983). Rule 39 gives the courts wide discretion to consider untimely jury requests because of the importance of the right to trial by jury in our legal system. *Merritt,* 697 F.2d at 767.

The court must balance five factors when considering the plaintiffs' untimely request: "(1) whether the issues involved are best tried before a jury; (2) whether the court's schedule or that of the adverse party will be disrupted; (3) the degree of prejudice to the opposing party; (4) the length of delay; and (5) the reason for the movant's tardiness in demanding a jury trial." *Early v. Bankers Life and Casualty Co.,* 853 F. Supp. 268, 271 (N.D. Ill. 1994). The court must consider the totality of the circumstances and grant the plaintiffs' request if there is some justification for the delay and no adverse effect on the other party. *Id.* at 272.

**\*12** Plaintiffs argue that they should be entitled to plead the numerous fact disputes surrounding this case to a jury. They contend that the court's schedule will not be disrupted because no trial date has been set or pretrial order filed, and no discovery has proceeded. The reason for their delay is the inadvertence of their original counsel. The defendants' argument only concerns timeliness and they do not contend that they will suffer any adverse effects. There is no compelling reason to deny plaintiffs' right to a jury; therefore, this court will grant plaintiffs' request for a jury trial. Accordingly, defendants' motion to strike plaintiffs' jury demand is denied.

E. *Motion to strike plaintiffs' prayers for punitive damages and prejudgment interest*

Defendants contend that the plaintiffs are not entitled to awards of punitive damages and prejudgment interest. First, defendants argue that punitive damages and prejudgment interest are not recoverable against the United States under the FTCA. *See* 28 U.S.C. § 2674. Second, they argue that punitive damages are not recoverable against the federal government in Title VII cases. *See* 42 U.S.C. § 1981a(b)(1). Plaintiffs respond that until the United States is substituted as a party in this action, the plaintiffs' requests are proper. *See Graham v. Satkowski,* 51 F.3d 710 (7th Cir. 1995) (punitive damages appropriate in § 1983 case if conduct motivated by evil intent or callous indifference); *Dombeck v. Milwaukee Valve Co.,* 40 F.3d 230 (7th Cir. 1994) (provisions granting right to punitive damages in Title VII actions applies to employment discrimination that postdates enactment of Civil Rights Act of 1991). Because this court has determined that a hearing is required before the United States is officially substituted as a party in this action, defendants' request to strike is denied at this time.

II. Defendants Byrne and Miedzianowski's motion to dismiss Counts II, VI, and VIII of the plaintiffs' third amended complaint.

Defendants Byrne and Miedzianowski ("Officer Defendants") have moved to dismiss Counts II, VI, and VIII of the plaintiffs' third amended complaint for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6).

A. *Count II: 42 U.S.C. § 1985(1)*

Defendants contend that plaintiffs' § 1985(1) conspiracy claim is barred by the statute of limitations. Because § 1985 does not contain a specific limitations period, federal courts have looked to comparable state law. *Vakharia,* 824 F. Supp. at 774. The statute of limitations applicable to a § 1985 action in Illinois is two years. *Id.* (citing *Smith v. City of Chicago Heights,* 951 F.2d 834, 836-37 n.1 (7th Cir. 1992)); *See also Wolf,* 828 F. Supp. at 522; *Kness,* 761 F. Supp. at 519.

Plaintiffs allege that the acts that constitute a conspiracy have continued from February 1992 through the present, thereby constituting a continuing viola-

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1996 WL 566452 (N.D.Ill.)

Page 11

tion. When a continuing violation is alleged, the claim is not barred unless no acts occurred during the limitations period. *Wolf,* 828 F. Supp. At 523; *See also Malhotra,* 885 F.2d at 1310. However, defendants correctly assert that the continuing violations theory has never been applied in the § 1985(1) context.

*13 Plaintiffs claim that paragraphs twenty-eight, and fifty-eight through one-hundred seven, of their complaint show a pattern of conspiracy. However, only four of these allegations occurred between 1993 and 1995. Paragraph sixty-six alleges that from April 1992 through the present, Plaintiff Klipfel has been the subject of continual rumors. Similarly, paragraph eighty-nine alleges that from March 1993 through the present there have been false rumors in the ATF office concerning the plaintiffs. While both of these allegations attempt to link behavior to the relevant time period with the phrase "through the present," it is insufficient because the allegations fail to identify specific conduct on part of the named defendants. Plaintiffs fail to allege that either Byrne or Miedzianowski spread any rumors during this period. Therefore, plaintiffs have failed to plead any form of conspiracy during the statute of limitations period.

