Exhibit 5-4

Not Reported in F.Supp.
Not Reported in F.Supp., 1996 WL 566452 (N.D.Ill.)

Page 16

First, plaintiffs claim the City maintained a persistent custom that rises to a *de facto* policy. They allege that the city failed to adequately "train, supervise, discipline and terminate" the officer defendants, which resulted in the plaintiffs' constitutional injury. These conclusory allegations are insufficient to support a claim. *See McTigue,* 60 F.3d at 382;*Strauss,* 760 F.2d at 768.

*19 In *Strauss,* the plaintiff alleged that the City had a custom of: (1) hiring people with a history of brutality, (2) allowing officers to remain employed while their experience showed they were brutal and violated civil rights, (3) allowing individuals in custody to be silenced by physical abuse, and (4) conducting investigations against officers where the officers were always exonerated and continued their employment. *Id.* at 766.The court held that the plaintiff failed to state a claim because he pled no facts to suggest an actual policy existed. *Id.* at 767.It rejected arguments that it was imposing a heightened pleading requirement, stating that it was only requiring plaintiff to plead facts supporting his allegation. *Id.* at 769.It said "[a] complaint that tracks *Monell*'s requirement cannot stand when the policy identified is nothing more than acquiescence in prior misconduct."*Id.* at 767.The court found the policies regarding abuse and corruption to merely be aspects of a policy of acquiescence. *Id.* at 767 n.3. It said to rule otherwise would open the door for suits to be filed on a respondeat superior basis. *Id.* at 768.

Similarly, in *McTigue,* the court held that the plaintiff failed to plead sufficient facts that a policy existed. 60 F.3d at 382. The plaintiff's complaint alleged that: "Since at least 1990, employees, including Plaintiff, who are disciplined by the City of Chicago, have not received fair and impartial hearings before the Personnel Board ... [r]ather, pursuant to a policy ... the Personnel Board ... [has] been biased and partial against the employees."Plaintiff also pled that out of fifty-four cases, the employees won only two, lost forty-one, and split eleven. *Id.* at 383.The court said that the plaintiff failed to allege how the statistics reflected an improper policy; accordingly, it dismissed the plaintiff's complaint.

Plaintiffs contend that their case mimics *Murphy v. Chicago Transit Authority,* 638 F. Supp. 464 (N.D. Ill. 1986), and as such they have pled sufficient facts to state a claim. In *Murphy,* the plaintiff alleged she was subjected to degrading sexual remarks during the last five months of her employment. *Id.* at 471.Plaintiff complained to the defendants, who not only failed to take any action, but began to assign her to menial tasks. *Id.* The court held that the plaintiff had successfully alleged a violation of her rights and a policy of deliberate indifference to her sexual harassment charges during a five month period. *Id.* Plaintiffs argue that they made the City aware of the harassment; however, their complaint lacks evidence that there was any knowledge that supervising officers actually knew that the officer defendants were engaging in unconstitutional conduct. Therefore, plaintiffs have failed to establish a *de facto* policy on part of the City.

B. *Action by an official policymaker*

*20 Plaintiffs contend that the Superintendent of the Chicago Police Department, Deputy Superintendent Risley, and Lieutenant Karchefsky, along with "other unknown responsible policy making officials of the City of Chicago knew, or in the exercise of reasonable care, should have known" about the officer defendants' conduct. However, as stated above, plaintiffs have no facts to support the allegation that these people actually knew of the officer defendants' unconstitutional conduct. Conclusory allegations that the City knew are insufficient for a motion to dismiss. *Reichenberger v. Pritchard,* 660 F.2d 280, 282 (7th Cir. 1981). Allegations that the City "should have known" are insufficient to impose liability. *Pacelli v. deVito,* 972 F.2d 871, 873 (7th Cir. 1992). A longstanding practice will support an inference that officials knew about and failed to stop the conduct when a pattern is established. *McNabola v. Chicago Transit Authority,* 10 F.3d 501, 511 (7th Cir. 1993). Plaintiffs have failed

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1996 WL 566452 (N.D.Ill.)