Plaintiffs have failed to allege any conduct occurring within the applicable statute of limitations period. Accordingly, defendants' motion to dismiss Count II is granted.

B. *Count VI: 42 U.S.C. § 1983*

Count VI of the plaintiffs' complaint alleges that the Officer Defendants violated 42 U.S.C. § 1983 (1994).Section 1983 provides a cause of action against "[e]very person who, under color of any statute ... of any State ... subjects, or causes to be subjected, any citizen ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws ..."42 U.S.C. § 1983. The purpose of this section is to deter state officials from using their authority to deprive individuals of their federally guaranteed rights and to provide a remedy if deterrence fails. *Wyatt v. Cole,* 504 U.S. 158, 161, 112 S. Ct. 1827, 1830, 118 L.Ed.2d 504 (1992). To state a claim under § 1983, plaintiffs must show that there was a constitutional violation committed by an individual who was acting under color of state law. *West v. Atkins,* 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L.Ed.2d 40 (1988). Defendants contend that the plaintiffs have failed to meet this requirement.

1. *Cognizable Constitutional Injury*

Defendants contend that the plaintiffs have failed to allege they suffered any cognizable constitutional injury. The first inquiry in a § 1983 suit is whether the plaintiff has been denied a constitutional right. *Graham v. Connor,* 490 U.S. 386, 392, 109 S. Ct. 1865, 1870, 104 L.Ed.2d 443 (1989). Plaintiffs contend they have been deprived of their First Amendment rights to free speech and association, and their Fifth Amendment rights to life and liberty.

a. *First Amendment*

In regard to the First Amendment right to freedom of association, defendants correctly assert that the plaintiffs have failed to implicate any associational rights in their complaint. Plaintiffs in their response fail to disclose what allegations they consider relevant to this association claim. Therefore, this court will only examine a possible violation of plaintiffs' First Amendment right to free speech.

*14 Plaintiffs contend that the Officer Defendants used threats, harassment, and intimidation to prevent the plaintiffs from exercising their right to free speech; more specifically, to keep the plaintiffs from reporting the officers' criminal conduct. Defendants argue that threats, harassment, or defamation alone does not violate the Constitution. *See Davis v. City of Chicago,* 53 F.3d 801, 804 (7th Cir. 1995)(defamatory statements insufficient); *Slagel v. Shell Oil Refinery,* 811 F. Supp. 378, 382 (C.D. Ill. 1993), *aff'd,*23 F.3d 410 (7th Cir.), *cert. denied,*115

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.  
Not Reported in F.Supp., 1996 WL 566452 (N.D.Ill.)

Page 12

S. Ct. 611 (1994) (verbal harassment and abusive language of citizen by police officer insufficient); *Simms v. Reiner*, 419 F. Supp. 468, 474 (N.D. Ill. 1976)(mere words or threats insufficient following shooting of officer). However, threats or harassment intended to inhibit an individual's free speech rights may be actionable under § 1983 as a deprivation of First Amendment rights. *Laird v. Tatum*, 408 U.S. 1, 11, 92 S. Ct. 2318, 33 L.Ed.2d 154 (1972); *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982).

To have an actionable claim, plaintiffs must show that their First Amendment right was "chilled" by the actions of the officers. *Laird*, 408 U.S. at 11; *Bart*, 677 F.2d at 625. The court explained in *Bart* that

we cannot say as a matter of law that the exercise of First Amendment rights by public employees cannot be deterred by subjecting employees who exercise them to harassment and ridicule through selective enforcement of work rules. The effect on freedom of speech may be small, but since there is no justification for harassing people for exercising constitutional rights it need not be great in order to be actionable.

677 F.2d at 625. It went on to hold that there was a question of fact whether the defendants' harassing campaign against the plaintiff reached the threshold of actionability under § 1983. *Id.; See also Alliance to End Repression v. City of Chicago*, 742 F.2d 1007, 1009 (7th Cir. 1984)(*Laird* requirement for actual chilling effect met with allegations that the defendant's goal was to harass plaintiff); *Bennett v. Village of Oak Park*, 748 F. Supp. 1329, 1335 (N.D. Ill. 1990) (existence of chilling effect is genuine issue of material fact).