Page 17

to establish such a pattern.

In addition, none of the named persons is an official policymaker under § 1983. *See Wilson v. City of Chicago,* 6 F.3d 1233, 1240 (7th Cir. 1993) (police superintendent not policymaker). Therefore, even if they did have knowledge of the defendants' actions, they are not considered official policymakers so as to impose liability upon the City. Plaintiffs have failed to prove the existence of a policy on behalf of the City. Accordingly, defendant's motion to dismiss is granted.

## CONCLUSION

The Federal Defendants' motions to dismiss are granted in part. Defendants' motion to dismiss allegations unrelated to the Hernandez incident in Count I is granted because plaintiffs' have failed to exhaust their administrative remedies in regard to a corruption charge. Defendants' motion to dismiss Counts II and III is granted because Title VII preempts any action under § 1985. As a result of dismissing the § 1985 claim, defendants' motion to dismiss Count IV, § 1986 claim, is granted. Defendants' motion to dismiss plaintiffs' *Bivens* claim in Count V is granted because Title VII and the CSRA provide statutory remedies for the actions of which plaintiffs complain, barring the court from granting a constitutional remedy. Defendants' motion to dismiss Counts IX, X, and XI is granted because plaintiffs' claims are barred by the applicable statute of limitations. However, defendants' motion to dismiss Counts VII and XII is denied at this time until a hearing can be held to determine if the United States should be substituted as a defendant. Defendants' motion to strike plaintiffs' jury request is denied. Finally, defendants' motion to strike plaintiffs' prayers for punitive damages and prejudgment interest is denied at this time.

Officer Defendants' motions to dismiss are granted in part. Defendants' motion to dismiss Count II is granted as the plaintiffs' claim is barred by the applicable statute of limitations. Defendants' motion to dismiss Count VI is denied as plaintiffs have stated a claim under § 1983. Defendants' motion to dismiss Count VIII is denied as plaintiffs have stated a valid defamation claim against Officer Miedzianowski.

*21 The City of Chicago's motion to dismiss is granted because the city cannot be held liable under § 1983 according to the dictates of *Monell.*

N.D.Ill.,1996.
Klipfel v. Bureau of Alcohol, Tobacco and Fire-arms
Not Reported in F.Supp., 1996 WL 566452 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 21051712 (D.Del.)

Page 1

Marvel v. Snyder
D.Del.,2003.
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
Larry D. MARVEL, Plaintiff
v.
Robert SNYDER and Bruce Burton, Defendants.
No. Civ.A. 99-442-GMS.

May 9, 2003.

MEMORANDUM AND ORDER

SLEET, J.

I. INTRODUCTION [FN1]

> FN1. The procedural and factual history of this case is more fully presented in the court's memorandum opinion of July 24, 2001. *See Marvel v. Snyder,* 2001 WL 830309.

*1 The plaintiff in this civil rights action, Larry D. Marvel, is presently incarcerated at the Delaware Correctional Center ("DCC") located in Smyrna, Delaware. On July 12, 1999, he filed a *pro se* complaint [FN2] with this court against DCC Warden Robert Snyder and Correctional Lieutenant Bruce Burton (collectively "the defendants") pursuant to 42 U.S.C. § 1983. Marvel alleges that he suffered various retaliatory actions for filing a personal injury lawsuit against the warden and the DCC. Specifically, he alleges that he was removed from his job with the prison's environmental crew; subjected to a cell search or "shakedown" in which his belongings were ransacked and stolen; subjected to a strip search in front of the other inmates; and transferred to a more dangerous and restrictive tier of the prison. Marvel seeks injunctive relief in the form of a declaratory judgment ordering him to be reinstated with the environmental crew as well as monetary damages from Snyder and Burton for their actions in their individual capacities.

> FN2. Since that time, counsel has been appointed to represent the plaintiff. *See Marvel v. Prison Industries, Inc.,* 2002 WL 199883 (D.Del. Feb. 7, 2002) (granting plaintiff's motion for appointment of counsel).