In the case at bar, plaintiffs allege that the officers harassed them so as to prevent them from reporting criminal activity; as a result, the plaintiffs' right to speech was chilled. For purposes of these proceedings, we accept the plaintiffs' allegations as true. Thus, there is a question of fact whether this harassment reached the requisite level for a § 1983 action. Consequently, this court finds that the plaintiffs have stated a violation of their First Amendment right to free speech.

b. *Fifth Amendment*

Defendants argue that plaintiffs' Fifth Amendment claim is inapplicable because the Fifth Amendment Due Process Clause only operates against federal officials, who are absent from Count VI. See *Johnson v. Carroll*, 694 F. Supp. 500, 504 (N.D. Ill. 1988)(citing *Bolling v. Sharpe*, 347 U.S. 497, 74 S. Ct. 693, 98 L.Ed. 884 (1954)); *Monitor v. City of Chicago*, 653 F. Supp. 1294, 1299 (N.D. Ill. 1987). Plaintiffs recognize that they omitted the words "through the 14th amendment" in discussing the applicability of the Fifth Amendment to the Officer Defendants and City of Chicago. Plaintiffs can bring an identical claim under the Due Process Clause of the 14th Amendment, which applies to municipal employees as defendants. See *Johnson*, 694 F. Supp. at 504. Thus, at this time the plaintiffs have failed to state a cause of action under the Fifth Amendment.

2. *Color of Law*

*15 To state a claim under § 1983, plaintiffs must show that the alleged deprivation of their First Amendment rights was committed by a person acting under color of law. *West*, 487 U.S. at 48; *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S. Ct. 1908, 68 L.Ed.2d 420 (1981). To act under color of law, the defendants must have exercised power "possessed by virtue of state law and made possible only because ... [they] are clothed with the authority of state law."*West*, 487 U.S. at 49. A defendant acts under color of law when he abuses the position given to him by the state. *Id.* at 49-50. An action can be classified under state law even if it is in excess of the authority actually delegated to the official under state law. *Lopez v. Vanderwater*, 620 F.2d 1229, 1236 (7th Cir. 1980). Thus, the issue becomes

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1996 WL 566452 (N.D.Ill.)

Page 13

whether the officers' conduct was related to their authority as police officers. Defendants contend that their actions were personal, and as such, not actionable under § 1983.

In a § 1983 action, an individual's status as a police officer by itself does not render his acts under color of law. *Gibson v. City of Chicago,* 910 F.2d 1510, 1516 (7th Cir. 1990). The act must "'be related to the performance of police duties.'" *Id.* (quoting *Briscoe v. LaHue,* 663 F.2d 713, 721 n.4 (7th Cir. 1981)). The issue is whether there is a question of fact concerning whether the officers' conduct related to the performance of their police duties. *Id.* at 1517.

Taking the facts in a light most favorable to the plaintiffs, they have alleged that the conduct was related to the authority conferred upon the defendant officers. The officers allegedly used their position to harass, intimidate, and threaten the plaintiffs. The officers could only pursue these threats by virtue of their authority, and while it constitutes an abuse of their position, it still occurred under color of law. *See Lopez,* 620 F.2d at 1236. Therefore, plaintiffs have sufficiently pled that the officers acted under color of law.

3. *Statute of Limitations*

Defendants contend that plaintiffs' claim is time barred because they failed to set forth any actionable conduct that occurred within the applicable statute of limitations. The applicable statute of limitations for a § 1983 claim is the state limitations period for personal injury torts. *Owens v. Okure,* 488 U.S. 235, 250, 109 S. Ct. 573, 102 L.Ed.2d 594 (1989), *Wilson v. Garcia,* 471 U.S. 261, 280, 105 S. Ct. 1938, 85 L.Ed.2d 254 (1985). The Seventh Circuit stated that the applicable statute of limitations for § 1983 claims is the Illinois two-year period in 735 ILCS 5/13-202 (1994 State Bar Edition). *Farrell v. McDonough,* 966 F.2d 279, 283 (7th Cir. 1992). Because the defendants were first brought into this suit on November 22, 1995, the plaintiffs must set forth conduct that occurred after November 22, 1993.