In its July 24, 2001 order, the court addressed several motions. It granted Marvel's motions to amend his complaint, and granted in part and denied in part his motion to supplement the complaint. The court granted Marvel leave to add claims relating to his transfer to a different tier of the prison, but denied his request to add claims about an additional cell shakedown, or to name additional defendants in the complaint. In addition, the court granted in part and denied in part the defendants' motion for summary judgment.[FN3] Specifically, the court dismissed Marvel's Eighth Amendment and state tort claims, but denied the defendants qualified immunity from the retaliation action.

> FN3. Although the defendants styled their motion as a motion to dismiss, the court treated it as a motion for summary judgment because materials outside the pleadings were attached and considered. *See Marvel,* 2001 WL 830309, at *4 n. 3.

Presently before the court are the parties' cross summary judgment motions (D.I. 106 and 111). For the reasons that follow, the court will deny both motions. In addition, the court will discuss the defendants' Motion in Limine (D.I.143) as it concerns the request to exclude evidence pertaining to allegations other than those in the complaint, or those approved by the court's order of July 24, 2001.

II. STANDARD OF REVIEW

The parties move for summary judgment pursuant to Federal Rule of Civil Procedure 56. The court

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2003 WL 21051712 (D.Del.)

Page 2

may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); see also Boyle v. County of Allegheny Pa., 139 F.3d 386, 392 (3d Cir.1998). Thus, summary judgment is appropriate only if the moving party shows there are no genuine issues of material fact that would permit a reasonable jury to find for the non-moving party. Boyle, 139 F.3d at 392. A fact is material if it might affect the outcome of the suit. Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986)). An issue is genuine if a reasonable jury could find in favor of the non-moving party with regard to that issue. Id. In deciding the motion, the court must construe all facts and inferences in the light most favorable to the non-moving party. Id.; see also Assaf v. Fields, 178 F.3d 170, 173-74 (3d Cir.1999).

III. DISCUSSION

A. Scope of Plaintiff's Claims

*2 In their summary judgment briefing as well as their Motion in Limine, filed May 7, 2003, the defendants object to the plaintiff's insertion of claims not alleged in his final amended and supplemental complaint and not approved by the court's July 24, 2001 order. As the defendants note, the original complaint in this action (D.I.2) alleged two adverse retaliatory actions: a May 31, 1999 search of Marvel's prison cell, and Marvel's termination from his job with the prison's outside environmental crew. Subsequent amendments and supplements to the complaint added other claims, including cell searches occurring on July 2 and August 2 of 2000. In its July 24, 2001 opinion, the court ruled that these claims were unrelated to those alleged in the original complaint and, therefore, would not be permitted to remain in the case. Marvel, 2001 WL 830309, at *6. Marvel was permitted, however, to supplement his complaint to add information regarding an administrative hearing of October 15, 1999, as well as his transfer in August 2000 to an allegedly more dangerous and restrictive tier within the prison. Marvel, 2001 WL 830309 at *6-7; see also Second Amended and Supp. Complaint ¶ 63. Finally, the court noted that the plaintiff, in a letter to the court of December 15, 2000, alleged that certain of his legal documents were confiscated. Although the court issued no ruling as to the addition to the complaint of that allegation, it remarked that such a confiscation would be "clearly relevant to the case." Marvel, 2001 WL 830309, at *7 n. 15.

Despite the court's order of July 24, 2001, the Second Amended and Supplemental Complaint FN4 (D.I.53) includes allegations related to the incidents of July 2, 2000. See Second Amended and Supp. Complaint ¶ 62. Such claims are also discussed in the plaintiff's briefing in support of his motion for summary judgment. See, e.g., Pl.'s Op. Brief at 10-11. Marvel also discusses the alleged confiscation of his legal files, which he claims to have occurred during the May 31, 1999 cell search. In addition, the plaintiff alleges that, on that same date, he was subjected to a cavity search, and that in April of 2001 he was transferred to a maximum security tier of the prison. See Pl.'s Op. Brief at 8; 11.