Plaintiffs contend that their § 1983 claim is not time barred because the officers' conduct establishes a continuing pattern of discrimination against them. The continuing violations doctrine enables a plaintiff to get relief for related acts that fall within the statute of limitations period. *Selan v. Kiley,* 969 F.2d 560, 564 (7th Cir. 1992); *Stewart,* 679 F.2d at 120. There are three continuing violation theories: (1) cases involving hiring or promotion, where it is difficult to pinpoint the exact date the violation occurred; (2) cases where the employer has an express policy that is alleged to be discriminatory; and (3) cases where the employer has followed a practice of discrimination through a series of acts. *Selan,* 969 F.2d at 565. The plaintiffs contend that the third theory is applicable in this case.

*16 To succeed under the third theory, the plaintiffs must show that the defendants' acts were "'related closely enough to constitute a continuing violation' or were 'merely discrete, isolated, and completed acts which must be regarded as individual violations.'" *Id.* (quoting *Berry v. Board of Supervisors of L.S.U.,* 715 F.2d 971, 981 (5th Cir. 1983)). In making this determination, courts examine (1) subject matter, whether the acts involve the same type of discrimination; (2) frequency, whether it is recurrent or isolated; and (3) degree of permanence. *Id.* The degree of permanence is the most important factor because the plaintiff has no valid reason to question an adverse act as discriminatory until a pattern emerges. *Id.; See also Malhotra,* 885 F.2d at 1310.

In *Selan,* the plaintiff alleged adverse actions consisting of a May 1985 transfer/ demotion and a July 1988 removal of privileges. She also presented evidence of a late-1985 removal of individual psychotherapy responsibility and a October 1987 removal of clinical supervision responsibility. Plaintiff contended that the separate acts were part of a pattern of discrimination that allowed a remedy for her otherwise time barred 1985 transfer/ demo-

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.  
Not Reported in F.Supp., 1996 WL 566452 (N.D.Ill.)

Page 14

tion claim. *Selan,* 969 F.2d at 566. First, the court found that all four acts involved the same subject matter-- taking responsibility away from the plaintiff. *Id.* at 567. Second, in regard to frequency, the court said that the two-year interval between the 1985 removal and October 1987 removal negated a conclusion of a continuous act. *Id.* Finally, in regard to permanence, the court said that there was no evidence that the actions were temporary, and thus it would be viewed as permanent. *Id.* It concluded that despite the similarity in subject matter, the gap and permanence negated an inference of a continuous violation.

In the case at bar, plaintiffs allege that the continuing conduct of the officers includes: (1) February 1992 threats by Officer Miedzianowski in relation to the Pippin incident, (2) March 1992 threats concerning the same incident, (3) November 1992 threats, (4) February 1993 leak of report to Reporter Marin, (5) March 1993 rumors started by the defendants, and (6) June 1995 contact of Reporter Marin. First, taking the facts in a light most favorable to the plaintiffs, these allegations all involve the common subject matter of corruption. Second, in regard to frequency, the plaintiffs allege that the officers made false statements from March 1993 to the present. There is also contact in June 1995, which falls in the statutory period. Taking the facts in a light most favorable to the plaintiffs, a reasonable trier of fact could infer that this was a continuous problem. Finally, in regard to permanence, these were not temporary actions, and thus plaintiffs satisfy this requirement.

Plaintiffs satisfy the continuing violations theory so as to bring their claim within the statute of limitations period. Plaintiffs have also stated a claim under § 1983. Accordingly, defendants' motion to dismiss Count VI is denied.

C. *Count VIII: Defamation by Miedzianowski*

*17 Plaintiff Klipfel alleges that from March 1992 through at least June 6, 1995, Officer Miedzianowski made false statements that have damaged her career and caused her pain and suffering. Defendants argue that the only statement not time barred by the statute of limitations is the June 6, 1995 statement to Reporter Carol Marin. Defendants do not deny that this statement is defamatory; rather, they contend that this statement is truthful, thereby precluding a defamation claim.

Truth is a complete defense to defamation under Illinois law. *Haynes v. Alfred A. Knopf, Inc.,* 8 F.3d 1222, 1228 (7th Cir. 1993). This defense requires the defendants to demonstrate only the truth of the "gist" or "sting" of the defamatory material. *Vachet v. Central Newspapers, Inc.,* 816 F.2d 313, 316 (7th Cir. 1987). If the gist of the statement is true, an error in detail is not actionable. *Haynes,* 8 F.3d at 1227.