> FN4. This case was suspended pending an appeal of the court's July 24, 2001 order, which was affirmed by the Court of Appeals for the Third Circuit on April 23, 2002. See Marvel v. Snyder, 33 Fed. Appx. 39. The Second Amended and Supplemental Complaint was filed shortly thereafter, on May 29, 2002.

Pursuant to the court's order of July 24, 2001, the parties are not permitted to introduce evidence related to the second cell search of July 2, 2002 and the related disciplinary citation. The plaintiff will be permitted, however, to introduce evidence of the alleged confiscation of legal documents, as it is clearly related to the plaintiff's primary retaliation claim revolving around the May 31, 1999 cell

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2003 WL 21051712 (D.Del.)

Page 3

search. It also may prove helpful in the jury's determination of the causal link, if any, between the adverse action taken against Marvel and his exercise of a constitutional right. In addition, the defendants received notice of the claim regarding the confiscation of the legal documents through the court's opinion of July 24, 2001. The court perceives no particular prejudice to the defendants in allowing Marvel to introduce evidence of that aspect of the events of May 31, 1999.

*3 The plaintiff will not, however, be permitted to introduce evidence regarding an alleged cavity search on May 31, 1999. This claim was raised for the first time on February 26, 2003, in the plaintiff's opening brief in support of his motion for summary judgment. The untimeliness of the assertion of this claim, the unfair prejudice to the defendants were they forced to defend against the charge after discovery has ended and so soon before trial, and the inflammatory nature of the allegation, convince the court that the plaintiff has lost the opportunity to assert the claim. Similarly, Marvel may not present evidence at trial regarding his transfer in April of 2001 to a maximum security section of the prison. This claim, too, was raised for the first time in the plaintiff's summary judgment briefing. Additionally, the event is temporally distant from the other events central to Marvel's retaliation claim.

By way of review, the plaintiff's claims and evidence shall relate only to the alleged retaliatory acts of May 31, 1999, including the cell search, strip search, confiscation of Marvel's legal files, and the disciplinary citation and administrative hearing stemming from his possession of bleach. The plaintiff may also present evidence about the alleged transfer to a different tier of the prison, occurring on August 3, 2000. Evidence in support of Marvel's allegations of a cavity search will not be introduced at trial. Nor will the plaintiff be allowed to introduce evidence about the second cell search and disciplinary write-up which occurred in July of 2000 or the third cell search of August 2, 2000. Marvel is not permitted to introduce evidence regarding the April 2001 transfer to a maximum security section of the prison. To this extent, then, the court will deny in part and grant in part the defendants' motion in limine to exclude certain evidence. The remaining issues raised in that motion will be addressed during the upcoming pre-trial conference or at trial.

B. Plaintiff's Motion for Summary Judgment

Marvel moves for summary judgment of the retaliation claim on the basis of the May 31, 1999 cell shakedown and Snyder's alleged deliberate indifference of the retaliatory acts against Marvel.[FN5] An inmate alleging retaliation must show "(1) constitutionally protected conduct, (2) an adverse action by prison officials sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights, and (3) a causal link between the exercise of his constitutional rights and the adverse action taken against him." *Mitchell v. Horn,* 318 F.3d 523, 530 (3d Cir.2003) (citing *Rauser v. Horn,* 241 F.3d 330, 333) (3d Cir.2001)) (internal citations omitted).

> FN5. The plaintiff does not move for summary judgment as to the other incidents of alleged retaliation, but argues that those claims should be addressed in the damages phase of trial.

The plaintiff has not shown that there is no genuine issue of material fact regarding the retaliation claim. For example, there are numerous disputed facts as to the events of May 31, 1999, including whether Marvel was subjected to a strip search at all. *Compare* Pl.'s Op. Brief at 15 ("There is uncontested deposition and declaratory evidence that Plaintiff and Mr. Lawhorn were strip searched in front of the inmate population on F-tier of D building.") *with* Defs.' Ans. Brief at 8 (citing deposition of Burton in which he indicates he cannot remember if he conducted a strip search of Marvel on the date asserted). In addition, Marvel asserts that the alleged strip search occurred outside of his cell, in

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 21051712 (D.Del.)