Plaintiffs allege that Officer Miedzianowski contacted Reporter Marin in June 1995 and falsely stated that the plaintiffs had been fired from the ATF. Defendants argue that this statement is substantially true because adverse employment action had been taken against the plaintiffs. Defendants first rely on *Robinson v. U.S. News & World Report,* 1989 Lexis 5652, 16 Media L. Rep. 1695 (N.D. Ill. May 11, 1989). In *Robinson,* the plaintiff brought suit regarding an article that stated he had been arrested by the Federal Bureau of Investigation instead of by state police. The court found the name of the arresting agency to be inconsequential because the gist of the statement was true-- the plaintiff had been arrested. Defendants next rely on *Vachet,* where the court found the statement to be substantially true when the defendant stated that the plaintiff had been arrested pursuant to a warrant instead of a statute. 816 F.2d 313. In both of these cases, the gist of the statement was true in that the plaintiffs had really been arrested.

In the instant case, Officer Miedzianowski stated that the plaintiffs had been fired from the ATF. This statement is not substantially true because the plaintiffs were never fired, and in fact have continued their employment with the ATF through the

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1996 WL 566452 (N.D.Ill.)

Page 15

present. This is not like *Robinson* or *Vachet* where the error concerned a minor detail. Thus, the defendants cannot demonstrate the truth of the gist of the statement, and are not entitled to this defense.

Defendants next contend that the plaintiffs have not shown that the statement resulted in any damage beyond that caused by true facts. *See Haynes,* 8 F.3d at 1227. Plaintiffs allege that the statement caused pain, suffering, humiliation, and distress. A reasonable trier of fact could find that a statement that plaintiffs were fired indicates that the charges against them were true, while an adverse employment action would have a lighter connotation. Therefore, plaintiffs satisfy the damage requirement.

Plaintiffs have stated a valid cause of action against Officer Miedzianowski for defamation. Accordingly, defendants' motion to dismiss Count VIII is denied.

III. Defendant City of Chicago's motion to dismiss plaintiffs' third amended complaint.

*18 Defendant City of Chicago ("City") has moved to dismiss plaintiffs' third amended complaint for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6). The City was first entered as a defendant in this action when the plaintiffs filed their second amended complaint on November 22, 1995. Count VI of plaintiffs' third amended complaint, dated April 18, 1996, alleges that the City is liable for the conduct of two of its police officers, pursuant to the Civil Rights Act of 1964, 42 U.S.C. § 1983.

Defendant moves to dismiss Count VI for the following reasons: (1) plaintiffs fail to allege that they suffered any cognizable constitutional injury; (2) Count VI does not implicate conduct occurring under color of law; (3) plaintiffs' claim is time barred by the statute of limitations; and (4) plaintiffs fail to state a claim under the dictates of *Monell v. Department of Social Servs. of New York,* 436 U.S. 658, 98 S. Ct. 2018, 56 L.Ed.2d 611 (1978). As discussed above in relation to the Officer Defendants, the plaintiffs' § 1983 claim states a cognizable constitutional injury, implicates conduct occurring under color of law, and falls within the relevant time period. Thus, this court will limit its analysis to the guidelines of *Monell.*

Defendant contends that the statements were not made pursuant to city policy; therefore, the city cannot be held liable under the dictates of *Monell,* 436 U.S. 658. In *Monell,* the Court said that a municipality is only liable when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government entity is responsible under § 1983."*Id.* At 694-95. Thus, the municipality itself must cause injury through the execution of an official policy or custom.

Defendant argues that plaintiffs' complaint contains only conclusory allegations, and it has not had sufficient notice of any policy at issue that caused the constitutional injury of which the plaintiffs complain. The plaintiffs cannot rely on conclusory allegations of an existing policy; rather, they must allege facts supporting the existence of such a policy. *Strauss v. City of Chicago,* 760 F.2d 765, 768 (7th Cir. 1985). There must be sufficient facts so the court can understand the gravamen of the plaintiffs' complaint.*Doherty v. City of Chicago,* 75 F.3d 318, 326 (7th Cir. 1996).

A policy or custom can take the form of: (1) an express municipal ordinance or written directive, (2) a persistent custom that rises to a *de facto* policy, or (3) an action taken by an official policymaker. *McTigue v. City of Chicago,* 60 F.3d 381, 382 (7th Cir. 1995). Because there is no express policy in this case, plaintiffs must rely on a *de facto* policy or an action taken by an official policymaker.

A. *De facto policy*

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.