Page 4

plain sight of the other prisoners of his tier, while the defendants argue that, if a strip search occurred at all, it would have taken place inside his cell. These and other events of May 31, 1999 bear upon the issues of whether a person of ordinary firmness would have been deterred from exercising his constitutional rights, and whether there was a causal link between the exercise of Marvel's right and the alleged adverse action taken against him.

*4 Naturally, there also remains a dispute as to the motivation for the defendants' alleged conduct. While Marvel alleges the motivation was retaliatory, the defendants assert that their conduct was motivated by legitimate penological reasons. Facts relating to this issue are in dispute. For example, the plaintiff alleges that during the May 31, 1999 cell shakedown, Burton exclaimed, "You like to sue people, do you?... Well, sue me!... Got a problem with that?... I don't think so."Pl.'s Op. Brief at 8. Burton, however, cannot recall saying any such thing to Marvel. *See, e.g.,* Defs.' Ans. Brief at 10 ("In fact, Burton did not recall making any statements other than commands to Marvel as part of the search."). Such a factual dispute, in which the credibility of witnesses likely will be determinative, is quintessentially appropriate for resolution by a jury. Because this and other genuine issues of material fact remain in dispute, summary judgment is inappropriate.

C. Defendants' Motion for Summary Judgment

The defendants' motion for summary judgment has, essentially, two bases: that the plaintiff cannot prove any constitutional violation because the defendants would have made the same decisions absent the protected conduct for legitimate penological interests, and that the defendants are protected from liability by qualified immunity. The court finds neither of these grounds sufficient to warrant summary judgment in the defendants' favor.

As stated above, the prisoner-plaintiff in a retaliation suit must show a causal link between the adverse action taken against him and the retaliatory conduct by the defendant. Specifically, the plaintiff must show that "his constitutionally protected conduct was 'a substantial or motivating factor' in the [defendant's] decision to discipline him."*Rauser,* 241 F.3d at 333 (quoting *Mount Healthy Bd. of Ed. v. Doyle,* 429 U.S. 274, 287 (1977)). If such a causal link is shown, the defendant nonetheless may avoid liability by proving that he would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest. *Rauser,* 241 F.3d at 333.

Summary judgment is not warranted on this ground because there is a genuine issue of disputed fact regarding, for example, whether Marvel was forced to strip search in front of the other inmates on his prison tier. Presumably, there is no legitimate penological interest that could justify such a procedure. Thus, the defendants' proffered defense turns, in part, on the resolution of this factual dispute.

The defendants' second argument, that they are entitled to qualified immunity, is equally unavailing. The issue of qualified immunity has already been argued and decided by the court in relation to the defendants' previous motion for summary judgment. As the court stated then:

In this case, Marvel clearly has a right to be free from retaliation for exercising his constitutional right to pursue civil redress in a federal court. Additionally, this is a right of which the defendants should have been aware. Therefore, the court will not dismiss the case on the grounds of qualified immunity.

*5 *Marvel,* 2001 WL 830309, at *7;*see also Marvel,* 33 Fed. Appx. at 39 (affirming denial of qualified immunity). The defendants' second motion for summary judgment on this basis is denied.

IV. CONCLUSION

For the aforementioned reasons, IT IS HEREBY ORDERED that:

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d                                                                                                                Page 5
Not Reported in F.Supp.2d, 2003 WL 21051712 (D.Del.)

1. The plaintiff's Motion for Summary Judgment (D.I.106) is DENIED.

2. The defendants' Motion for Summary Judgment (D.I.111) is DENIED.

3. The defendants' Motion in Limine (D.I.143) is GRANTED IN PART; DENIED IN PART; JUDGMENT RESERVED IN PART, consistent with this memorandum and order.

D.Del.,2003.
Marvel v. Snyder
Not Reported in F.Supp.2d, 2003 WL 21051712 (D.Del.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.